UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————X
                                                        :
WILLIAM HAUGHEY,                                        :          **COMPLAINT**
                                                        :
                              Plaintiff,                :          Jury Trial Demanded
                                                        :
          -against-                                     :
                                                        :
THE COUNTY OF PUTNAM; THE TOWN OF                       :
CARMEL; INSPECTOR ROBERT                                :
GEOGHEGAN; ROBERT EFFEREN; CHIEF                        :
DARYL JOHNSON; DOUGH CASEY; PO                          :
JUSTIN FISCHER; DETECTIVE MICHAEL                       :
NAGLE; SERGEANT ROBERT BEHAN;                           :
SERGEANT JOHN DEARMAN; JOSEPH                           :
CHARBONNEAU; JOHN DOES 1-5; and                         :
ANTHONY PORTO,                                          :
                                                        :
                              Defendants.               :
                                                        :
—————————————————————X

Plaintiff William Haughey, by his attorney RITA DAVE, ESQ., respectfully

alleges upon information and belief, the following:

## NATURE OF ACTION

1.      This civil rights action arises from the wrongful arrest, prosecution,

and conviction of William Haughey, an innocent, hardworking construction worker

who was sentenced to 10 years in prison after a local business owner with strong

ties to law enforcements officials, conspired with them to frame Haughey for

starting a fire in a tavern in Carmel New York.

2.      In 2016, the Putnam County District Attorney's Office reinvestigated the case and moved to overturn Haughey's conviction.  The District Attorney found that Haughey was actually innocent of the charges, and that it had been impossible to conclude the fire was an arson.   To the contrary, the District Attorney concluded  the fire was in all likelihood an electrical one caused by faulty electrical wiring, which the century-old tavern had been cited for shortly before the fire.

3.      Haughey was released from prison in May 2016.  By then, however, he had spent over eight grueling years in prison for a "crime" that never took place, suffered extraordinary mental and emotional damages, was publicly shamed and humiliated as a criminal, and lost some of the best years of his life.

4.      Defendants' horrendous and unlawful conduct violated New York and Federal law and entitles Haughey to substantial compensatory and punitive damages under 42 U.S.C. § 1983, a federal statute authorizing a civil rights lawsuit based on such conduct.

## JURISDICTION AND VENUE

5.      This action arises under the U.S. Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 1331, 1343(3).

6.      Under 28 U.S.C § 1391(b) and (c), venue is proper in the Southern District of New York because the County of Putnam, Town of Carmel and other defendants are situated or reside in that Judicial District.

## PARTIES

7.      Plaintiff William Haughey ("PLAINTIFF") is a citizen of the United States, currently residing in the State of Florida.  At all relevant times to this complaint, he was a resident of New York.

8.      Defendant County of Putnam ("PUTNAM")  is a municipal corporation within the State of New York.  At all relevant times, PUTNAM employed the personnel identified in the acts underlying this lawsuit and maintained the Putnam County Bureau of Emergency Services, Putnam County Fire Department, and Putnam Department of Public Safety.  Under § 53 of the County Law, PUTNAM is liable for the torts of its employees.

9.      Defendant Town of Carmel ("CARMEL") is a municipal corporation in PUTNAM.  At all times relevant to this lawsuit, CARMEL employed the personal identified in the acts underlying this lawsuit and maintained the Carmel Police Department and Carmel Fire Department.  Under § 65 and 67 of the Town Law, CARMEL is liable for the torts of its employees.

10.      Defendant Robert Geoghegan ("INSP. GEOGHEGAN") was and is a fire inspector for PUTNAM.

11.     Defendant Robert Efferen ("INSP. EFFEREN") was and is a fire inspector for PUTNAM.

12.     Defendant Daryl Johnson ("CHIEF JOHNSON") was and is the Chief of the Carmel Fire Department.

13.     Defendant Dough Casey ("CASEY") was and is a employee of the Putnam County Fire Department.

14.     Defendant Michael Nagel was and is a detective for the Carmel Police Department ("DET. NAGEL").

15.     Defendant Robert Behan was and is a Sergeant employed by the Carmel Police Department ("SGT. BEHAN").

16.     Defendant John Dearman was and is a Sergeant employed by the Carmel Police Department ("SGT. DEARMAN").

16.     Defendant JOSEPH CHARBONNEAU ("CHARBONNEAU") is a Town Attorney for the City of Carmel.

17.     Defendants JOHN DOES 1-5 ("DOE 1-5") were at all times relevant to this complaint, duly appointed and acting employees of PUTNAM and/or CARMEL.

18.     Defendant Anthony Porto ("PORTO") was and is the owner of the Smalley's Inn, a bar located in Carmel, New York.

19.     At all times relevant to this complaint, all defendants acted under the color of state law, or with those who acted under the color of state law.

## FACTUAL BACKGROUND

**A.     As Plaintiff Enjoys A Night Out At Local Tavern, An Electrical Issue At The Tavern Causes A Small Fire In The Bathroom Ceiling**

20.     On March 10, 2007, PLAINTIFF was one of several patrons socializing in Smalley's Inn & Restaurant, a local tavern in Carmel, New York. The Inn was owned by defendant PORTO.

21.     In the late night hours, an electrical issue caused a small fire in the bathroom ceiling.

22.     PLAINTIFF and several other good Samaritans, smelling smoke, ran into the bathroom, quickly located and extinguished the fire, removed burning and charred papers from the ceiling, and spared the tavern of any serious damage.

23.     That a fire occurred in the bathroom ceiling was unremarkable: the Inn dates back to the 1800's and at the time of the fire its electrical system used antiquated fuse boxes.

24.     Old newspapers had been stuffed into the walls and ceiling of the Inn for insulation, and shortly before the fire at issue in PLAINTIFF's case, another electrical fire had occurred at the Inn when old wiring melted away and started a fire.

25.     Moreover, just months prior to the fire in PLAINTIFF's case, The New York State Board of Fire Underwriters, the official electrical inspection agency for more than 900 municipalities throughout New York State, had inspected the Inn and cited it for multiple electrical code violations.

26.     That Board directed the Inn to update its electrical system in accordance with the New York State Building and Electrical Code.

27.     Nevertheless, at the time of the fire in PLAINTIFF'S case, PORTO had failed to make those required updates to the Inn's electrical system.

**B.     The Day After The Fire, The Inn's Owner, Who Held A Grudge Against Plaintiff, Makes A False Complaint To Police Accusing Plaintiff Of Starting The Fire**

28.     The day after the fire, the Inn's owner, PORTO, seized upon PLAINTIFF's kind deed in helping to extinguish the fire, as a basis to have him falsely arrested on arson charges.

29.     At the time, PORTO and his family were prominent business owners in CARMEL with close ties to the law enforcement community there.

30.     Moreover, at the time, PORTO held a grudge against PLAINTIFF because PLAINTIFF had been renting an apartment from one of PORTO's close friends and business partners, and PLAINTIFF and the business partner had ended up on the verge of litigation over PLAINTIFF's tenancy.

31.    On March 11, 2007, PORTO called Carmel Police Department and reported that PLAINTIFF had intentionally set the fire in the bathroom ceiling.

32.    PORTO's complaint was blatantly false.

33.    Neither PORTO nor anyone else observed PLAINTIFF start the fire.

34.    Moreover, PORTO, initially unaware of the extent of the fire damage, had an incentive to have the fire designated an arson for insurance purposes as an arson would not be attributable to the Inn's failure to update its electrical system.

**C.    Police Respond To The Inn And Aid Porto In Having Plaintiff Falsely Arrested For Arson**

35.    Within hours of PORTO's call to police, DET. NAGLE arrived and at the Inn and spoke with PORTO.

36.    PORTO informed DET. NAGLE that PLAINTIFF had started the fire in the bathroom.

37.    After speaking with PORTO, DET. NAGLE requested the assistance of the PUTNAM/CARMEL Fire Investigation Team.

38.    Among those who responded pursuant to DET. NAGLE's request were CHIEF JOHNSON, INSP. GEOGHEGAN, ROBERT EFFEREN, and DOES 1-3, each of whom knew PORTO and his family, and were aware of the status they held in the community.

39.    DET. NAGLE immediately colored the investigation by informing the responding officials that, in accordance with PORTO's narrative, PLAINTIFF had set the fire in the bathroom.

40.    Moreover, DET. NAGLE informed the responding officials that witnesses had informed him that PLAINTIFF had placed paper towels between the drop ceiling and the ceiling and lit the paper on fire.

41.    DET. NAGLE's representation in this regard was false. As previously stated, there were no eyewitnesses to how the fire began and no one gave DET. NAGLE any such statement.

42.    Taking the cue from PORTO and DET. NAGLE, CHIEF JOHNSON, INSP. GEOGHEGAN, INSP. EFFEREN, and DOES 1-3, then conducted an invalid, incomplete, reckless, grossly negligent, and intentionally misleading fire investigation and falsely took the position that the fire did not have an electrical or accidental cause, and thus an arson had occurred.

43.    Defendants' conduct violated the most basic principles of fire investigation, egregiously deviating from accepted fire investigation protocols and demonstrating an intentional or reckless disregard for proper procedures. Defendants' "investigation," by its very nature, made it *impossible* to determine whether an arson had occurred as opposed to whether the fire had an electrical or accidental origin, as:

(a)     The fire investigation did not include an examination of a
        smoke eater that was in the bathroom ceiling.  The smoke eater
        is an electrical device that was supposed to prevent cigarette
        smoke from tripping the fire alarm, and as an electrical device,
        it could have been the source of the fire, and PORTO had
        disposed of the smoke eater before police could examine it;

(b)     The investigation did not include an examination of the entire
        area above the ceiling of the bathroom where witnesses saw the
        fire, to determine if there was any connection between the
        smoke eater that was in that area and the fire;

(c)     Despite two witnesses informing the police that they saw
        flames emanating from the vent above the bathroom door,
        which provided the exhaust for the smoke eater, the vent was
        not inspected;

(d)     The electrical system in the Inn was not examined despite the
        fact that just a few months before the fire in this case, faulty
        electrical wiring in the Inn had caused a fire there;

(e)     The investigation did not account for the charred wood noted
        by witnesses, charring that could not have occurred in the short
        window period between PLAINTIFF entering the bathroom
        and a customer smelling smoke; the charring suggests that the
        fire was burning before PLAINTIFF had even entered the
        bathroom;

(f)     The investigation did not examine the floor the fire, which
        sustained the bulk of the damage, damage above that was
        consistent with the smoke eater causing the fire; and

(g)     The fact that papers were removed from the ceiling when the
        fire was extinguished indicated that the fire had ignited the
        paper rather than the other way around. That paper is much
        easier to burn and would have been consumed in its entirety,
        like starting a fire in a fireplace with newspaper, which always
        burns first before igniting the wood.

44.     Based on the above, it was impossible for defendants to legitimately conclude that an arson had occurred.

45.     Moreover, each defendant participating in the fire investigation was aware of the above.

**D.    Defendants Falsely Arrest Plaintiff And Create Several False Reports Representing The Fire Was An Arson And All Electrical And Accidental Causes For It Had Been Eliminated**

46.     Despite the total lack of evidence to conclude an arson had occurred, on March 11, 2007, SGT. DEARMAN, PO FISHER, and DET. NAGLE, with the consent, aid, and under instructions from all other individual defendants, placed PLAINTIFF under arrest for arson.

47.     Additionally, the individual defendants, collectively, acting in concert, aiding and abetting each other, and conspiring with each other, prepared a series of false reports memorializing the knowingly false claim that all accidental causes for the fire had been eliminated and the fire was an arson.

48.     PUTNAM Fire Investigation Team Incident Field Notes (attached as Exhibit A), for example, falsely represented that all electrical systems, appliances, and accidental causes for the fire had been eliminated. *Id.* p. 3.

49.     INSP. GEOGHEGAN prepared an Incident Summary Report (attached as Exhibit B), repeating that false claim:

> "After thoroughly examining the physical evidence present … and ruling out all possible accidental and

natural causes, the Fire Investigation Team determined the
fire to be incendiary in nature."

50.    Likewise, CHIEF JOHNSON prepared a Carmel Fire Department

report (attached as Exhibit C) indicating he and two members of the PUTNAM

Fire Investigation Team had "determined that the fire was incendiary in nature."

51.    Each of the above representations and reports were negligently,

recklessly, intentionally, and/or with deliberate indifference, made, and omitted all

of the exculpatory information detailed in ¶¶ 43-44, above, and 72 and 75, below.

**E.    Defendants Provide Their False Reports To The The Putnam County
District Attorney's Office, And Affirmatively Mislead That Office
Into Commencing Formal Criminal Proceedings Against Plaintiff**

52.    The individual defendants, after preparing their false reports, then

forwarded those reports, along with PORTO's complaint, to the Putnam County

District Attorney's Office to convince that Office to commence formal criminal

proceedings against PLAINTIFF.

53.    At the time, defendants, upon information and belief, did not inform

the the DA's Office

(a)    that it was *impossible* to eliminate an electrical or accidental
cause of the fire and thus impossible to establish that a crime
had even occurred,

(b)    that their reports and various representations that the fire was
incendiary were false, and

(c)    of the exculpatory information detailed in ¶¶ 43-44, above, and
72, below.

54.    Moreover, defendants did not provide the DA's Office with various photographs taken at the crime scene, or inform the DA's Office that those photographs contained highly exculpatory evidence strongly suggesting the fire was an electrical one (¶ 72, below).

55.    Nor did defendants inform the DA's Office of their close relationships to the PORTO family, or the incentive PORTO had to have the fire classified as an arson.

56.    The DA's Office, deceived by defendants, then presented arson charges to a grand jury to have PLAINTIFF indicted.

57.    Unbeknownst to the DA's Office, however, the grand jury presentation was false and misleading, as the grand jury

(a)    was never informed that it was *impossible* establish that an arson had occurred,

(b)    was not presented with the the exculpatory information detailed in ¶¶ 43-44, above, and 72 and 75, below,

(c)    was never provided with the exculpatory crime scene photographs, ¶¶ 72 and 75, below,

(d)    was never informed of defendants' false representations and reports claiming the fire was an arson, and

(e)    was affirmatively lied to by DET. NAGLE, who testified falsely that "there would be no other reason that a fire would start [in the ceiling] other than someone starting it."

58.    The grand jury indicted PLAINTIFF for arson in the second degree and criminal mischief, and he was then held over for trial.

59.    Following PLAINTIFF's indictment, the individual defendants continued to mislead the DA's Office, by affirmative representations, acts and omissions, and assure that Office that the fire was incendiary in nature, and all electrical and accidental causes for the fire had been eliminated.

60.    The DA's Office, accepting defendants' representation, called INSP. GEOGHEGAN as a witness at PLAINTIFF's criminal trial.  There, INSP. GEOGHEGAN falsely testified that the fire was not "electrically," "accidentally," "mechanically," or "naturally caused," but rather was incendiary in nature.

61.    Based on defendants' deception, on April 16, 2008, PLAINTIFF was convicted and sentenced to 10 years in prison.

## F.    Defendant Charbonneau Covers-Up Defendants Misconduct

62.    Following PLAINTIFF's conviction, he filed a series of FOIL requests seeking access to all exculpatory evidence in his case.

63.    Nevertheless, CHARBONNEAU, acting in a purely administrative capacity as Town Attorney, conspired, aided and abetted the other defendants in hiding the exculpatory evidence from PLAINTIFF.

64.    CHARBONNEAU hid the requested evidence and convicted a court to deny PLAINTIFF's access to that evidence.

**G.    Nearly Nine Years After Plaintiff Is Convicted, The District Attorney Discovers Defendants' Deception And Moves To Overturn Plaintiff's Conviction And Release Him From Prison**

65.    In 2013, after PLAINTIFF lost all of his state court appeals, he commenced a federal *habeas corpus* proceeding challenging his wrongful conviction.  The case was assigned to the Honorable Vincent L. Briccetti, a Judge in the United States District Court for the Southern District of New York.

66.    PLAINTIFF, acting on his own behalf without an attorney, swore that he was innocent and had been wrongfully convicted.

67.    Included in PLAINTIFF's submissions were reports from two fire experts who had examined the evidence in PLAINTIFF's case and concluded *it was impossible* to conclude that an arson had occurred or to rule out an electrical cause of the fire.  (A copy of the experts' joint report is attached as Exhibit D).

68.    On May 5, 2016, Putnam County District Attorney Robert Tendy, after conducting an independent investigation at the request of PLAINTIFF's supporters, filed a memorandum of law (attached as Exhibit E) in federal court *declaring PLAINTIFF was innocent, had been wrongfully convicted, and should be released from prison immediately.*

69.    The DA informed the federal court that his Office had reached this conclusion after throughly reviewing, among other things, the case file, reports from PLAINTIFF's fire experts, and a report of a third fire expert that the New

York Attorney General's Office had retained in connection with PLAINTIFF's habeas corpus proceeding.  *Id.* ¶ 3.

70.    The DA explained to Judge Briccetti that Smalley's Inn had been the subject of "numerous electrical code violations and another electrical fire" shortly before the one in PLAINTIFF's case, and that "[s]adly," it appears PLAINTIFF spent many years in prison "for helping to put out a fire - not start one."  *Id.* ¶¶ 25-26.

71.    The DA explained that every fire expert consulted post-trial —two hired on PLAINTIFF's behalf and one hired by the Attorney General's Office— "concluded that the origin of the fire could not be determined" and thus "there could not be an arson conviction."  *Id.* ¶ 14.

72.    The DA further informed Judge Briccetti that "there was ample evidence" the fire may have been electrical.  *Id.*

73.    The DA concluded that an examination of a video from the night of the fire "clearly belie[d]" many of the assertions made by the prosecution witnesses, including PORTO, at trial.  *Id.* ¶ 18.

74.    The DA found that there was nothing suspicious about PLAINTIFF helping to extinguish the fire that night.  *Id.* ¶ 22.

75.    The DA explicitly conceded that the crime scene photographs

PLAINTIFF alleged had been suppressed from his defense attorney were

exculpatory.  The photographs, the DA said,

> were certainly exculpatory[.]  These photographs include
> one … that demonstrates that the space immediately
> above the dropped ceiling of the Smalley's Inn bathroom
> was *not* connected to the wall vent from which witnesses
> observed smoke and flames, and that the smoke-eater
> device about which the owner, [PORTO], testified, was
> not in the space immediately above the bathroom's
> dropped ceiling, but in a separate confined space above,
> *and which serviced the  vent.*  This was material that
> would have been important in demonstrating to the jury
> that testimony from prosecution witness [INSP.
> GEOGHEGAN] that the fire was incendiary and that
> there could have been no electrical cause of the fire, was
> invalid. The photograph also would have been material in
> showing the significance of [INSP. GEOGHEGAN's]
> failure to inspect this separate space that serviced the vent
> and housed the Smoke-eater.

*Id. ¶* 29.

76.    Based on the above, the DA consented to all relief PLAINTIFF sought

in his habeas corpus proceeding, and to his immediate release from prison.  *Id. ¶*

34.

77.    On May 7, 2016, Judge Briccetti ordered that PLAINTIFF be released

from prison.  By then, PLAINTIFF had served nearly nine years of his 10-year

sentence.

78.     On May 23, 2016, the DA's Office formally agreed on the record that PLAINTIFF was "actually innocent of the offenses of which he was convicted," that INSP. GEOGHEGAN's conclusion that the fire was incendiary was "fundamentally flawed," and no witness observed PLAINTIFF put anything into the space above the bathroom ceiling tiles.  Stipulation of Settlement, attached as Exhibit F, at ¶ 8.

79.     The DA conceded that there "was no physical evidence of any paper towels having been the cause of the fire."  *Id.* ¶ 11; ¶ 22, *supra.*

80.     On May 23, 2016, Judge Briccetti granted PLAINTIFF's habeas corpus petition, vacated his conviction, dismissed his indictment with prejudice, and barred the prosecution from ever retrying PLAINTIFF.  Exhibit G (Final Judgment Order).

## PLAINTIFF'S DAMAGES

81.     PLAINTIFF's injuries and damages, all of which were foreseeable and proximately brought about by defendants' acts and omissions, include, but are not limited to:

      (a)     His false arrest and malicious prosecution;

      (b)     Nearly nine years of unjust incarceration;

      (c)     Mental and emotional damages from being falsely arrested, incarcerated, and required to defend against false charges;

      (d)     Shame and humiliation;

    (e)    Legal fees and expenses for which he is responsible exceeding

    (f)    The loss of employment income, and diminution of future earning ability; and

    (g)    Substantial pain and suffering.

## FIRST CAUSE OF ACTION
### (False Arrest Under State Law; All Defendants)

82.    PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 81 of this Complaint, and incorporates them here.

83.    Defendants, individually and acting in concert and/or aiding and abetting each other, intended to confine PLAINTIFF.

84.    PLAINTIFF was conscious of that confinement and did not consent to it.

85.    Defendants' confinement of PLAINTIFF was not privileged and made in disregard of overwhelming evidence of PLAINTIFF's innocence.

86.    As a result of defendants' actions, PLAINTIFF suffered damages as set forth in ¶ 81, above.

87.    PUTNAM and CARMEL are liable for defendant's actions under the principle of *respondeat superior*.

## SECOND CAUSE OF ACTION
### (Malicious Prosecution Under State Law; All Defendants)

88.     PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 87 of this Complaint, and incorporates them here.

89.     By virtue of the foregoing, defendants, acting in concert with, and aiding and abetting each other, and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceedings against PLAINTIFF.

90.     The criminal proceedings terminated in PLAINTIFF's favor.

91.     There was no probable cause for the commencement or the continuation of the criminal proceedings.

92.     The defendants acted with actual malice.

93.     PUTNAM and CARMEL are liable for defendant's actions under the principle of *respondeat superior*.

## THIRD CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress Under State Law; All Defendants)

94.     PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 93 of this Complaint, and incorporates them here.

95.     Defendants engaged in a continuous pattern of extreme and outrageous conduct directed at PLAINTIFF from March 2007 until at least May 2016, when the charges against PLAINTIFF were dismissed.

96.     Defendants engaged in that pattern of conduct with an intention to cause, or in reckless disregard of the substantial probability that it would cause, PLAINTIFF severe emotional distress.

97.     Specifically, defendants, individually, and conspiring, acting in concert with and/or aiding and abetting one another and other persons for whose acts they are liable, created false official records to be used against PLAINTIFF, initiated or caused the initiation and continuation of false and unfounded criminal charges against PLAINTIFF while lacking probable cause to do so, and suppressed exculpatory material, including the evidence detailed in ¶¶ 43-44, and 72-75, above, from prosecutors charged with deciding whether to prosecute PLAINTIFF.

98.     PLAINTIFF suffered severe emotional distress as a result of defendants' actions.

99.     By virtue of the foregoing, PLAINTIFF suffered the actual and special damages identified in ¶ 81.

100.    PUTNAM and CARMEL are liable for defendant's actions under the principle of *respondeat superior*.

## FOURTH CAUSE OF ACTION
### (Actual and Constructive Fraud Under State Law; All Defendants)

101.    PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 100 of this Complaint, and incorporates them here.

20

102.    Defendants made representations of material "fact" which were false, and known by defendants to be false, for the purpose of inducing others to rely upon such false representations, and those other parties did so rely, in ignorance of the falsity of such representations, to the detriment of PLAINTIFF, thereby causing PLAINTIFF's damages alleged in ¶ 81.  Moreover, defendants had a special or fiduciary duty to PLAINTIFF to refrain from committing such acts, to refrain from using false or misleading evidence, and to provide prosecutors will all exculpatory or impeaching evidence relevant to the charges against PLAINTIFF.

103.    PUTNAM and CARMEL are liable for defendants' actions under the principle of *respondeat superior*.

**FIFTH CAUSE OF ACTION**
**(Evidence Manufacturing; Denial of A Fair Trial Under The Fifth, Sixth, and Fourteenth Amendments; 42 U.S. C. § 1983; All Defendants)**

104.    PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 104 of this Complaint, and incorporates them here.

105.    Defendants, acting in concert and aiding and abetting the other, created numerous false reports omitting the exculpatory information detailed in ¶¶ 43-44, and 72-75, above, and alleging PLAINTIFF intentionally set the fire in Smalley's Inn.

106.   The misleading information contained in those reports, and the information omitted from them, was likely to, and did, influence the jury's decision.

107.   Those defendants then forwarded those reports to prosecutors, and made verbal representations to those prosecutors affirming the content of those reports.  The prosecutors  in turn relied on them to commence formal criminal proceedings against PLAINTIFF.

108.   Defendants' actions deprived PLAINTIFF of his right to not be prosecuted on fabricated evidence, and to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, and were the proximate cause of PLAINTIFF's injuries (¶ 81).

## SIXTH CAUSE OF ACTION
**(Wrongful Arrest And Detention Under The Fourth Amendment  and *Manuel v. City of Joliet,* 137 S.Ct. 911 (2017); 42 U.S. C. § 1983; All Defendants)**

109.   PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 108 of this Complaint, and incorporates them here.

110.   Defendants, without probable cause, and in disregard of overwhelming evidence of PLAINTIFF's innocence, wrongfully arrested and detained him at the scene and thereafter for intentionally setting the fire at Smalley's Inn.

111.   Moreover, defendants, in absence of probable cause for PLAINTIFF's continued seizure, continued the seizure by making false representations and submitting false reports to prosecutors who continued the charges against PLAINTIFF and his detention and or seizure.

112.   By virtue of the foregoing, defendants are liable for PLAINTIFF's wrongful arrest and detention, and the damages set forth in ¶ 81, above.

## SEVENTH CAUSE OF ACTION
**(Malicious Prosecution and Deprivation of Liberty
Under the Fourth, Fifth, Sixth, and Fourteenth
Amendments; 42 U.S. C. § 1983; All Defendants)**

113.   PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 112 of this Complaint, and incorporates them here.

114.   The individual defendants, by virtue of the foregoing, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceedings against PLAINTIFF.

115.   The criminal proceedings terminated in PLAINTIFF's favor.

116.   There was no probable cause for the commencement or the continuation of the criminal proceedings.

117.   The Defendants acted with actual malice.

118.   The aforesaid conduct operated to deprive PLAINTIFF of his rights under the Constitution and the Laws of the United States:

(a)    Not to be arrested, prosecuted, detained, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including false allegations in violation of the Fourth and Fourteenth Amendments, and the Due Process and Fair Trial Clauses of the Fifth, Sixth and Fourteenth Amendments, to the U.S. Constitution; and

(b)    Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

119.    The foregoing violations of PLAINTIFF's federal constitutional rights by the defendants, together with their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the continuation of Plaintiff's malicious prosecution without probable cause, and his other injuries and damages.

120.    The foregoing violations of PLAINTIFF's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

121.    Defendants committed the foregoing violations of PLAINTIFF's rights knowingly, intentionally, willfully, recklessly, negligently, and/or with deliberate indifference to PLAINTIFF's constitutional rights.

122.    By reason of the foregoing, the defendants are liable for the damages set forth in ¶ 81, above.

## EIGHTH CAUSE OF ACTION
**(Failure To Intervene; 42 U.S.C. § 1983; Fourth, Fifth and Fourteenth Amendments; Sgt. Behan, Sgt. Dearman, Chief Johnson, and Does 4-5)**

123.  PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 122 of this Complaint, and incorporates them here.

124.  Defendants, who were present at the scene and had direct knowledge of the violation of PLAINTIFF's Fourth, Fifth and Fourteenth Amendment rights through his wrongful arrest and detention, and malicious prosecution, based on a non-existent arson, exhibited deliberate indifference and/or gross negligence toward PLAINTIFF's rights by failing to intervene to prevent the violation of those rights by their peers and subordinates, even though they had legal and constitutional obligations to do so.

125.  Rather than intervene, defendants directly participated in, ratified, and aided and abetted, the violation of  PLAINTIFF's constitutional rights as set forth above.

126.  Each of the defendants had a realistic opportunity to intervene and prevent the harm PLAINTIFF suffered, a reasonable person in defendants' positions would know that PLAINTIFF's rights were being violated, yet none of the defendants took reasonable steps to intervene.

127.  The defendants, by virtue of the foregoing, are liable for the damages set forth in ¶ 81, above.

## NINTH CAUSE OF ACTION
**(Denial of A Fair Trial Under The Fifth, Sixth, Fourteenth Amendments, and *Brady v. Maryland*, 373 U.S. 83 (1963); All Individual Defendants)**

128.    PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 127 of this Complaint, and incorporates them here.

129.    Defendants, acting in concert and aiding and abetting the other, intentionally, recklessly, and with deliberate indifference to PLAINTIFF's constitutional rights, suppressed from the DA's Office (a) the exculpatory and impeaching information detailed in ¶¶ 43-44, above, and 72-75, above, (b) the fact that other defendants had created false reports, (c) that defendants made false representations to the DA's Office that the fire was an arson, and (d) that defendants made false representations to the DA's Office that the possibility that the fire was accidental and electrical had been eliminated.

130.    The suppressed evidence, ¶¶ 43-44, above, and 72-75, above, was material, likely to influence a jury's decision, and there is a reasonable probability that had the evidence been disclosed to the defense, the result of PLAINTIFF's trial would have been different.

131.    Defendants' actions deprived PLAINTIFF of his right

    (a)    Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including the statements and testimony of witnesses who have been improperly influenced, coerced,

26

or manipulated to provide such statements and testimony, in violation of the Due Process and Fair Trial Clauses of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

(b)    Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

(c)    To timely disclosure of all material evidence favorable to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

132.   The foregoing violations of PLAINTIFF's federal constitutional rights by defendants and their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the initiation and continuation of Plaintiff's criminal prosecution, his loss of liberty and detention without bail, his wrongful conviction, his subsequent imprisonment, and his other injuries and damages.

133.   The foregoing violations of PLAINTIFF's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the defendants' employment and authority.

134.   Defendants committed the foregoing violations of  PLAINTIFF's rights knowingly, intentionally, willfully, recklessly, and/or with deliberate

indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon PLAINTIFF's constitutional rights.

135.   By reason of the foregoing, the defendants are liable to PLAINTIFF pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages detailed in ¶ 81, above.

**TENTH CAUSE OF ACTION**
**(*Monell*/42 U.S.C. § 1983:  Claim Against Putnam and Carmel For The Actions Of Chief Johnson)**

136.   PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 135 of this Complaint, and incorporates them here.

137.   At the time of PLAINTIFF's prosecution, PUTNAM and CARMEL by practice, custom, and affirmative ordinances or memorandums, delegated all final policymaking authority with respect to (a) the determination of the causes of fires, and (b) disclosures to the DA's Office regarding the causes of those fires, to the Chief of the Putnam County Fire Department, CHIEF JOHNSON.  PUTNAM and CARMEL officially vested CHIEF JOHNSON with the authority to carry out the actions causing PLAINTIFF's civil rights violations.

138.   In that regard, CHIEF JOHNSON's decisions in those areas, at the time they were made, for practical or legal reasons constitute PUTNAM and CARMEL's final decisions, and were the moving force behind PLAINTIFF's injuries.

139.   In that regard, CHIEF JOHNSON, in his role as final policymaker for PUTNAM and CARMEL in the aforementioned areas, directly participated in, aided and abetted, and conspired with other defendants and unnamed individuals, to falsely designate the fire an arson and to have PLAINTIFF falsely arrested, prosecuted, and convicted for a non-existent crime by, among other things, misleading the DA's Office as to the nature of the fire.  Moreover, CHIEF JOHNSON's failure to supervise his subordinates and other members of the Fire Investigation team so as to prevent them from committing the acts and omissions detailed in ¶¶ 42-55, 59-60, and 72-75, above, renders PUTNAM and CARMEL liable for that conduct.  *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (holding that "even a single action by a decision maker who possesses final authority to establish municipal policy with respect to the action ordered is sufficient to implicate the municipality" and that Town could be held liable for action of Police Chief who personally witnessed police brutality but failed to intervene) (quotes and citations omitted).

140.   CHIEF JOHNSON's actions deprived PLAINTIFF of his right

(a)   Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including the statements and testimony of witnesses who have been improperly influenced, coerced, or manipulated to provide such statements and testimony, in violation of the Due Process and Fair Trial Clauses of the Fifth, Sixth and Fourteenth Amendments to the

United States Constitution, *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (recognizing "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity");

(b)     Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

(c)     To timely disclosure of all material evidence favorable to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

141.    The foregoing violations of PLAINTIFF's federal constitutional rights and resultant injuries were directly, foreseeably, proximately, and substantially caused by conduct, chargeable to PUTNAM and CARMEL, amounting to deliberate indifference to PLAINTIFF's constitutional rights.

142.    CHIEF JOHNSON, personally and/or through his authorized delegates, at all relevant times had final authority for designating whether a fire was electrical, accidental, or an arson, and conveying that information to the District Attorney's Office in connection with their decisions as to whether a criminal prosecution was warranted.

143.    CHIEF JOHNSON, personally and/or through his authorized delegates, at all relevant times had final authority, and constituted Putnam County

and Town of Carmel policymaker for whom PUTNAM and CARMEL, with respect to the above-mentioned areas.

144.   During all times material to this Complaint, PUTNAM and CARMEL, through its policymakers, owed a duty to the public at large and to PLAINTIFF, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, as detailed above.

145.   By virtue of the foregoing, PUTNAM and CARMEL are liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his resultant injuries.

## ELEVENTH CAUSE OF ACTION
### (Defamation, *Per Se*  Libel Under New York Law; Porto)

146.   PLAINTIFF repeats and realleges each and every allegation contained in ¶¶ 1 through 145 of this Complaint, and incorporates them here.

147.   On or about May 24, 2016, f*ollowing PLAINTIFF's exoneration*, PORTO told to a reporter from loud.com that PLAINTIFF was not innocent of the arson charges, a statement which the reporter then printed.  Specifically, PORTO declared to the reporter, fully aware that it would be printed, that PLAINTIFF is "not an innocent guy." (Exhibit H).  PORTO continued, "[w]hat are the odds of me spitting in his eye and five minutes later the place just happens to be on fire[.]" *Id.*  PORTO issued a press release to the public and Putnam County Examiner regarding the crime for which PLAINTIFF was arrested.  In that release, PORTO

stated "I don't care if there is no evidence, [PLAINTIFF] did it[,]" referring to arson.

148.   PORTO's statements were false (¶¶ 147, above) and published without privilege or authorization to the public in general.

149.   PORTO's statement, judged by, at a minimum, a negligence standard, caused special harm and/or constitute defamation *per se* as it accused PLAINTIFF of being guilty of a serious crime, arson.

150.   By reason of the foregoing, PORTO is liable to PLAINTIFF pursuant for compensatory,  punitive, and special damages detailed in ¶ 81, above.

## **DAMAGES DEMAND**

WHEREFORE, PLAINTIFF demands judgment against defendants as follows:

a.    For compensatory damages of not less than $25,000,000;

b.    For punitive damages against the individual defendants of not less that $40,000,000;

c.    For reasonable attorneys' fees, together with costs and

d.    For pre-judgment interest as allowed by law; and

e.    For such other and further relief as this Court may deem just

DATED:    New York, New York
          February 22, 2018


_____
*Rita Dave*
RITA DAVE, ESQ.
26 Court Street
Suite 1212
Brooklyn, New York 11242
(516) 782-1614
Email: ritadaveesq@gmail.com

*Attorney for Plaintiff William Haughey*