UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ X
                                                          :
WILLIAM HAUGHEY,                                          :
                                                          :
                        Plaintiff,                        :        18 CV 2861 (KMK)
            -against-                                      :
                                                          :
THE COUNTY OF PUTNAM; THE TOWN OF CARMEL;                 :
INSPECTOR ROBERT GEOGHEGAN; ROBERT EFFEREN;               :
CHIEF DARYL JOHNSON; DOUGH CASEY; PO JUSTIN               :
FISCHER; DETECTIVE MICHAEL NAGLE; SERGEANT                :
ROBERT BEHAN; SERGEANT JOHN DEARMAN; JOSEPH               :
CHARBONNEAU; JOHN DOES 1-5; and ANTHONY F. PORTO,         :
SR., ANTHONY M. PORTO, JR., SMALLEY'S INN &               :
RESTAURANT aka SMALLEYS INN,TNT CAFE INC.,                :
operating under the trade name : Smalley's Inn and/or Smalley's :
Inn Mainstreet : Cafe,                                    :
                                                          :
                        Defendants.                       :
\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ X

---

**PLAINTIFF'S MEMORANDUM OF LAW OPPOSING
DEFENDANT CHIEF DARYL JOHNSON'S FED.R.CIV.P. 12
(B) (6) MOTION TO DISMISS**

---

RITA DAVE, ESQ.                          OSCAR MICHELEN. ESQ.
26 Court Street                          Cuomo, LLC
Suite 1212                               200 Old Country Road
Brooklyn, New York 11242                 Suite 2 South
Telephone: (516) 782-1614                Mineola, New York 11501
Email: ritadaveesq@gmail.com             Telephone: (516) 741-3222
                                         Fax: (516) 741-3223
                                         Email: omichelen@cuomollc.com
                                         (*Of Counsel*)


*Attorneys for Plaintiff William Haughey*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT …………………………………………………………  1

STATEMENT OF FACTS …………………………………………………………..  4

POINT I

    HAUGHEY'S COMPLAINT AMPLY PLEADS PLAUSIBLE CLAIMS
    AGAINST CHIEF JOHNSON FOR PARTICIPATING IN THE
    VIOLATIONS OF HAUGHEY'S CONSTITUTIONAL RIGHTS ……………………  7

    A.    The Applicable Standard ………………………………………………  7

    B.    The Complaint Amply Pleads Chief Johnson's Direct Participation In
        Violating Haughey's Constitution Rights …………………………….…..  8

    C.    The Complaint Amply Alleges Facts Establishing Chief Johnson's
        Supervisory Liability For Failing To Intervene And Supervise His
        Subordinates ………………………………………………………..  12

POINT II

    CHIEF JOHNSON'S CLAIM THAT HIS ACTIONS WERE REASONABLE
    FOR QUALIFIED IMMUNITY PURPOSES IS BASED ON A FALSE
    READING OF THE COMPLAINT,  AND READ PROPERLY, THE
    COMPLAINT'S ALLEGATIONS PRECLUDE DISMISSAL ON QUALIFIED
    IMMUNITY GROUNDS  ……………………………………………..……….  15

POINT III

    CHIEF JOHNSON'S ARGUMENT THAT HAUGHEY DOES NOT STATE
    A CIVIL CONSPIRACY CLAIM IS BASED ON A FALSE READING OF
    THE COMPLAINT ………..……………………………………………..  18

CONCLUSION …………………………………………………………..…  21

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Pages**

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999) …………………………………………….    8

*Alvarez v. Cty. of Orange*, N.Y., 95 F.Supp.3d 385 (S.D.N.Y. 2015) (Karas, J.) …………    7

*Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) ……………………………………………….    7, 8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) …………………………………..    7, 8

*Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015) ……………………..…….…    11

*Bradley v. City of New York*, 2007 WL 232945 (S.D.N.Y. Jan. 26, 2007) (Sweet, J.)……….    17

*Butler v. Hesch*, 286 F. Supp.3d 337 (N.D.N.Y. 2018) …………………………………..    18

*Conte v. Cty. of Nassau*, 2008 WL 905879 (E.D.N.Y. Mar. 31, 2008) (Bianco, J.) ………    10, 19

*Coggins v. Cty. of Nassau*, 988 F.Supp.2d 231 (E.D.N.Y. 2013) (Bianco, J.) …………….    11, 19

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir.1995) ……………………………………………    12

*Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015) …………………………………….    11, 16, 19

*Daytree at Cortland Square, Inc. v. Walsh*, 332 F.Supp.3d 610 (E.D.N.Y. 2018) …………    19

*Dunham v. City of New York*, 295 F.Supp.3d 319 (S.D.N.Y. 2018) (Karas, J.) …..………..    8

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir.1980) ………….……………………………    13

*Gronowski v. Spencer*, 424 F.3d 285 (2d Cir. 2005) ………………………………………..    9

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) …………………………………….    20

**Cases**                                                                                              **Pages**

*Holmes v. Allstate Corp.*, 2012 WL 627238  (S.D.N.Y. Jan.27, 2012) …………………….    10

*Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565 (2d Cir. 2011) …………………    8, 15

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) …………………………….    17

*Medtech Prod. Inc. v. Ranir, LLC*, 596 F.Supp.2d 778 (S.D.N.Y. 2008) ………………….    18

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ………………………..    2, 12

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015) ……………………………………..…    11

*Mickle v. Morin*, 297 F.3d 114 (2d Cir. 2002) …………………………………………    17

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) …………………………………..…    11

*Proffitt v. Ridgway*, 279 F.3d 503 (7th Cir. 2002) …………………………………….    20

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119 (2d Cir. 1991) ………….…………….…..    13

*Rogers v. Bisono*, 2016 WL 4224072 (S.D.N.Y. Aug. 9, 2016) (Sweet, J.) ………………    17

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F.Supp.3d 401 (S.D.N.Y. 2014) (Karas, J.) …………………………………………    10

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992) ……………………………………..    11, 20

*Warren v. Pataki*, 823 F.3d 125 (2d Cir. 2016)  ……………………………………………    12

*Wright v. Orleans Cty.*, 2015 WL 5316410 (W.D.N.Y. Sept. 10, 2015), *report and
recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015) ………………..    10

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) ……………………………………………    11, 16

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F.Supp.3d 634
(S.D.N.Y. 2017) (Pauley, J.) …………………………………………………..…    21

**Statutes**                                                                                      **Pages**

42 U.S.C. § 1983 ……………………………………………………………………  2, 8, 9

General Municipal Law § 204-d …………………………………………………………  12, 14


**Fed Rules of Civil Procedure**

Fed.R.Civ. P. 8 (a) (2) …………………………………………………………………  7, 13

 Rule 12 (b) (6) ………………………………………………………………….…  13


**Federal Rules of Evidence**                                                                     **Pages**

Fed.R.Evid. 801 ………………………………………………………………………..  13

Fed.R.Evid. 406 ………………………………………………………………………..  13


**Secondary Sources**

2A Moore's Federal Practice ¶ 8.13 ……………………………………………………  13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
— — — — — — — — — — — — — — — — — — — — — — — — — — — — — — —X
                               :

WILLIAM HAUGHEY,                         :

                         :

                  Plaintiff,         :      18 CV 2861 (KMK)

         -against-                :

                         :

THE COUNTY OF PUTNAM; THE TOWN OF CARMEL;  :
INSPECTOR ROBERT GEOGHEGAN; ROBERT EFFEREN;  :
CHIEF DARYL JOHNSON; DOUGH CASEY; PO JUSTIN  :
FISCHER; DETECTIVE MICHAEL NAGLE; SERGEANT  :
ROBERT BEHAN; SERGEANT JOHN DEARMAN; JOSEPH  :
CHARBONNEAU; JOHN DOES 1-5; and ANTHONY F. PORTO,:
SR., ANTHONY M. PORTO, JR., SMALLEY'S INN &  :
RESTAURANT aka SMALLEY'S INN,TNT CAFE INC.,  :
operating under the trade name : Smalley's Inn and/or Smalley's  :
Inn Mainstreet Cafe,                   :

                         :

                 Defendants.      :

                         :
— — — — — — — — — — — — — — — — — — — — — — — — — — — — — —X

---

**PLAINTIFF'S MEMORANDUM OF LAW OPPOSING
DEFENDANT CHIEF DARYL JOHNSON'S FED.R.CIV.P. 12
(B) (6) MOTION TO DISMISS**

---

## <u>PRELIMINARY STATEMENT</u>

William Haughey ("Haughey") spent nine horrific years in prison for a so-called "arson"

that never occurred.  As the Putnam County District Attorney conceded in consenting to vacatur

of Haughey's conviction, he was actually sent to prison "for helping to put out a fire - not start one."

Haughey's conviction was no accident.  It was a concerted effort by disgruntled Carmel, New York business owners, aided at every step by willing local officials, to frame Haughey for the "crime."

Those officials —town detectives and the fire chief, and county fire inspectors— intentionally falsified reports and affirmatively misrepresented to the Putnam County DA's Office that the fire underlying Haughey's charges was an arson.  In truth, it was scientifically impossible to conclude that the fire —a small one in the bathroom ceiling of a centuries old Inn in Carmel New York— was an "arson," since the fire chief and fire inspectors intentionally failed to eliminate the myriad of electrical issues that actually caused the fire.   To ensure their scheme was successful, the fire chief and inspectors also suppressed from the District Attorney  and Haughey photographic evidence pointing to the accidental nature of the fire.   The defendants scheme worked: Haughey was convicted of arson and sentenced to 10 years in prison.

In May 2016, Judge Vincent I. Briccetti vacated Haughey's conviction, barred any retrial, and ordered Haughey released from prison.  But the damage had already been done: Haughey had served almost all of his 10-year sentence, his life was destroyed, and he had suffered unthinkable horrors as an innocent man imprisoned not only for a "crime" he didn't commit, but for a "crime" that never occurred.  This lawsuit followed.

Haughey's Second Amended Complaint (the "Complaint") contains claims under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the Town of Carmel, the County of Putnam.  The Complaint also contains claims under 42 U.S.C. §

1983 against the individual defendants in this action.   The County of Putnam, and the two

individual defendants employed by the County, Inspectors Geoghegan and Efferen, have

answered the Complaint and have *not* moved to dismiss. Nor has Defendant Anthony F. Porto,

Sr. moved to dismiss the Complaint.[1]

Presently before the Court is defendant Town of Carmel Fire Department Chief Daryl

Johnson's ("Chief Johnson") motion to dismiss the six federal claims asserted against him,

individually, in the Complaint: (1) Evidence manufacturing and denial of a fair trial, (2) wrongful

arrest and detention, (3) malicious prosecution, (4) failure to intervene, (5) suppression of *Brady*

material and denial of a fair trial, and (6) civil conspiracy.  *Id.* ¶¶ 90-126.

Chief Johnson raises three grounds for dismissal: (1) Haughey failed to state a claim

against him, (2) Chief Johnson is entitled to qualified immunity, and (3) Haughey failed to plead

a civil conspiracy.  Chief Johnson's motion is frivolous.

His argument that the Complaint fails to state a claim is based on a false reading of the

Complaint, and ignores huge portions of the Complaint particularizing the unlawful conduct he

committed in the course of the case.  Chief Johnson's argument that he is entitled to qualified

immunity disregards binding Second Circuit case law holding the constitutional rights at issue

were clearly established before the events underlying the complaint, and no objectively

reasonable public official could have thought the falsification of evidence and the related wrongs

didn't violate clearly established federal law.  And Chief Johnson's arguments regarding the

insufficiency of Haughey's conspiracy allegations are based on the same false reading of the

---

[1]By two separate motions, the Town of Carmel and its employees, and Defendant Anthony M. Porto, Jr.,
moved to dismiss the Complaint.  Our oppositions to those motions will be filed by July 5, 2019.

Complaint as his earlier arguments, and disregard the Complaint's allegations amply pleading civil conspiracy.

**STATEMENT OF FACTS**

On March 10, 2007, Plaintiff William Haughey ("Haughey") was one of several patrons socializing in Smalley's Inn & Restaurant, an old tavern in the small Town of Carmel, New York. The Inn used an antiquated electrical system and just months prior to the fire for which Haughey would be falsely arrested, the New York State Board of Fire Underwrites cited the Inn for multiple electrical code violations., and ordered the Inn to repair them.  Complaint ¶¶ 26-30.

 Sometime in the evening, an electrical issue caused a small fire in the bathroom ceiling.  *Id.*                              ¶ 24.

Haughey and several other good Samaritans, smelling smoke,  ran into the bathroom, quickly located and extinguished the fire, removed burning materials from the ceiling and spared the tavern from serious damage.  *Id.*  ¶ 25.

The tavern's owners, however, defendants Anthony F. Porto, Sr. and Anthony M. Porto, Jr., (collectively "the Portos") used Haughey's good deed as a means to have him falsely arrested.  *Id.* ¶ 31.  The Portos were prominent business owners in Carmel, had close ties to local law enforcement, and there was bad blood between the Portos and Haughey because of Haughey's business dealings with the Portos' close friend.  *Id.* ¶ 32-33.  Seizing on Haughey's act of kindness, the Portos falsely reported to police that Haughey had set the fire.  *Id.* ¶¶ 34-37.

Detective Michael Nagle ("Detective Nagle") was the first officer to respond to the Inn, and after speaking to the Portos, went on to falsely tell all other responding officials that Haughey had set the fire by placing paper towels in the ceiling and igniting them.  *Id.* ¶ 47-49.

4

Town of Carmel Fire Chief Darryl Johnson and Putnam County Bureau of Emergency Services Inspectors Robert Geoghegan ("Inspector Geoghegan") and Robert Efferen ("Inspector Efferen") responded to the scene as well. Those two Putnam County Fire Investigators acted as "tool[s]" of Chief Johnson, and were there to assist Chief Johnson in his investigation. *Id.* ¶¶ 45-46, 131, 140.

Chief Johnson, "taking his cue" from Detective Nagle, then conducted a sham fire "investigation" and "falsely took the position that the fire did not have an electrical or accidental cause, and thus an arson had occurred." *Id.* ¶ 50. In truth, Chief Johnson's "investigation," "by its very nature, made it *impossible* to determine whether an arson had occurred as opposed to whether the fire had an electrical or accidental origin[.]" *Id.* ¶¶ 50-51, 53. Chief Johnson's investigation deviated from accepted fire investigation protocols and *intentionally* disregarded proper arson investigation procedures. *Id.*

After conducting that false "investigation," Chief Johnson prepared a Carmel Fire Department report falsely indicating that his subordinates, the Putnam Fire Investigation Team, had "determined that the fire was incendiary in nature." *Id.* ¶ 58. Chief Johnson, fully aware that his report and findings would be forwarded to and relied upon by the Putnam District Attorney's Office in deciding whether criminal charges would be lodged against Haughey, "directly participated in, aided and abetted, and conspired with other defendants and unnamed individuals, to falsely designate the fire an arson" and "to have [Haughey] falsely arrested, prosecuted, and

convicted for a non-existent crime by, among other things, misleading the DA's Office as to the nature of the fire." *Id.* ¶¶ 140.[2]

Chief Johnson also failed "to supervise his subordinates and other members of the Fire Investigation team so as to prevent them from" creating false reports designating the fire an arson, *id.* ¶¶ 140, 38-126, 55-59. Chief Johnson "was present at the scene and had direct knowledge of the violation of" Haughey's constitutional rights, "a realistic opportunity to intervene and prevent" Haughey's injuries, but instead of intervening, "directly participated in, ratified, and aided and abetted, the violation of" Haughey's rights. *Id.* ¶¶112-115 (Fourth Cause of Action naming Chief Johnson).

Chief Johnson's false report, and those of his on the scene assistants, Inspectors Geoghegan and Efferen, were used as basis for Haughey's arrest and then forwarded to the Putnam DA's Office which brought arson charges against Haughey. *Id.* ¶¶ 142, 127, 60-68. Following Haughey's indictment, Chief Johnson, along with the other defendants, "continued to mislead the DA's Office, through affirmative representations, actions and omissions, and assure that Office that the fire was incendiary in nature, and all electrical and accidental causes" for it "had been eliminated[.]" *Id.* ¶ 67.

All of Chief Johnson's action were intentional, reckless, and deliberately indifferent to Haughey's constitutional rights. *Id.* ¶ 142. As a result of Chief Johnson's and the other defendants' actions, Haughey was convicted and sentenced to 10 years in prison. *Id.* ¶ 69. As previously stated, he served 9 years and was then exonerated in May 2016. *Id.* ¶¶ 73-88.

---

[2]Haughey's allegation in this regard is contained in his Sixth Cause of Action pleading a *Monell* claim against the Town of Carmel for Chief Johnson's actions. Paragraph 127 of the Complaint, under the Sixth Cause of Action, incorporates and realleges the Complaint's prior allegations under that cause of action.

**POINT I**

**HAUGHEY'S COMPLAINT AMPLY PLEADS PLAUSIBLE CLAIMS
AGAINST CHIEF JOHNSON FOR PARTICIPATING IN THE
VIOLATION OF HAUGHEY'S CONSTITUTIONAL RIGHTS**

Despite Haughey's detailed allegations concerning Chief Johnson's wrongdoing, Chief

Johnson moves to dismiss the Complaint, claiming Haughey's allegations against him are

"sparse," and allege conduct that isn't attributable to him.   In making that argument, however,

Chief Johnson intentionally ignores entire portions of the Complaint supporting his liability for

directly participating in violation of Haughey's constitutional rights, failing to intervene to stop

those violations, and failing to supervise his subordinates.  Setting Chief Johnson's false reading

of the Complaint, a true reading of the Complaint, drawing all inferences in Haughey's favor,

compels the conclusion that Haughey stated several plausible federal claims against  Chief

Johnson.

**A.      The Applicable Standard**

A pleading must contain a "short and concise statement of the claim showing that the

pleader is entitled to relief."  Fed.R.Civ.P. 8 (a) (2).  Under this rule, "a complaint must contain

sufficient factual matter, accepted as true ... [to support] 'a claim to relief that is plausible on

its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly,*

550 U.S. 544, 570 (2007).

As Your Honor stated in *Alvarez v. Cty. of Orange, N.Y.*, 95 F. Supp.3d 385, 391

(S.D.N.Y. 2015) (Karas, J.), a complaint "does not need detailed factual allegations" to survive

a motion to dismiss, but a plaintiff is obligated to provide more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action.  The Complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level," *id.*, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 563.

In evaluating the plausibility of the complaint, the court must accept the plaintiff's allegations as true and give him the benefit of all reasonable inferences from the pleaded facts. *See Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 567 (2d Cir. 2011). The court's inquiry is "context-specific task," and it may use "its judicial experience and common sense," to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

Finally, a plaintiff is allowed to plead inconsistent or alternative claims for liability. *See Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (Rule 8 "permits plaintiffs to "plead two or more statements of a claim, even within the same count, regardless of consistency.")[3]

## B.     The Complaint Amply Pleads Chief Johnson's Direct Participation In Violating Haughey's Constitution Rights

"In order to establish a claim under Section 1983, a plaintiff must show that (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Dunham v. City of New York*, 295 F. Supp.3d 319, 330 (S.D.N.Y. 2018 (Karas, J.) (quotes and citations omitted).

---

[3]A plaintiff is allowed to plead inconsistent or alternative claims for liability. *See Adler v. Pataki*, 185 F. 3d 35, 41 (2d Cir. 1999) (Rule 8 permits plaintiffs to "plead two or more statements of a claim, even within the same count, regardless of consistency.") "The flexibility afforded by Rule 8 (e) (2) is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." *Id.* at 41. Moreover, a plaintiff need not specifically label his claims as "in the alternative." *Id.*

One way to show a defendant violated a plaintiff's rights for § 1983 purposes is to plead the defendant directly participated in the wrongs alleged in a complaint. "[D]irect participation' as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005).

Haughey's Complaint contains a host of allegations, which must at this point be accepted as true, showing Chief Johnson's direct participation in the violation of Haughey's rights. Haughey alleges:

1.    When Chief Johnson arrived at the scene, he knew the Portos, their family, and was aware of their status as prominent Carmel, New York business owners with close ties to local law enforcement, Complaint ¶¶ 32, 41,

2.    While two fire investigators from the Putnam County Bureau of Emergency Services responded to the scene as well, they were simply "a tool for the Fire Chief" and their role was simply to assist Chief Johnson in making his determination as to whether an arson occurred, *id.* ¶¶ 44-46,[4]

3.    Chief Johnson, taking his cue from Porto and the first detective on the scene, went along with the false narrative that the fire was an arson, and conducted a sham fire investigation that "by its very nature, made it *impossible* to determine whether an arson had occurred" in the first place, *id.* ¶¶ 47, 50-51,

4.    Chief Johnson then prepared a *false* Carmel Fire Department report indicating his on the scene subordinates, "the Putnam Fire Investigation Team, which were one of his tools and which reported to him," had determined the fire was incendiary in nature, *id.* ¶ 58,

---

[4]Chief Johnson argues the Complaint "does not allege that [he] was a member of the" Putnam County Fire Investigation Team, "because he was not." Chief Johnson's Memorandum of Law In Support of Motion To Dismiss ("Chief Johnson's Memo. of Law"), p. 6. Of course not. Haughey's Complaint contends the Putnam County Fire Team Investigators *were merely tools of Chief Johnson*, and that their role was simply *to assist Chief Johnson* in the fire investigation. *Id.* ¶¶ 45-46, 131, 140. That Chief Johnson didn't sign Inspectors Geoghegan and Efferen's reports, and wasn't referenced in them, and was officially part of their team has no bearing on the sufficiency of the Complaint's allegations that Chief Johnson had the supervisory role at the scene and directly participated in the violating Haughey's rights.

5.    Chief Johnson prepared that false report knowing full well that (a) it was impossible to determine whether the fire was an arson, (b) he personally had conducted a sham investigation, *id*. 47, 50-51, and (c) his subordinates had submitted several false reports claiming the fire was an arson, *id*. ¶ 55 ("*the individual defendants*, collectively, acting in concert, aiding and abetting each other, and conspiring with each other, prepared a series of false report memorializing the knowingly false claim that all accidental causes for the fire had been eliminated and the fire was an arson") (emphasis added),[5]

6.    Chief Johnson, "fully aware that his reports and findings would be forwarded to and relied upon by the Putnam District Attorney's Office to decide whether criminal charges were warranted against [Haughey], directly participated in, aided and abetted, and conspired with other defendants and unnamed individuals, to falsely designate the fire an arson and to have [Haughey] falsely arrested, prosecuted, and convicted for a non-existent crime by, among other things, misleading the DA's Office as to the nature of the fire[.]" *Id.* ¶ 140,

7.    Chief Johnson, along with other defendants, did not provide the DA's Office with, or inform it of, various exculpatory photographs taken at the crime scene, *id.* ¶¶ 60-62, 83,

8.    The Putnam DA's Office, deceived by Chief Johnson and his co-conspirators' ("the defendants") false reports, indicted Haughey, *id.* ¶ 64,

9.    Following Haughey's indictment, "the individual defendants continued to mislead the DA's Office, through affirmative representations, actions and omissions, and

---

[5]We note that allegations such as these, referring to the individual defendants' collective actions, after outlining each defendant's individual acts and omissions, are not the type of "group-pleadings" condemned by courts.  An improper group-pleading is one that fails "to differentiate as to which defendant was involved in the alleged unlawful conduct," *Holmes v. Allstate Corp.*, 2012 WL 627238, at 7 and 22 (S.D.N.Y. Jan.27, 2012) and "fails to give each defendant fair notice of the claims against it." *Wright v. Orleans Cty.*, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015), *report and recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015).  Haughey's Complaint details the specific individual acts committed by each defendant and only after doing so, refers to those defendants collectively when they all participated in the same act or omission.  *See e.g. Conte v. Cty. of Nassau*, 2008 WL 905879, at *20 (E.D.N.Y. Mar. 31, 2008) (Bianco, J.) ("Plaintiff has sufficiently alleged the elements of a Section 1983 conspiracy" by alleging '[a]ll defendants ... conspired to injure the plaintiff' and spelling out those defendants' collective actions).  Chief Johnson cannot legitimately claim he lacked notice of the claims against him.  *See* Chief Johnson's Memo. of Law, p. 2 ("The Second Amended Complaint asserts five claims against Mr. Johnson, all alleging violations of 42 U.S.C. § 1983 arising from Mr. Johnson's alleged role in the investigation of the Smalley's fire and Mr. Haughey's prosecution.")  Thus, Haughey's Complaint, even if "sub-optimal, [is sufficient to] apprise each [defendant] of the nature of their participation in the alleged" wrongful conduct.  *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp.3d 401, 425 (S.D.N.Y. 2014) (Karas, J.).

assure that Office that the fire was incendiary in nature, and all electrical and accidental causes" for it "had been eliminated[.]" *Id.* ¶ 67, and

10.     Chief Johnson, "individually" and acting in concert and aiding and abetting the others who wronged Haughey, "acted intentionally, recklessly, and with deliberate indifference to" Haughey's constitutional rights." *Id.* ¶ 142

These allegations show Chief Johnson directly participated in those wrongs. *See Coggins v. Cty. of Nassau*, 988 F. Supp.2d 231, 246 (E.D.N.Y. 2013) (Bianco, J.) (plaintiff's allegation that police officer, to falsely arrest plaintiff, engaged in coverup, prepared false reports, and lied to DA regarding the case, "extensively allege[d]" officer's "direct participation in the alleged constitutional violations"), *aff'd in part*, *appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015); *Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 395 (S.D.N.Y. 2013) ( Seibel, J.) (finding allegations that sergeant instructed officer to use a taser on the plaintiff a second time, which plausibly constituted excessive force, provided plausible basis for sergeant's direct participation in constitutional wrongs); *accord* Haughey's Memorandum of Law Opposing Defendant Anthony M. Porto's Motion To Dismiss, pp. 9-13.[6]

---

[6]The Complaint states causes of action for, among other things, evidence manufacturing, malicious prosecution, false arrest, and suppression of *Brady* material.  *See e.g. Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir. 2000) (recognizing a constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity."); *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015) (upholding judgment against Medicaid Fraud Unit Investigator for fabricating evidence against plaintiff, consisting of falsified billing summaries with "material omissions"); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) (police department forensic chemist who withheld exculpatory evidence and fabricated inculpatory evidence, "continued" criminal proceeding after its initiation, and was thus liable for malicious prosecution under § 1983); *Bermudez v. City of New York*, 790 F.3d 368, 376 (2d Cir. 2015) (a police officer may be liable for suppressing *Brady* material if he conceals that evidence from the prosecution); *United States v. Eisen*, 974 F.2d 246, 268 (2d Cir. 1992) ("[T]he basic principle" governing conspiracies is "that conspirators are generally held liable for the known or reasonably foreseeable acts of all other co-conspirators committed in furtherance of the conspiracy"); *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) ("[O]nce the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy.")

In light of the above, Chief Johnson's attempt to to have the Complaint dismissed based on Haughey's citation to General Municipal Law § 204-d must be rejected. Haughey merely cited § 204-d as one item of evidence to support his contention New York State made Chief Johnson a final policymaker for *Monell* purposes (with respect to determining whether a fire was an arson). Complaint ¶¶ 42-43, 129. Haughey never contended § 204-d placed any particular obligation on Chief Johnson when he responded to the Inn to investigate the fire.

Yet Chief Johnson's motion *falsely* recasts Haughey's Complaint as contending Chief Johnson was required to comply with § 204-d when he arrived at the crime scene, and that his failure to do so is a basis for holding him liable. Chief Johnson's Memo. of Law, pp. 3-6. *Haughey made no such claim.* It is Chief Johnson's unlawful actions, as detailed above, pp. 9-10, that form the basis for his individual liability, not some purported failure to comply with § 204-d.

## C. The Complaint Amply Alleges Facts Establishing Chief Johnson's Supervisory Liability For Failing To Intervene And Supervise His Subordinates[7]

A supervisor may be liable for his subordinates actions upon a showing that the supervisor (1) participated directly in the alleged constitutional violation, (2) was grossly negligent in supervising subordinates who committed the wrongful acts, or (3) exhibited deliberate indifference to a plaintiff's rights by failing to act on information that those rights were being violated. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016), quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

---

[7]This theory of liability is pled as supplement, and alternative to, the direct participation theory discussed in Subpart B, *supra*.

Haughey's Complaint plausibly alleges Chief Johnson was the supervisor at the scene, and that Investigators Geoghegan and Efferen were his "tools" and under his direct supervision. Complaint ¶¶ 45-46, 131, 140.  Not only must this allegation be accepted as true for purposes of Chief Johnson's motion to dismiss, but it is independently supported by two letters from Putnam County Bureau of Emergency Services Commissioner Robert McMahon to Haughey, acknowledging that Putnam County Fire Inspectors are subordinate to the Carmel Fire Chief during fire investigations.[8]

As the Commissioner, McMahon could speak authoritatively on how his employees customarily functioned when interacting with the Town of Carmel's Fire Chief, and the role his employees played in the Fire Chief's investigations.   Commissioner' McMahon's admission that his employees played a subordinate role during Town of Carmel fire investigations, at the very least, makes it *plausible* that Chief Johnson had a supervisory role during the fire investigation in Haughey's case, and contextualizes Chief's Johnson's report regarding the Fire Team's conclusions.  Chief Johnson does not point to anything to undercut this evidence or to render it implausible.

---

[8]The fact that this evidence might be inadmissible at trial does not preclude its consideration on a Rule 12 (b) (6) motion to dismiss.  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123–24 (2d Cir. 1991) ("The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal pursuant to Rule 12(b)(6).  Under Rule 8(a), a plaintiff is not required to prove his case at the pleading stage.  Indeed, '[t]he pleading of evidence should be avoided.' 2A Moore's Federal Practice ¶ 8.13, at 8–68; *see, e.g., Geisler v. Petrocelli*, 616 F.2d 636, 639–40 (2d Cir. 1980). Thus, though admissibility of a document would properly be considered in the context of a motion for summary judgment in opposition to which the plaintiff has purported to adduce the proof on which he would rely at trial, evidentiary flaws in documents described in a pleading are not a basis for dismissal for failure to state a claim.  The adequacy of a § 1983 pleading must be assessed with all of these substantive and procedural principles in mind.")  In any event, the Commissioner or his successor could testify to these matters as a fact witness or one providing evidence of a municipal custom or practice, Fed.R.Evid. 406, and the letters are admissible against Putnam and its employees as party admissions, Fed.R.Evid. 801 (d) (2) (A), (C) and (D).

Instead, Chief Johnson erects a straw man.   Chief Johnson contends Commissioner McMahon's letters detailing the Putnam Fire Inspectors' subordinate role in fire investigations are "self-serving," "opinions" interpreting General Municipal Law § 204-d.  Chief Johnson Memo. of Law, pp. 6-7.  *But Commissioner McMahon's letters do not even mention General Municipal Law § 204-d*, much less give any "opinion" interpreting that statute.  Rather, Commissioner McMahon's letters simply recount the role Putnam County fire investigators serve when participating in Town of Carmel Fire investigations.

Moreover, Commissioner McMcMahon's statement that the fire chief is responsible for determining the cause of a fire —the statement Chief Johnson zeros in on as an "opinion" — is not predicated on General Municipal Law § 204-d —which, again, is never cited in the letters— but on his knowledge of the customary practice of how the Putnam County Bureau of Emergency Services interacts with the Town of Carmel Fire Department.   This is a reasonable inference that, particularly on a motion to dismiss, must be drawn in Haughey's favor.

Chief Johnson's characterization of Commissioner McMahon's letters as "self-serving" also misses the mark.  Chief Johnson cites no authority exempting Commissioner McMahon's letters from the general rule that the Complaint's allegations must be accepted as true.  Anytime a party submits an affidavit, opinion, or prior consistent statement, it is in some sense "self-serving."  That obviously does not preclude its consideration and it surely doesn't preclude relying on such letters to find a claim plausible at the pleading stage.  More importantly, dismissing the letters as "self-serving" —under the unsupported theory that Commissioner McMahon was attempting to shift blame to Chief Johnson— would require the Court to improperly draw a *negative* inference from the letters, when the Second Circuit requires the

14

Court to "draw[] all reasonable inferences in [Haughey's] favor." *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d at 567.

Finally, the Complaint alleges each of the three methods for establishing supervisory liability, specifically, that Chief Johnson (1) directly participated directly in the constitutional violations, *see* pp. 8-12, *supra*, (2) was grossly negligent in supervising subordinates who committed the wrongful acts, Complaint ¶¶ 113-114, and (3) deliberately indifferent to the violation of those rights by failing to act on information that those rights were being violated. Complaint, Fourth Cause of Action, pp. 24-25 (alleging Chief Johnson was on the scene and had direct knowledge of the violation of Haughey's rights, a realistic opportunity to intervene to prevent the violations, but rather than do so, acted with deliberate indifference and "participated in, ratified, and aided and abetted, the violation of" those rights).

In addition to the above, Haughey amply alleged Chief Johnson was involved in a civil conspiracy with the other defendants in this action. *See* Point III, infra; Haughey's Memorandum of Law Opposing Town Defendants' Motion To Dismiss, pp. 16-18; Haughey's Memorandum of Law Opposing Anthony M. Porto's Motion To Dismiss, pp. 9-13.

Thus, Chief Johnson's claim that the Complaint fails to state a claim against him must be rejected.

## POINT II

**CHIEF JOHNSON'S CLAIM THAT HIS ACTIONS WERE
REASONABLE FOR QUALIFIED IMMUNITY PURPOSES
IS BASED ON A FALSE READING OF THE COMPLAINT,
AND READ PROPERLY, THE COMPLAINT'S ALLEGATIONS
PRECLUDE DISMISSAL ON QUALIFIED IMMUNITY GROUNDS**

Chief Johnson does *not* contend Haughey's due process right not to be deprived of liberty by a government official fabricating evidence against him wasn't clearly established in 2007,

when Haughey was arrested and prosecuted.  *See Zahrey v. Coffey*, 221 F.3d 342, 357 (2d Cir.

2000) ("The right is appropriately identified as the right not to be deprived of liberty as a result

of any government officer's fabrication of evidence.  *That right was clearly established in*

*1996*") (emphasis added).  In fact, Chief Johnson does not contend *any* of the constitutional

rights Haughey alleges were violated weren't clearly established by 2007.

Instead, the sole ground Chief Johnson advances to support his claim that he is entitled to

qualified immunity is that his actions were objectively reasonable.  Chief Johnson's Memo. pp.

8-9.  He claims that assuming the truth of the Complaint's allegations, he "simply went to

Smalley's hours after the fire was extinguished, as requested by the Carmel Police, and wrote his

report concerning [Putnam Fire Team's] investigation.  He made no independent findings as to

the cause of the fire."  Chief Johnson's Memo. p. 8 (citations omitted).

But that argument is based on a false narrative, and not on the Complaint.  As we

demonstrated in Point I, the Complaint actually alleges Chief Johnson did far more than that.

The Complaint alleges Chief Johnson went along with the false narrative that the fire was an

arson and conducted a sham fire investigation that "by its very nature, made it *impossible* to

determine whether an arson had occurred; that he knowingly prepared a false Carmel Fire

Department report indicating his on the scene subordinates determined the fire was incendiary;

that he stood by as his subordinates submitted false reports claiming the fire was an arson, and

that he conspired with other defendants to have Haughey falsely arrested and prosecuted, and

then misled the Putnam DA's Office regarding this matters.  *See* pp. 8-11, *supra*.

In light of these allegations which must be accepted as true, it is impossible for Chief

Johnson's actions to be deemed objectively reasonable.  *See e.g. Coggins v. Buonora*, 776 F.3d

108, 114 (2d Cir. 2015) ("[T]he alleged falsification of evidence and the related conspiracy, if true, constitute a violation of clearly established law, and no objectively reasonable public official could have thought otherwise."); *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (given the jury's findings that [the detective] misrepresented the evidence to the prosecutors, or failed to pass on material information, or made statements that were false, and engaged in such misconduct knowingly … the district court correctly concluded that no reasonable officer could have believed [the detective's] actions to be lawful.  [His] motion for judgment as a matter of law based on qualified immunity was properly denied."); *Rogers v. Bisono*, 2016 WL 4224072, at *5 (S.D.N.Y. Aug. 9, 2016) (Sweet, J.) ("Defendants cannot be protected by qualified immunity since they allegedly fabricated evidence.")

It would thus be improper, at this stage, to dismiss the Complaint on qualified immunity grounds.  *See Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) ("Where the circumstances are in dispute, and 'contrasting accounts ... present factual issues … a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity'") (citations omitted); *Bradley v. City of New York*, 2007 WL 232945, at *9 (S.D.N.Y. Jan. 26, 2007) (Sweet, J.) (where "there are facts in dispute that are material to a determination of reasonableness, summary judgment on qualified immunity grounds is not appropriate") (citation omitted).

**POINT III**

**CHIEF JOHNSON'S ARGUMENT THAT HAUGHEY DOES
NOT STATE A CIVIL CONSPIRACY CLAIM IS BASED ON
A FALSE READING OF THE COMPLAINT**

Chief Johnson, citing Haughey's allegations summarizing the individual defendants'

collectively actions —after detailing the individual acts each of them committed— argues the

allegations are insufficient to state a civil conspiracy against him:

> "As set forth above, the only acts Mr. Johnson actually performed
> were to go to Smalley's the day after the fire as requested by the
> Carmel Police and write a brief report concerning the PCFIT's
> investigation.  There are absolutely no plausible facts in the Second
> Amended Complaint from which one could reasonably infer that
> Mr. Johnson conspired with anyone to violate Mr. Haughey's
> rights."

Chief Johnson Memo. of Law, pp. 9-10.

Again, this argument is based on a false narrative, and not the Complaint.

The Complaint specifies Chief's Johnson's wrongful acts and omissions, and incorporates

by reference the detailed allegations as to how he and the other individual defendants acted

together to deprive Haughey of his constitutional rights, pp. 9-11, *supra*; Complaint.   As Your

Honor noted, courts "should give plaintiffs particular leeway in pleading conspiracy[,]" *Medtech*

*Prod. Inc. v. Ranir, LLC*, 596 F. Supp.2d 778, 795, n. 12  (S.D.N.Y. 2008) (Karas, J.), and at the

pleading stage, the Complaint's allegations suffice to render it plausible that Chief Johnson

conspired with the other on the scene defendants to falsely designate the fire and arson and have

Haughey arrested and convicted.  *Butler v. Hesch*, 286 F. Supp.3d 337, 363 (N.D.N.Y. 2018)

("[A]llegations of direct evidence of conspiracy are not necessary, as conspiracies have long

been recognized to be secretive by nature and often are proven by circumstantial evidence,

though detailed allegations of the conspiracy's time and place are helpful to cross the plausibility threshold") (citations omitted).  Our Complaint points to the day the conspiracy was formed, the point at which and how Chief Johnson joined it, his actions in furtherance of it, and the ultimate result of it.

Courts have deemed similarly pleaded civil conspiracy claims sufficient to survive a motion to dismiss.  *See e.g. Conte v. Cty. of Nassau*, 2008 WL 905879, at *20 (E.D.N.Y. Mar. 31, 2008) (Bianco, J.) ("Plaintiff has sufficiently alleged the elements of a Section 1983 conspiracy" by alleging '[a]ll defendants ... conspired to injure the plaintiff' and spelling out those defendants' collective actions); *Coggins v. Cty. of Nassau*, 988 F. Supp.2d 231 (E.D.N.Y. 2013) (allegations by African-American arrestee that a county police officer stopped him because of his race and not for any legal violation, that another police officer, almost immediately upon arriving at the scene, yelled to the other officer to shoot him in the back, that the two officers conspired to maliciously prosecute arrestee, fabricate and omit evidence, and misrepresent the events of the arrest, and that the officers engaged in such conduct because of racial animus stated claim for conspiracy to violate equal protection rights.), *aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015); *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp.3d 610 (E.D.N.Y. 2018) (plaintiffs stated civil rights conspiracy claim against town and town officials based on officials' statements that the town had completed an investigation and determined that plaintiffs were "a responsible party" for the illegal dumping of toxic materials in public children's park; plaintiffs alleged defendants conspired to deflect blame from themselves onto plaintiffs in order to further their political objectives).

Moreover, if Haughey's conspiracy allegations are deemed sufficient, Chief Johnson, "[a]s a conspirator, is liable, in civil as in criminal law, for the wrongful acts of the other conspirators committed within the scope of the conspiracy." *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002); *United States v. Eisen*, 974 F.2d 246, 268 (2d Cir. 1992) ("[T]he basic principle" governing conspiracies "that conspirators are generally held liable for the known or reasonably foreseeable acts of all other co-conspirators committed in furtherance of the conspiracy.") "[O]nce the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action … so long as the purpose of the tortious action was to advance the overall object of the conspiracy." *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983).

Accordingly, accepting the Complaint's allegations and drawing all reasonable inferences in Haughey's favor, it sufficiently alleges Chief Johnson engaged in a civil conspiracy against him.

## **CONCLUSION**

Chief Johnson failed to carry his burden of proof, *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp.3d 634, 642 n. 3 (S.D.N.Y. 2017) (Pauley, J.), that the claims against him must be dismissed.   He should be required to account for the role he played in sending an innocent man to prison and destroying his life.  Chief Johnson's motion should be denied, and the Court should grant such further relief as it deems proper.

DATED:      Brooklyn, New York
            June 30, 2019

_____
RITA DAVE, ESQ.
26 Court Street
Suite 1212
Brooklyn, New York 11242
Telephone: (516) 782-1614
Email: ritadaveesq@gmail.com

OSCAR MICHELEN, ESQ.
Cuomo, LLC
200 Old Country Road
Suite 2 South
Mineola, New York 11501
Telephone: (516) 741-3222
Fax: (516) 741-3223
Email: omichelen@cuomollc.com
(*Of Counsel*)

*Attorneys for Plaintiff William Haughey*