UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — X
                                          :

WILLIAM HAUGHEY,                       :

                                         :

                         Plaintiff,         :       18 CV 2861 (KMK)

         -against-                    :

                                       :

THE COUNTY OF PUTNAM; THE TOWN OF CARMEL;    :
INSPECTOR ROBERT GEOGHEGAN; ROBERT EFFEREN;   :
CHIEF DARYL JOHNSON; DOUGH CASEY; PO JUSTIN    :
FISCHER; DETECTIVE MICHAEL NAGLE; SERGEANT    :
ROBERT BEHAN; SERGEANT JOHN DEARMAN; JOSEPH  :
CHARBONNEAU; JOHN DOES 1-5; and ANTHONY F. PORTO, :
SR., ANTHONY M. PORTO, JR., SMALLEY'S INN      :
& RESTAURANT aka SMALLEYS INN,TNT CAFE INC.,  :
operating under the trade name : Smalley's Inn and/or Smalley's :
Inn Mainstreet : Cafe,                         :

                                       :

                        Defendants.     :
— — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — X

---

**PLAINTIFF'S MEMORANDUM OF LAW OPPOSING
THE TOWN OF CARMEL DEFENDANTS' FED.R.CIV.P.
12 (B) (6) MOTION TO DISMISS**

---

RITA DAVE, ESQ.                         OSCAR MICHELEN. ESQ.
26 Court Street                            Cuomo, LLC
Suite 1212                                200 Old Country Road
Brooklyn, New York 11242              Suite 2 South
Telephone: (516) 782-1614             Mineola, New York 11501
Email: ritadaveesq@gmail.com           Telephone: (516) 741-3222
                                       Fax: (516) 741-3223
                                       Email: omichelen@cuomollc.com
                                       (*Of Counsel*)

*Attorneys for Plaintiff William Haughey*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT …………………………………………………………  1

STATEMENT OF FACTS ……………………………………………………………..  5

POINT I

    THE COMPLAINT STATES A PLAUSIBLE *MONELL* CLAIM BASED ON A
FINAL POLICYMAKER'S DIRECT PARTICIPATION IN THE VIOLATION
OF HAUGHEY'S CONSTITUTIONAL RIGHTS …………………………………..  9

    A.      The Applicable Standard ………………………………………………  10

         1.      Fed.R.Civ.P. 12 (b) (6) Motions ………………………………..  10

         2.      *Monell* Claims Based On A Final Policymaker's Personal
Infliction Of A Plaintiff's Constitutional Injuries ……………………  11

    B.      The Complaint Amply Pleads The Town of Carmel Formally And By
Custom Delegated To Chief Johnson Final Policymaking Authority To
Determine Whether Fires Were Arsons ………………………………………..  14

    C.      The Complaint Amply Alleges Chief Johnson, As A Final Policymaker,
Personally Violated Haughey's Constitutional Rights  ……………………..  15

POINT II

    DEFENDANT CHARBONNEU IS NOT ENTITLED TO DISMISSAL OF
THE COMPLAINT ON THE MERITS, OR ON QUALIFIED IMMUNITY
GROUNDS  …………………………………………………………………………  19

POINT III

    THE TOWN DEFENDANTS' ARGUMENT THAT HAUGHEY DOES
NOT STATE A CIVIL CONSPIRACY CLAIM IS MERITLESS …………………  21

CONCLUSION ……………………………………………………………………..  25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Pages**

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999) ……………………………………………    11

*Alvarez v. Cty. of Orange, N.Y.*, 95 F. Supp.3d 385 (S.D.N.Y. 2015) (Karas, J.) …………    11

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) …………...……    9, 12, 14, 18

*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003) …………………………………    13

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) …………………………………………….……    10, 11

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) …………………….…………….    10, 11

*Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015) …………………………..……    18

*Board of County Com'rs of Bryan County*, *Okl. v. Brown*, 520 U.S. 397 (1997) …………..    12

*Butler v. Hesch*, 286 F. Supp.3d 337 (N.D.N.Y. 2018)  …………………………………..…    22

*City of St. Louis v. Praprotnik, 4*85 U.S. 112 (1988)  …………………………………………    13

*Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015) …………………………………..    18, 21, 22

*Coggins v. Cty. of Nassau*, 988 F.Supp.2d 231 (E.D.N.Y. 2013) (Bianco, J.) …………..    18, 22

*Conte v. Cty. of Nassau*, 2008 WL 905879 (E.D.N.Y. Mar. 31, 2008) (Bianco, J.) …………    19

*Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp.3d 610 (E.D.N.Y. 2018) ….….……    22

*Deloughery v. City of Chicago*, 2002 WL 31654942 (N.D. Ill. Nov. 25, 2002) ……………..    19

*DiPippo v. Cty. of Putnam*, 2019 WL 1004152 (S.D.N.Y. Feb. 28, 2019) (Roman, J.) …    11, 14

*Field Day, LLC v. County of Suffolk*, 799 F.Supp.2d 205 (E.D.N.Y. 2011) (Hurley, J.) …….    12

**Cases**                                                                                   **Pages**

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) …………………………..…… 18, 23

*Holmes v. Allstate Corp.*, 2012 WL 627238  (S.D.N.Y. Jan.27, 2012) ………………..…… 17

*Houston v. Partee,* 978 F.2d 362 (7th Cir. 1992) ………………………………………. 20

*Hyland v. Wonder*, 117 F.3d 405 (9th Cir.), *as amended*, 127 F.3d 1135 (9th Cir.1997) …. 14

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000) …………………………..……… 12, 13, 15

*Jett v. Dallas Ind. School Dist.*, 491 U.S. 701 (1989) …………………..……………….. 12

*Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565 (2d Cir. 2011) …………….…… 11

*Lathrop v. Onondaga County*, 220 F.Supp.2d 129 (N.D.N.Y 2002) ………………..…… 13

*Lawrence v. Acree*, 665 F.2d 1319 (D.C. Cir. 1981) …………………………..…… 4, 20

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995) ………………………….… 18

*Little v. City of New York*, 487 F.Supp.2d 426 (S.D.N.Y. 2007) (Chin, J.) ………….…… 23

*Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989) ………………………………..…… 13, 14

*Martinez v. City of Opa-Locka*, 971 F.2d 708 (11th Cir. 1992) ………………….…… 13

*McMillian v. Monroe County*, 520 U.S. 781 (1997) ……………………….…………….. 12

*Mickle v. Morin*, 297 F.3d 114 (2d Cir. 2002) …………………………………….… 21

*Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp.2d 778 (S.D.N.Y. 2008) (Karas, J.) ….…..… 22

*Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978) …………………… 2, 11, 13

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015) ………………………………………..… 18

*Orange v. Burge,* 2005 WL 742641 (N.D. Ill. Mar. 30, 2005) …………………………… 20

*Patterson v. Burge,* 328 F. Supp.2d 878 (N.D. Ill. 2004) ………………………………..… 20

**Cases**                                                                                      **Pages**

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ……………………………………    13

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) ………………………………….……    18

*Proffitt v. Ridgway*, 279 F.3d 503 (7th Cir. 2002) ………………………………………..    23

*Roe v City of Waterbury*, 542 F.3d 31 (2d Cir. 2008) ……………………………………    13

*Sforza v. City of New York*, 2009 WL 857496 (S.D.N.Y. Mar. 31, 2009) (Cote, J.) …………    19

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F.Supp.3d
401 (S.D.N.Y. 2014) (Karas, J.) ……………………………………………………….……    17

*Stalter v. Cty. of Orange*, 2016 WL 8711397 (S.D.N.Y. Aug. 5, 2016) (Roman, J.) ……    14, 19

*Tillman v. Burge*, 2011 WL 2975671 (N.D. Ill. July 20, 2011) ………………………………    20

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992) …………………………………………    23

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156
(S.D.N.Y.2015) (Engelmayer, J.) ………………………………………………………..    6

*Whisenant v. City of Haltom City*, 106 Fed.Appx 915 (5th Cir. 2004) ……………..……..    18

*Wright v. Orleans Cty.*, 2015 WL 5316410 (W.D.N.Y. Sept. 10, 2015), *report and
recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015) ……………..…..    17

*Zahrey v. Coffey,* 221 F.3d 342 (2d Cir. 2000) ………………………………………….……    18

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F.Supp.3d 634 (S.D.N.Y. 2017)
(Pauley, J.) …………………………………………………………………….…………….    25

**Statutes**

42 U.S.C. § 1983 ……………………………………………………………………………    2

General Municipal Law § 204-d ……………………………………………………………    10

**<u>Federal Rules of Civil Procedure</u>**                                                        **<u>Pages</u>**

Fed.R.Civ.P. 8 (a) (2) …………………………………………………………….    10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – — – – – – – – X
                                                                    :
WILLIAM HAUGHEY,                                                    :
                                                                    :
                                    Plaintiff,                      :        18 CV 2861 (KMK)
                 -against-                                          :
                                                                    :
THE COUNTY OF PUTNAM; THE TOWN OF CARMEL;                           :
INSPECTOR ROBERT GEOGHEGAN; ROBERT EFFEREN;                         :
CHIEF DARYL JOHNSON; DOUGH CASEY; PO JUSTIN                          :
FISCHER; DETECTIVE MICHAEL NAGLE; SERGEANT                          :
ROBERT BEHAN; SERGEANT JOHN DEARMAN; JOSEPH                         :
CHARBONNEAU; JOHN DOES 1-5; and ANTHONY F. PORTO,                   :
SR., ANTHONY M. PORTO, JR., SMALLEY'S INN &                         :
RESTAURANT aka SMALLEY'S INN, TNT CAFE INC.,                        :
operating under the trade name : Smalley's Inn and/or Smalley's     :
Inn Mainstreet Cafe,                                                :
                                                                    :
                                    Defendants.                     :
                                                                    :
– – – – – – – – – – – – – – – – – – – – – – – – – – — – – – – – – – – – X

**PLAINTIFF'S MEMORANDUM OF LAW OPPOSING
THE TOWN OF CARMEL DEFENDANTS' FED.R.CIV.P.
12 (B) (6) MOTION TO DISMISS**

## PRELIMINARY STATEMENT

William Haughey ("Haughey") spent nine horrific years in prison for a so-called "arson"

that never occurred.  As the Putnam County District Attorney conceded in consenting to vacatur

of Haughey's conviction, he was actually sent to prison "for helping to put out a fire - not start one."

Haughey's conviction was no accident.  It was a concerted effort by disgruntled Carmel, New York business owners, aided at every step by willing local officials, to frame Haughey for the "crime."

Those officials —town detectives and the fire chief, and county fire inspectors— intentionally falsified reports and affirmatively misrepresented to the Putnam County DA's Office that the fire underlying Haughey's charges was an arson.  In truth, it was scientifically impossible to conclude that the fire —a small one in the bathroom ceiling of a centuries old Inn in Carmel New York— was an "arson," since the fire chief and fire inspectors intentionally failed to eliminate the myriad of electrical issues that actually caused the fire.   To ensure their scheme was successful, the fire chief and inspectors also suppressed from the District Attorney  and Haughey photographic evidence pointing to the accidental nature of the fire.   The defendants scheme worked: Haughey was convicted of arson and sentenced to 10 years in prison.

In May 2016, Judge Vincent I. Briccetti vacated Haughey's conviction, barred any retrial, and ordered Haughey released from prison.  But the damage had already been done: Haughey had served almost all of his 10-year sentence, his life was destroyed, and he had suffered unthinkable horrors as an innocent man imprisoned not only for a "crime" he didn't commit, but for a "crime" that never occurred.  This lawsuit followed.

Haughey's Second Amended Complaint (the "Complaint") contains claims under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the Town of Carmel, the County of Putnam.  The Complaint also contains claims under 42 U.S.C. §

2

1983 against the individual defendants in this action.   The County of Putnam, and the two individual defendants employed by the County, Inspectors Robert Geoghegan and Robert Efferen, have answered the Complaint and have *not* moved to dismiss.  Nor has Defendant Anthony F. Porto, Sr. moved to dismiss the Complaint.[1]

Presently before the Court are defendants Town of Carmel and its employees Detective Michael Nagle, Sergeant Robert Behan, Sergeant John Dearman, Police Officer Justin Fischer, and Town Attorney Joseph Charbonneau's (the "Town Defendants") motion to dismiss the Complaint.  Haughey's Complaint asserts seven federal claims against the Town Defendants: (1) Evidence manufacturing and denial of a fair trial, (2) wrongful arrest and detention, (3) malicious prosecution, (4) failure to intervene, (5) suppression of *Brady* material and denial of a fair trial, (6) civil conspiracy, and (7) a *Monell* claim based on the actions of Chief Johnson, the Town of Carmel's final policy-maker with respect to, among other things, determining whether a fire was an arson.  *Id.* ¶¶ 90-146, 163-168.

The Town Defendants raise three primary arguments for dismissal: (1) Haughey's *Monell* claim fails because Chief Johnson had no final decision-making authority over whether to prosecute Haughey, (2) Defendant Charbonneau's action in denying Haughey's FOIL request do not raise a federal issue and, in any event, Charbonneau is entitled to qualified immunity, and (3) Haughey's civil conspiracy claim is factually insufficient and barred by the intracorporate conspiracy doctrine.[2]   These claims are meritless.

_____

[1]By separate motions, Defendants Chief Darryl Johnson and Anthony M. Porto, Jr., moved to dismiss the Complaint.  Our oppositions to both motions will be filed by July 1, 2019.

[2]The Town Defendants also seek dismissal of Haughey's individual claims against Sergeant Robert Behan, whom Haughey named only in the caption and parties sections of the Complaint.  Haughey does not oppose this limited aspect of the Town Defendants' motion.

First, Haughey never alleged Chief Johnson had final policymaking authority o*ver whether to prosecute Haughey.* Rather, Haughey alleged Chief Johnson had final policymaking authority over determining whether a fire was an arson. Haughey's Complaint set forth overwhelming evidence that the Town Board of Carmel delegated that authority to Chief Johnson, and that wielding that authority, Chief Johnson violated Haughey's rights so as to render the Town liable under *Monell*.

Second, Defendant Charbonneau's actions in denying Haughey's FOIL request for exculpatory material, while not normally actionable in and of itself, was an overt act in furtherance of a civil conspiracy for which he can be held liable. Case law establishes that even if actions taken in furtherance of a civil conspiracy are themselves legal, that does not shield the actor from liability for the civil conspiracy. *See e.g. Lawrence v. Acree,* 665 F.2d 1319, 1323–24 (D.C. Cir. 1981) ("[D]efendants misapprehend the law of civil conspiracy. [Plaintiff] has alleged that defendants gave him a substandard performance evaluation in furtherance of a conspiracy proscribed by section 1985(1), and it is well settled that acts that are in themselves legal lose that character when they become constituent elements of an unlawful scheme .… [Plaintiff] *need not allege the evaluation was tortious in itself*") (emphasis added) (citation and quotes omitted). Likewise, case law establishes it was impossible, for qualified immunity purposes, for any governmental official to believe it was reasonable to take part in a conspiracy to suppress exculpatory evidence and continue a wrongful incarceration.

Finally, the Town Defendants's arguments regarding the insufficiency of Haughey's civil conspiracy allegations are meritless, and the intracorporate conspiracy doctrine is inapplicable to

a case like this one where one municipality's employees conspire with private citizens and employees of a separate and distinct legal entity.

## STATEMENT OF FACTS

On March 10, 2007, Plaintiff William Haughey ("Haughey") was one of several patrons socializing in Smalley's Inn & Restaurant, an old tavern in the small Town of Carmel, NewYork. The Inn used an antiquated electrical system and just months prior to the fire for which Haughey would be falsely arrested, the New York State Board of Fire Underwriters cited the Inn for multiple electrical code violations, and ordered the Inn to repair them.  Complaint ¶¶ 26-30.

Sometime in the evening, an electrical issue caused a small fire in the bathroom ceiling.  *Id.*                ¶ 24.

Haughey and several other good Samaritans, smelling smoke,  ran into the bathroom, quickly located and extinguished the fire, removed burning materials from the ceiling and spared the tavern from serious damage.  *Id.*  ¶ 25.

The tavern's owners, however, defendants Anthony F. Porto, Sr. and Anthony M. Porto, Jr., (collectively "the Portos") used Haughey's good deed as a means to have him falsely arrested.  *Id.* ¶ 31.  The Portos were prominent business owners in Carmel, had close ties to local law enforcement, and there was bad blood between the Portos and Haughey because of Haughey's business dealings with the Portos' close friend.  *Id.* ¶ 32-33.  Seizing on Haughey's act of kindness, the Portos falsely reported to police that Haughey had set the fire.  *Id.* ¶¶ 34-37.

Town of Carmel Detective Michael Nagle ("Detective Nagle") was the first officer to respond to the Inn, and after speaking to the Portos, went on to falsely tell all other responding

officials that Haughey had set the fire by placing paper towels in the ceiling and igniting them. *Id.* ¶ 47-49.

Town of Carmel Fire Chief Darryl Johnson and Putnam County Bureau of Emergency Services Inspectors Robert Geoghegan ("Inspector Geoghegan") and Robert Efferen ("Inspector Efferen") responded to the scene as well. Those two Putnam County Fire Investigators acted as mere "tool[s]" of Chief Johnson, and were there to assist Chief Johnson in his investigation. *Id.* ¶¶ 45-46, 131, 140.

At the time Chief Johnson responded to the scene, the Carmel Town Board, —the legislative body of the town consisting of four elected board members and a Town Supervisor— had officially and by custom delegated to Chief Johnson the ultimate responsibility, and final policymaking authority, for determining whether a fire was an arson. ¶ 127-134.

The Town made this delegation by:

    a.    Promulgating a Town Code providing Chief Johnson was "responsible for all operations of the department" and his "duties include fire ground operations" and "*fire reporting,*" necessarily encompassing the designation of fires as accidental or arsons;[3]

    b.    Failing to provide any provision or mechanism whereby Chief Johnson's decision could be reviewed or subject to oversight by the board members, as no provision of the Town Code or any other law provided for review of the Fire Chief's designation of a fire as being an arson;

    c.    Customarily and by practice leaving the determination of whethera fire was an arson to Chief Johnson and making his decision *the de facto* last word on the issue.

---

[3]The particular language quoted here is actually contained on the Carmel Fire Department's website (https://carmelfire.org/2017-fire-chiefs) (last visited June 24, 2019), which this Court may judicially notice. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156, 167 (S.D.N.Y. 2015) (Engelmayer, J.) ("A court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination") (quotes and citation omitted).

Complaint ¶¶ 135-137.

None of the Town Board members had any training or expertise in fire investigations, and none of them participated in the investigation in Haughey's case.   Nor did any those board members examine the evidence in Haughey's case, had a mechanism to do so, much less one to overrule Chief Johnson's determination concerning the nature of a fire.  *Id.*  Chief Johnson "was thus the formal and/or *de facto* policymaking official for the Town with respect to determining whether a fire was an arson."  *Id.*  ¶¶ 136-137.[4]

Wielding this authority, Chief Johnson, "taking his cue" from Detective Nagle, conducted a sham fire "investigation" and "falsely took the position that the fire did not have an electrical or accidental cause, and thus an arson had occurred."  *Id.* ¶ 50.   In truth, Chief Johnson's "investigation," "by its very nature, made it *impossible* to determine whether an arson had occurred as opposed to whether the fire had an electrical or accidental origin[.]"  *Id.* ¶¶ 50-51, 53. Chief Johnson's investigation deviated from accepted fire investigation protocols and *intentionally* disregarded proper arson investigation procedures.  *Id.*

After conducting that false "investigation," Chief Johnson prepared a Carmel Fire Department report falsely indicating that his subordinates, the Putnam Fire Investigation Team, had "determined that the fire was incendiary in nature."  *Id.* ¶ 58.  Chief Johnson, fully aware that his report and findings would be forwarded to and relied upon by the Putnam District Attorney's Office in deciding whether criminal charges would be lodged against Haughey, "directly participated in, aided and abetted, and conspired with other defendants and unnamed individuals,

---

[4]Haughey's complaint further alleges Chief Johnson was likewise the final policymaker with respect to (a) reporting arsons to the DA's Office, (b) disclosing all relevant facts regarding the cause of the purported arson, (c) cooperating with, reporting for, and furthering, any criminal prosecution based on his conclusion that a fire was an arson.

to falsely designate the fire an arson" and "to have [Haughey] falsely arrested, prosecuted, and convicted for a non-existent crime by, among other things, misleading the DA's Office as to the nature of the fire." *Id.* ¶¶ 140.[5]

Chief Johnson also failed "to supervise his subordinates and other members of the Fire Investigation team so as to prevent them from" creating false reports designating the fire an arson, *id.* ¶¶ 140, 38-126, 55-59. Chief Johnson "was present at the scene and had direct knowledge of the violation of" Haughey's constitutional rights, "a realistic opportunity to intervene and prevent" Haughey's injuries, but instead of intervening, "directly participated in, ratified, and aided and abetted, the violation of" Haughey's rights, *id.* ¶¶112-115 (Fourth Cause of Action naming Chief Johnson).

Chief Johnson's false report, and those of his on the scene assistants, Inspectors Geoghegan and Efferen, were used as a basis for Haughey's arrest and then forwarded to the Putnam DA's Office which brought arson charges against Haughey. *Id.* ¶¶ 142, 127, 60-68. Following Haughey's indictment, Chief Johnson, along with the other defendants, "continued to mislead the DA's Office, through affirmative representations, actions and omissions, and assure that Office that the fire was incendiary in nature, and all electrical and accidental causes" for it "had been eliminated[.]" *Id.* ¶ 67.

All of Chief Johnson's action were intentional, reckless, and deliberately indifferent to Haughey's constitutional rights. *Id.* ¶ 142. As a result of Chief Johnson's and the other defendants' actions, Haughey was convicted and sentenced to 10 years in prison. *Id.* ¶ 69.

_____

[5]Haughey's allegation in this regard is contained in his Sixth Cause of Action pleading a *Monell* claim against the Town of Carmel for Chief Johnson's actions. Paragraph 127 of the Complaint, under the Sixth Cause of Action, incorporates and realleges the Complaint's prior allegations under that cause of action.

Following Haughey's conviction, he filed a series of New York Freedom of Information Law ("FOIL") requests with the Town seeking access to exculpatory and impeaching information in his case. *Id.* ¶ 70.  In response, Defendant Charbonneau, at the time the Town Attorney for Carmel, "conspired, and aided and abetted the other defendants in hiding the exculpatory and/or impeaching evidence detailed in the Complaint, including exculpatory crime scene photographs. *Id.* ¶¶ *71,*47-53, 55-58, 60, 68, 78, and 83.  Charbonneau "hid" the requested evidence and persuaded the state court to deny Haughey access to the evidence, thereby delaying his exoneration for several years, *id.* ¶ 72, until he was finally exonerated in May 2016.  *Id.* ¶¶ 73-88.

## POINT I

### THE COMPLAINT STATES A PLAUSIBLE *MONELL* CLAIM BASED ON A FINAL POLICYMAKER'S DIRECT PARTICIPATION IN THE VIOLATION OF HAUGHEY'S CONSTITUTIONAL RIGHTS

Haughey alleges the Town of Carmel delegated to Chief Johnson final municipal policymaking authority to, among other things, determine whether a fire was an arson, and that in that capacity, Chief Johnson fabricated evidence against Haughey, suppressed *Brady* material from the Putnam District Attorney's Office, and acted and conspired with others to falsely arrest and maliciously prosecute Haughey.  Complaint ¶ 128.   As a result of that final policymaker's direct participation in Haughey's constitutional injuries, the Town of Carmel is liable for his actions.

This solid theory of liability is well recognized in the Second Circuit.  *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (holding that "even a single action by a

decision maker who possesses final authority to establish municipal policy with respect to the action ordered is sufficient to implicate the municipality[.]")  Yet rather than address this theory, the Town Defendants ignore it and erect a two-fold straw man of their own their own choosing. They claim Haughey's theory is that Chief Johnson had final policymaking authority *over the decision of whether to prosecute him,* and that Haughey seeks to hold the Town of Carmel liable because Chief Johnson had a duty to report fires under General Municipal Law § 204-d.  Town Defendants Memorandum of Law ("Town Defendants' Memo."), pp. 5-7.  They then argue that since Chief Johnson had no authority over whether to prosecute Haughey, and since Chief Johnson's obligations under General Municipal Law § 204-d did not cause Haughey injury, the Town of Carmel is not liable.

In truth, Haughey *never raised either argument*, and the Town Defendant's failure to meet the actual theory of liability Haughey pleaded in his Complaint moots any issue regarding the sufficiency of Haughey's *Monell* claim, particularly in light of the *de minus* standard for pleading his chosen *Monell* theory.

A.    <u>**The Applicable Standard**</u>

1.    <u>**Fed.R.Civ.P. 12 (b) (6) Motions**</u>

A pleading must contain a "short and concise statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8 (a) (2).  Under this rule, "a complaint must contain sufficient factual matter, accepted as true ... [to support] 'a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "*Iqbal/Twombly* plausibility is a context-specific task that requires a court to look at pre-discovery allegations and assess whether there are enough facts to justify opening

the doors to further discovery." *DiPippo v. Cty. of Putnam*, 2019 WL 1004152, at *11 (S.D.N.Y. Feb. 28, 2019) (Roman, J.).

As Your Honor stated in *Alvarez v. Cty. of Orange, N.Y.*, 95 F. Supp.3d 385, 391 (S.D.N.Y. 2015) (Karas, J.), a complaint "does not need detailed factual allegations" to survive a motion to dismiss, but a plaintiff is obligated to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. The Complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 563.

In evaluating the plausibility of the complaint, the court must accept the plaintiff's allegations as true and give him the benefit of all reasonable inferences from the pleaded facts. *See Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 567 (2d Cir. 2011). The court's inquiry is "context-specific task," and it may use "its judicial experience and common sense," to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.[6]

### 2. *Monell* Claims Based On A Final Policymaker's Personal Infliction Of A Plaintiff's Constitutional Injuries

Under *Monell v. Department of Soc. Servs.*, 436 U.S. 658, (1978), a municipality may be liable for its employee's violation of a citizen's federal rights if the employee's violation was undertaken pursuant to a "policy" or "custom" of the municipality. While *Monell*

---

[6]A plaintiff is allowed to plead inconsistent or alternative claims for liability. *See Adler v. Pataki*, 185 F. 3d 35, 41 (2d Cir. 1999) (Rule 8 permits plaintiffs to "plead two or more statements of a claim, even within the same count, regardless of consistency.") "The flexibility afforded by Rule 8 (e) (2) is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." *Id.* at 41. Moreover, a plaintiff need not specifically label his claims as "in the alternative." *Id.*

plaintiffs normally seek to establish a municipal "policy" or "custom" by pointing to a formal

or longstanding municipal practice ratified by municipal policymakers, a plaintiff may also

establish a *Monell* "policy" by showing a municipal *policymaker* in the relevant area

committed the wrong alleged in the Complaint.  *See e.g. Board of County Com'rs of Bryan*

*County*, *Okl. v. Brown*, 520 U.S. 397, 417-18 (1997) ("We have also held the policy

requirement satisfied where … federal law has been violated by an act of the policymaker

itself") (citations omitted); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir.

2004) (Town could be held liable for actions of Police Chief who personally witnessed police

brutality but failed to intervene, and who was the final policymaker with respect to police

conduct at the event where the brutality occurred) (quotes and citations omitted).[7]

Where a plaintiff seeks to hold a municipality liable for a 'single decision

by a municipal policymaker, the plaintiff must show that the official had final policymaking

power over the particular matters the plaintiff alleges led to the violation of his rights.  *See Jeffes*

*v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) ("the court must "ask whether [the] governmental

official [ is a] final policymaker for the local government in a particular area, or on [the]

particular issue involved in the action."); *Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 737

(1989) (must "have the power to make official policy on a particular issue[.]")

Whether an official possessed final policymaking authority is a legal question, which is

to be answered on the basis of state law.  *See e.g. McMillian v. Monroe County*, 520 U.S. 781,

786 (1997).  "[T]he relevant legal materials, includ[e] state and local positive law, as well as

---

[7]*Accord Field Day, LLC v. County of Suffolk*, 799 F.Supp.2d 205, 215 (E.D.N.Y. 2011) (Hurley, J.) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers [], even if that action is taken only once, the County.  Defendants' argument that Plaintiffs' claim fails under *Monell* because the challenged action constitutes a single, isolated occurrence rather than a policy or custom of the County is unpersuasive") (citation omitted).

custom or usage having the force of law." *Jeffes v. Barnes*, 208 F.3d at 57 (citations and internal quotation marks omitted).

In the Second Circuit, an official has final authority "if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Roe v City of Waterbury*, 542 F.3d 31, 38 (2d Cir 2008) quoting *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003); *Lathrop v. Onondaga County*, 220 F.Supp.2d 129, 138 (N.D.N.Y 2002) (holding Commissioner of DCJS delegated to a Deputy final policymaking authority with respect to employment decisions, as the Commissioner left such decisions to the Deputy, spent little time reviewing such matters, and the Deputy understood his autonomy).

Other courts have looked to the non-reviewability of the official's decision to determine whether he is a final policymaker. *See Mandel v. Doe*, 888 F.2d 783, 792-94 (11th Cir.1989) (recognizing that a municipal officer has final policymaking authority when his decisions "are not subject to review"); *Martinez v. City of Opa-Locka*, 971 F.2d 708, 713-15 (11th Cir. 1992) (finding City Manger had final policymaking authority where his decisions "to hire or fire administrative personnel is completely insulated from review").[8]

*Monell* policymaking authority may be delegated "to a subordinate" and the municipality liable when that subordinate, wielding that delegated authority, violates the plaintiff's rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986) ("[I]f the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county

---

[8]Policymaking authority may be shared among various individuals. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 126 (1988) ("There seems to be no disagreement among the members of the Court that in some municipalities "policymaking responsibility is shared among more than one official or body[.]") Moreover, an official need not be a municipal policymaker for all purposes, *id.* at 123, but simply responsible for making policy in the area of the municipality's business at issue in the Complaint.

policy and could give rise to municipal liability."); *Mandel v. Doe*, 888 F.2d at 794 (county liable as it delegated final policymaking authority with respect to medical affairs at the prison to physician's assistant who violated plaintiff's rights); *Amnesty Am. v. Town of W. Hartford*, 361 F. 3d at 127 (Town delegated final policymaking authority to Sheriff whose actions render the Town liable); *Hyland v. Wonder*, 117 F.3d 405 (9th Cir.), *as amended*, 127 F.3d 1135 (9th Cir.1997) (city liable as superior court judges delegated final policymaking authority to chief juvenile probation officer who violated plaintiff's rights).

**B.** **The Complaint Amply Pleads The Town of Carmel Formally And By Custom Delegated To Chief Johnson Final Policymaking Authority To Determine Whether Fires Were Arsons**

As Your Honor acknowledged during the premotion conference in this case, plausibly alleging a municipality delegated final policymaking authority is not a difficult task. *See also Stalter v. Cty. of Orange*, 2016 WL 8711397, at *11 (S.D.N.Y. Aug. 5, 2016) (Roman, J.) (complaint that alleged Sheriff "delegated all final policy-making authority as to disciplinary matters to defendant],]" that another supervising employee implied the defendant had that authority, sufficiently pled policymaking delegation for *Monell* purposes); *DiPippo v. Cty. of Putnam*, 2019 WL 1004152, at *14 (S.D.N.Y. Feb. 28, 2019) (Roman, J.) ("Plaintiff has pleaded that, at relevant times, Sheriff Thouborron was the … final policymaker and that he made a deliberate decision to assign [Officer] and his subordinates to run the … investigation. Accordingly, [plaintiff's injury by a policymaker] theory of *Monell* liability is plausibly pleaded.")

In paragraphs 132-145 of the Complaint, Haughey alleges the four member Carmel Town Board is the legislative body of the Town. Complaint ¶¶ 132-133. Haughey identifies the four

Town Board members, allege they formally and by custom delegated their policymaking

authority for determining whether a fire was an arson to Chief Johnson, and alleges the total lack

of any mechanism for reviewing Chief Johnson's determination of whether a fire was an arson.

Haughey further alleges that it was customary municipal practice that Chief Johnson's decision

was the *de facto* last word on the issue.  *Id.* ¶¶ 134-135; *Jeffes v. Barnes*, 208 F.3d at 57

(court must consider municipal "custom or usage having the force of law" in determining who

are the relevant policymaking officials).

Bolstering the conclusion that Chief Johnson wielded delegated policymaking authority

to determine whether fires in Carmel were arsons, Haughey cites two letters from Putnam

County Bureau of Emergency Services Commissioner Robert McMahon.  Those letters to

Haughey acknowledge that by customary practice, (1) the Carmel Fire Chief makes the ultimate

determination as to whether a fire was an arson, and (2) Putnam County Fire Inspectors are

subordinate to the Fire Chief and merely assist him in doing so.  Complaint ¶¶ 44-46, 130-131.[9]

Considered collectively, these allegations amply plead the Town of Carmel delegated

final policymaking authority to Chief Johnson.

**C.    The Complaint Amply Alleges Chief Johnson, As A Final Policymaker,**
**Personally Violated Haughey's Constitutional Rights**

Haughey's Complaint alleges a host of acts and omissions Chief Johnson committed as

Carmel's final policymaker in the areas of determining whether a fire was an arson, reporting

---

[9]Chief Johnson objected to Commissioner McMahon's letters as "self-serving."  We respectfully refer the Court to pages 13-15 of Haughey's Memorandum of Law Opposing Chief Johnson's Motion To Dismiss for a full discussion on why such a claim is meritless, and why the letters constitute powerful evidence supporting the plausibility of Haughey's lawsuit.

arsons to the DA's Office, disclosing the relevant facts regarding the causes of purported arsons, and cooperating with any criminal prosecution based the fire:

1. When Chief Johnson arrived at the scene, he knew the Portos and their family, and was aware of their status as prominent Carmel, New York business owners with close ties to local law enforcement, Complaint ¶¶ 32, 41,

2. While two fire investigators from the Putnam County Bureau of Emergency Services responded to the scene as well, they were simply "a tool for the Fire Chief" and their role was simply to assist Chief Johnson in making his determination as to whether an arson occurred, *id.* ¶¶ 44-46,

3. Chief Johnson, taking his cue from Porto and the first detective on the scene, went along with the false narrative that the fire was an arson, and conducted a sham fire investigation that "by its very nature, made it *impossible* to determine whether an arson had occurred" in the first place, *id.* ¶¶ 47, 50-51,

4. Chief Johnson then prepared a *false* Carmel Fire Department report indicating his on the scene subordinates, "the Putnam Fire Investigation Team, which were one of his tools and which reported to him," had determined the fire was incendiary in nature, *id.* ¶ 58,

5. Chief Johnson prepared that false report knowing full well that (a) it was impossible to determine whether the fire was an arson, (b) he personally had conducted a sham investigation, *id.* 47, 50-51, and (c) his subordinates had submitted several false reports claiming the fire was an arson, *id.* ¶ 55 ("*the individual defendants*, collectively, acting in concert, aiding and abetting each other, and conspiring with each other, prepared a series of false report

memorializing the knowingly false claim that all accidental causes for the fire had been eliminated and the fire was an arson") (emphasis added),[10]

6.  Chief Johnson, "*in his role as final policymaker for Carmel* [and] fully aware that his reports and findings would be forwarded to and relied upon by the Putnam District Attorney's Office to decide whether criminal charges were warranted against [Haughey], directly participated in, aided and abetted, and conspired with other defendants and unnamed individuals, to falsely designate the fire an arson and to have [Haughey] falsely arrested, prosecuted, and convicted for a non-existent crime by, among other things, misleading the DA's Office as to the nature of the fire[.]"  *Id.* ¶ 140 (emphasis added),

7.  Chief Johnson, along with other defendants, did not provide the DA's Office with, or inform it of, various exculpatory photographs taken at the crime scene, *id.* ¶¶ 60-62, 83,

8.  The Putnam DA's Office, deceived by Chief Johnson and his co-conspirators' ("the defendants") false reports, indicted Haughey, *id.* ¶ 64,

9.  Following Haughey's indictment, Chief Johnson, one of "the individual defendants continued to mislead the DA's Office, through affirmative representations, actions and omissions, and assure that Office that the fire was incendiary in nature, and all electrical and accidental causes" for it "had been eliminated[.]"  *Id.* ¶ 67, and

---

[10]We note that allegations such as these, referring to the individual defendants' collective actions, after outlining each defendant's individual acts and omissions, are not the type of "group-pleadings" condemned by courts.  An improper group-pleading is one that fails "to differentiate as to which defendant was involved in the alleged unlawful conduct," *Holmes v. Allstate Corp.*, 2012 WL 627238, at 7 and 22 (S.D.N.Y. Jan.27, 2012) and "fails to give each defendant fair notice of the claims against it." *Wright v. Orleans Cty.*, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015), *report and recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015).  Haughey's Complaint details the specific individual acts committed by each defendant and only after doing so, refers to those defendants collectively when they all participated in the same act or omission.  *See e.g. Conte v. Cty. of Nassau*, 2008 WL 905879, at *20 (E.D.N.Y. Mar. 31, 2008) (Bianco, J.) ("Plaintiff has sufficiently alleged the elements of a Section 1983 conspiracy" by alleging '[a]ll defendants ... conspired to injure the plaintiff' and spelling out those defendants' collective actions).  The Town Defendants cannot legitimately claim they lacked notice of the claims against them, and indeed, both their own and their employee Chief Johnson's motion identify the claims.  *See* Defendant Chief Daryl Johnson's Memo. of Law in Support of His Motion To Dismiss, p. 2 ("The Second Amended Complaint asserts five claims against Mr. Johnson, all alleging violations of 42 U.S.C. § 1983 arising from Mr. Johnson's alleged role in the investigation of the Smalley's fire and Mr. Haughey's prosecution.")  Thus, Haughey's Complaint, even if "sub-optimal, [is sufficient to] apprise each [defendant] of the nature of their participation in the alleged" wrongful conduct.  *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp.3d 401, 425 (S.D.N.Y. 2014) (Karas, J.).

10.    Chief Johnson, "individually" and acting in concert and aiding and abetting the others who wronged Haughey, "acted intentionally, recklessly, and with deliberate indifference to" Haughey's constitutional rights.  *Id.* ¶ 142.[11]

In light of the above, the Town of Carmel is liable for Chief Johnson's actions in (1) personally participating in violating Haughey's federal rights, *see e.g. Coggins v. Cty. of Nassau*, 988 F. Supp.2d 231, 246 (E.D.N.Y. 2013) (Bianco, J.) (plaintiff's allegation that police officer, to falsely arrest plaintiff, engaged in coverup, prepared false reports, and lied to DA regarding the case, "extensively allege[d]" officer's "direct participation in the alleged constitutional violations"), *aff'd in part*, *appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015), (2) failing to intervene to prevent those rights from being violated, *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (Town could be held liable for actions of final policymaker who personally witnessed police brutality but failed to intervene), and (3) taking part in the civil conspiracy pled in the Complaint, *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (municipality may be liable for conspiracy under under § 1985); *Whisenant v. City of Haltom City*, 106 Fed. Appx 915, 917 (5th Cir. 2004) ("City can be held liable for the city council's part in the conspiracy, because the city council is the City's

_____

[11] While not challenged by the Town Defendants, Haughey's allegations plead causes of action for, among other things, evidence manufacturing, malicious prosecution, false arrest, and suppression of *Brady* material.  *See e.g. Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (recognizing a constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity."); *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015) (upholding judgment against Medicaid Fraud Unit Investigator for fabricating evidence against plaintiff, consisting of falsified billing summaries with "material omissions"); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) (police department forensic chemist who withheld exculpatory evidence and fabricated inculpatory evidence, "continued" criminal proceeding after its initiation, and was thus liable for malicious prosecution under § 1983); *Bermudez v. City of New York*, 790 F.3d 368, 376 (2d Cir. 2015) (a police officer may be liable for suppressing *Brady* material if he conceals that evidence from the prosecution); *United States v. Eisen*, 974 F.2d 246, 268 (2d Cir. 1992) ("[T]he basic principle" governing conspiracies is "that conspirators are generally held liable for the known or reasonably foreseeable acts of all other co-conspirators committed in furtherance of the conspiracy"); *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) ("[O]nce the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy.")

policymaking body and, consequently, its decisions constitute City policy"); *Sforza v. City of New York*, 2009 WL 857496 (S.D.N.Y. Mar. 31, 2009) (Cote, J.) ("A municipality may be held liable under § 1985 if it is involved in the conspiracy.")  Thus, Haughey's Complaint states a valid *Monell* claim.

Finally, even if the Court harbors some skepticism of the claim, since we are only in the pleading stage, the claim should be allowed to proceed.  *See e.g. Stalker v. City of Orange*, 2016 WL 8711397, at *11 (S.D.N.Y. Aug. 5, 2016) (Roman, J.) ("While the Court is skeptical that Plaintiff will prevail on his claims agains the County of Orange as the case progresses, at this stage of the litigation, Plaintiff sufficiently alleges *Monell* liability on the basis that Defendant Jones was delegated final policy-making authority."); *Deloughery v. City of Chicago*, 2002 WL 31654942, at *3 (N.D. Ill. Nov. 25, 2002) (expressing skepticism regarding the plaintiff's ability to prove his *Monell* delegation claim, yet denying defendants' motion to dismiss).

## POINT II

### DEFENDANT CHARBONNEAU IS NOT ENTITLED TO DISMISSAL OF THE COMPLAINT ON THE MERITS, OR ON QUALIFIED IMMUNITY GROUNDS

Haughey's Complaint alleges Defendant Charbonneau, in his role as Town Attorney, engaged in a civil conspiracy with the other defendants to falsely arrest and imprison Haughey, and coverup that wrongdoing.  Charbonneau, the Complaint alleges, joined the conspiracy by suppressing exculpatory and impeaching evidence Haughey requested following his conviction, and thereby prolonging Haughey's wrongful incarceration.  Complaint ¶¶ 70-72, 163-168.   The Town Defendants respond by arguing Charbonneau's denial of Haughey's FOIL request seeking

the exculpatory evidence is not actionable and, in any event, he is entitled to qualified immunity. Town Defendant's Memo. pp. 3-5.

We agree that Charbonneau's denial of Haughey's FOIL request is not actionable as a substantive constitutional violation *in and of itself.*   But that is not our argument or the issue before the Court.   Rather, we argue Charbonneau's denial of that FOIL request was an overt act in the furtherance of a civil conspiracy.  That civil conspiracy —to falsely arrest and imprison Haughey— is obviously actionable, Charbonneau took part in it by virtue of agreement and overt act, and the fact that the overt act is not actionable in and of itself is no bar to holding Charbonneau liable for participating in the conspiracy.  *See e.g. Lawrence v. Acree,* 665 F.2d 1319, 1323–24 (D.C. Cir. 1981) ("It is sufficient that Lawrence alleged the evaluation caused him injury;  *Lawrence need not allege the evaluation was tortious in itself* ") (emphasis added) (citation and quotes omitted).

Moreover, a defendant may be held liable for *continuing* a malicious prosecution by covering up exculpatory evidence that would have undermined probable cause.  *See e.g. Tillman v. Burge*, 2011 WL 2975671, at *27 (N.D. Ill. July 20, 2011) (defendants "continued [plaintiff's] prosecution after becoming aware of facts ... that would have seriously undermined ...the probable cause for Plaintiffs arrest and prosecution"); *Orange v. Burge,* 2005 WL 742641, at *13 (N.D. Ill. Mar. 30, 2005) (same); *Patterson v. Burge,* 328 F. Supp.2d 878, 899-901 (N.D. Ill. 2004) (post conviction cover-up of exculpatory evidence continued the malicious prosecution), citing *Houston v. Partee,* 978 F.2d 362, 368 (7th Cir. 1992).  Thus, the fact that Charbonneau's denial of  Haughey's FOIL request is not independently actionable does not insulate Charbonneau from liability for civil conspiracy.

Finally, in light of the allegations against Charbonneau, which must be accepted as true at this point, it is impossible for his actions to be deemed objectively reasonable for qualified immunity purposes. *See e.g. Coggins v. Buonora*, 776 F.3d at 114 ("[T]he alleged falsification of evidence and the related conspiracy, if true, constitute a violation of clearly established law, and no objectively reasonable public official could have thought otherwise.") It would thus be improper, at this stage, to dismiss the Complaint on qualified immunity grounds. *See Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) ("Where the circumstances are in dispute, and 'contrasting accounts ... present factual issues … a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity'") (citations omitted).

## POINT III

### THE TOWN DEFENDANTS' ARGUMENT THAT HAUGHEY DOES NOT STATE A CIVIL CONSPIRACY CLAIM IS MERITLESS

The Town Defendants make two half-hearted arguments regarding Haughey's civil conspiracy cause of action. They argue Haughey's allegations summarizing the individual defendants' collectively actions —after detailing the individual acts each of them committed— are conclusory and fail to state a civil conspiracy against them, and that Haughey's claim is barred by intracorporate conspiracy doctrine. Town Defendant's Memo. pp. 7-8. Both arguments are meritless.

First, the Complaint specifies each of the Town Defendants' wrongful acts and omissions, and incorporates by reference the detailed allegations as to how they acted with others to deprive Haughey of his constitutional rights, pp. 16-18, *supra*; Complaint ¶¶ 163-168; Memorandum of Law Opposing Anthony Porto's Fed.R.Civ.P. 12 (b) (6) Motion, pp. 9-13; Memorandum of Law

Opposing Chief Daryl Johnson's Fed.R.Civ.P. 12 (b) (6) Motion, pp. 9-11.  As Your Honor noted,

courts "should give plaintiffs particular leeway in pleading conspiracy[,]" *Medtech Prod. Inc. v.*

*Ranir, LLC*, 596 F. Supp.2d 778, 795, n. 12  (S.D.N.Y. 2008) (Karas, J.), and at the pleading

stage, the Complaint's allegations suffice to render it plausible that the Town Defendants

conspired with Putnam employees and the Portos to falsely designate the fire an arson and have

Haughey arrested and convicted.  *Butler v. Hesch*, 286 F. Supp.3d 337, 363 (N.D.N.Y. 2018)

("[A]llegations of direct evidence of conspiracy are not necessary, as conspiracies have long

been recognized to be secretive by nature and often are proven by circumstantial evidence,

though detailed allegations of the conspiracy's time and place are helpful to cross the plausibility

threshold") (citations omitted).  Our Complaint points to the day the conspiracy was formed, the

point at which and how the conspirators joined it, their actions in furtherance of it, and the

ultimate result of it.

      Courts have deemed similarly pleaded civil conspiracy claims sufficient to survive a

motion to dismiss.  *See e.g. Coggins v. Cty. of Nassau*, 988 F. Supp.2d 231 (allegations by

African-American arrestee that a county police officer stopped him because of his race and not

for any legal violation, that another police officer, almost immediately upon arriving at the scene,

yelled to the other officer to shoot him in the back, that the two officers conspired to maliciously

prosecute arrestee, fabricate and omit evidence, and misrepresent the events of the arrest, and

that the officers engaged in such conduct because of racial animus stated claim for conspiracy to

violate equal protection rights.), *aff'd in part, appeal dismissed in part sub nom. Coggins v.*

*Buonora*, 776 F.3d 108 (2d Cir. 2015); *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp.3d

610 (E.D.N.Y. 2018) (plaintiffs stated civil rights conspiracy claim against town and town

officials based on officials' statements that the town had completed an investigation and determined that plaintiffs were "a responsible party" for the illegal dumping of toxic materials in public children's park; plaintiffs alleged defendants conspired to deflect blame from themselves onto plaintiffs in order to further their political objectives).

Moreover, if Haughey's conspiracy allegations are deemed sufficient, the Town, "[a]s a conspirator, is liable, in civil as in criminal law, for the wrongful acts of the other conspirators committed within the scope of the conspiracy." *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002); *United States v. Eisen*, 974 F.2d 246, 268 (2d Cir. 1992) ("[T]he basic principle" governing conspiracies "that conspirators are generally held liable for the known or reasonably foreseeable acts of all other co-conspirators committed in furtherance of the conspiracy.") "[O]nce the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy.  A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action … so long as the purpose of the tortious action was to advance the overall object of the conspiracy." *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983).

Finally, the intracorporate conspiracy doctrine does not apply to Haughey's case.  "Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees *of a single corporate entity*, each acting within the scope of her employment, are legally incapable of conspiring together." *Little v. City of New York*, 487 F.Supp.2d 426, 441–42 (S.D.N.Y. 2007) (Chin, J.) (emphasis added).  *But the conspirators here are not all Carmel Town employees.*  The Town Defendants conspired with a separate legal entity —Putnam County and its individual employees, Inspectors Geoghegan and Efferen— and two private citizens —the Portos.  This

nullifies application of the intracorporate conspiracy doctrine to this case. *See Conte v. Cty. of Nassau*, 2008 WL 905879, at *20 (E.D.N.Y. Mar. 31, 2008) (Bianco, J.) ("[P]laintiff clearly alleges that the County Defendants conspired with [private parties] Shaska and Guerra, thereby removing intra-conspiracy doctrine as a reason for dismissing the claim.")

The Town Defendants do not point to a single case applying the intracorporate conspiracy doctrine where a group of one municipality's employees conspired *with employees of a separate and distinct legal entity, and two private citizens.*

The lack of any such authority makes perfect sense.   A conspiracy requires two or more parties and the whole point of the intracorporate conspiracy doctrine is that is legally impossible for a single entity to conspire with itself.  No such impediment is presented when a municipality conspires with another legal entity and private citizens.

## <u>CONCLUSION</u>

The Town Defendants failed to carry their burden of proof, *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp.3d 634, 642 n. 3 (S.D.N.Y. 2017) (Pauley, J.), that the claims against them must be dismissed.   They should be required to account for the role they played in sending an innocent man to prison and for destroying his life.  Their motion should be denied, and the Court should grant such further relief as it deems proper.

DATED:          Brooklyn, New York
                June 30, 2019


                                        _____
                                        RITA DAVE, ESQ.
                                        26 Court Street
                                        Suite 1212
                                        Brooklyn, New York 11242
                                        Telephone: (516) 782-1614
                                        Email: ritadaveesq@gmail.com

                                        OSCAR MICHELEN, ESQ.
                                        Cuomo, LLC
                                        200 Old Country Road
                                        Suite 2 South
                                        Mineola, New York 11501
                                        Telephone: (516) 741-3222
                                        Fax: (516) 741-3223
                                        Email: omichelen@cuomollc.com
                                        (*Of Counsel*)

                                        *Attorneys for Plaintiff William Haughey*