UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

$- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -$ X

WILLIAM HAUGHEY,

                             Plaintiff,              :       18 CV 2861 (KMK)

          -against-

THE COUNTY OF PUTNAM; THE TOWN OF CARMEL;
INSPECTOR ROBERT GEOGHEGAN; ROBERT EFFEREN;
CHIEF DARYL JOHNSON; DOUGH CASEY; PO JUSTIN
FISCHER; DETECTIVE MICHAEL NAGLE; SERGEANT
ROBERT BEHAN; SERGEANT JOHN DEARMAN; JOSEPH
CHARBONNEAU; JOHN DOES 1-5; and ANTHONY F. PORTO,
SR., ANTHONY M. PORTO, JR., SMALLEY'S INN
& RESTAURANT aka SMALLEYS INN,TNT CAFE INC.,
operating under the trade name : Smalley's Inn and/or Smalley's
Inn Mainstreet : Cafe,

                             Defendants.

$- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -$ X

---

**PLAINTIFF'S *AMENDED* MEMORANDUM OF LAW
OPPOSING  DEFENDANT ANTHONY M. PORTO, JR.'S
FED.R.CIV.P. 12  (B) (6) MOTION TO DISMISS**

---

RITA DAVE, ESQ.
26 Court Street
Suite 1212
Brooklyn, New York 11242
Telephone: (516) 782-1614
Email: ritadaveesq@gmail.com

OSCAR MICHELEN. ESQ.
Cuomo, LLC
200 Old Country Road
Suite 2 South
Mineola, New York 11501
Telephone: (516) 741-3222
Fax: (516) 741-3223
Email: omichelen@cuomollc.com
(*Of Counsel*)

*Attorneys for Plaintiff William Haughey*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ………………………………………………………… 1

STATEMENT OF FACTS ………………………………………………………….. 3

POINT I

      HAUGHEY'S COMPLAINT AMPLY PLEADS PORTO ACTED UNDER COLOR
      OF LAW BY CONSPIRING WITH STATE OFFICIALS TO MALICIOUSLY
      PROSECUTE AND WRONGFULLY IMPRISON HIM …………………………….. 6

      A.    The Applicable Standard ………………………………………………… 6

           1.    Fed.R.Civ.P. 12 (b) (6) Motions …………………………………… 6

           2.    Private Parties As State Actors For § 1983 Purposes ………………… 8

      B.    Haughey's Complaint Amply Pleads The Portos Were State Actors For
           § 1983 Purposes By Sufficiently Pleading They Engaged In A Civil
           Conspiracy With The  Other Defendants In This Action, Or At The Very
           Least, That They Acted Jointly With Them …………………………… 9

CONCLUSION ………………………………………………………………….. 16

## TABLE OF CONTENTS

**Cases**                                                                          **Pages**

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999) ……………………………………………    7

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) …………………………………….    8, 14

*Alvarez v. Cty. of Orange, N.Y.*, 95 F. Supp.3d 385 (S.D.N.Y. 2015) (Karas, J.) …………    7

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) …………………………………………….………    7

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) …………………………………..……    7

*Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015) …………………………………..    13

*Butler v. Hesch*, 286 F.Supp.3d 337 (N.D.N.Y. 2018) …………………………..…………    9

*Carmody v. City of N.Y.*, 2006 WL 1283125 (S.D.N.Y. May 11, 2006) (Baer, J.) …………    9

*Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015)  …………………………………………    13

*Charles v. Cty. of Nassau*, 116 F.Supp.3d 107 (E.D.N.Y. 2015) (Brodie, J.) ……………..…    4

*Coggins v. Cty. of Nassau*, 988 F.Supp.2d 231 (E.D.N.Y. 2013) ……………………………    13

*Conte v. Cty. of Nassau*, 2008 WL 905879 (E.D.N.Y. Mar. 31, 2008) (Bianco, J.) …………    12

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) …………………………    8, 9

*Daytree at Cortland Square, Inc. v. Walsh*, 332 F.Supp.3d 610 (E.D.N.Y. 2018) ………..…    13

*Deylii v. Novartis Pharm. Corp.*, 2014 WL 2757470 (S.D.N.Y. June 16, 2014)
(Roman, J.) …………………………………………………………………………..….    4

*Fisk v. Letterman*, 401 F.Supp.2d 362 (S.D.N.Y.2005) …………………………………    8

*Guzman v. United States*, 2013 WL 543343 (S.D.N.Y. Feb. 14, 2013) (Oetken, J.) …………    4

*Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) …………………………………    13, 14

**Cases**                                                                                  **Pages**

*Holmes v. Allstate Corp.*, 2012 WL 627238  (S.D.N.Y. Jan.27, 2012) (Freeman, M.J.) ......    12

*Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565 (2d Cir. 2011) ……………..……     7

*McWilliams v. Anderson*, 2007 WL 4276801  (S.D.N.Y. Dec. 3, 2007) (Karas, J.) …………     8

*Medtech Prod. Inc. v. Ranir, LLC*, 596 F.Supp.2d 778 (S.D.N.Y. 2008) (Karas, J.) ………….     9

*Mione v. McGrath*, 435 F.Supp.2d 266 (S.D.N.Y. 2006) (Conner, J.) ………………………..     8

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ………………………………     3

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015)  …………………………………………………    13

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) ……………………………………..    13

*Proffitt v. Ridgway*, 279 F.3d 503 (7th Cir. 2002) …………………………………...……    14

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F.Supp.3d 401 (S.D.N.Y. 2014) (Karas, J.) ………………………………………………    12

*Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308 (2d Cir.2003) ………………………….…     8

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992) ………………………………….…… 13, 14

*Wright v. Orleans Cty.*, 2015 WL 5316410 (W.D.N.Y. Sept. 10, 2015), *report and
recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015) …………….....…    12

*Young v. Suffolk Cty.*, 705 F.Supp.2d 183 (E.D.N.Y. 2010) (Brodie, J.) ……………………  8, 14

*Zahrey v. Coffey,* 221 F.3d 342 (2d Cir. 2000) ……………………………………………..…    13

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F.Supp.3d 634 (S.D.N.Y. 2017)
(Pauley, J.) …………………………………………………………….………………………..    16

**Statute**

42 U.S.C. § 1983 …………………………….……………………………………………    3, 8

## Federal Rules of Civil Procedure                                        **Pages**

Fed.R.Civ.P. 8 (a) (2) ……………………………………………….…………….    6

Fed.R.Cvi.P. 12 (b) 6) …………………………………….…………………….    *passim*

## Federal Rules of Evidence

Fed.R.Evid. 201 …………………………………………………………………    4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — —  _X

                                                           :

WILLIAM HAUGHEY,                                   :

                                                            :

                            Plaintiff,                :        18 CV 2861 (KMK)

           -against-                               :

                                                            :

THE COUNTY OF PUTNAM; THE TOWN OF CARMEL;      :

INSPECTOR ROBERT GEOGHEGAN; ROBERT EFFEREN;   :

CHIEF DARYL JOHNSON; DOUGH CASEY; PO JUSTIN     :

FISCHER; DETECTIVE MICHAEL NAGLE; SERGEANT     :

ROBERT BEHAN; SERGEANT JOHN DEARMAN; JOSEPH   :

CHARBONNEAU; JOHN DOES 1-5; and ANTHONY F. PORTO, :

SR., ANTHONY M. PORTO, JR., SMALLEY'S INN &       :

RESTAURANT aka SMALLEY'S INN,TNT CAFE INC.,      :

operating under the trade name : Smalley's Inn and/or Smalley's  :

Inn Mainstreet Cafe,                                  :

                                                            :

                            Defendants.             :

                                                            :

— — — — — — — — — — — — — — — — — — — — — — — — — — — —  _X

---

**PLAINTIFF'S *AMENDED* MEMORANDUM OF LAW**
**OPPOSING  DEFENDANT ANTHONY M. PORTO, JR.'S**
**FED.R.CIV.P. 12  (B) (6) MOTION TO DISMISS**

---

## <u>PRELIMINARY STATEMENT</u>

       William Haughey ("Haughey") spent nine horrific years in prison for a so-called "arson"

that never occurred.  As the Putnam County District Attorney conceded in consenting to vacatur

of Haughey's conviction, he was actually sent to prison "for helping to put out a fire - not start one."

Haughey's conviction was no accident.  It was a concerted effort by disgruntled Carmel, New York business owners, Anthony F. Porto, Sr. and Anthony M. Porto, Jr., aided at every step by willing local officials, to frame Haughey for the "crime."

The Portos called in a false arson report to police, disposed of a key item of evidence that would have totally undermined their claim, and then lied to the first detective on the scene that they saw Haughey start the fire.  Those officials —town detectives and the fire chief, and county fire inspectors—  then knowingly went along with the false narrative, and falsified reports and affirmatively misrepresented to the Putnam County DA's Office that the fire underlying Haughey's charges was an arson.  In truth, it was scientifically impossible to conclude that the fire —a small one in the bathroom ceiling of a centuries old Inn in Carmel New York— was an "arson," since the fire chief and fire inspectors intentionally failed to eliminate the myriad of electrical issues that actually caused the fire.   To ensure their scheme was successful, the fire chief and inspectors also suppressed from the District Attorney  and Haughey photographic evidence pointing to the accidental nature of the fire.   The defendants scheme worked: Haughey was convicted of arson and sentenced to 10 years in prison.

In May 2016, Judge Vincent I. Briccetti vacated Haughey's conviction, barred any retrial, and ordered Haughey released from prison.  But the damage had already been done: Haughey had served almost all of his 10-year sentence, his life was destroyed, and he had suffered unthinkable horrors as an innocent man imprisoned not only for a "crime" he didn't commit, but for a "crime" that never occurred.  This lawsuit followed.

2

Haughey's Second Amended Complaint (the "Complaint") contains claims under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the Town of Carmel, the County of Putnam.  The Complaint also contains claims under 42 U.S.C. § 1983 against the individual defendants in this action.   The County of Putnam, and the two individual defendants employed by the County, Inspectors Geoghegan and Efferen, have answered the Complaint and have *not* moved to dismiss. Nor has Defendant Anthony F. Porto, Sr. moved to dismiss the Complaint.[1]

Presently before the Court is defendant Anthony M. Porto, Jr.'s ("Porto") motion to dismiss the six federal claims asserted against him in the Complaint: (1) Evidence manufacturing and denial of a fair trial, (2) wrongful arrest and detention, (3) malicious prosecution, (4) failure to intervene, (5) suppression of *Brady* material and denial of a fair trial, and (6) civil conspiracy. *Id.* ¶¶ 90-126.

Porto raises two grounds for dismissal: (1) he supposedly did not act under the color of state law, and (2) Haughey failed to "prove" Porto conspired with a state actor.   Both arguments are meritless.  Not only did Haughey sufficiently plead that Porto conspired with state actors, but pleading that sufficient conspiracy claim, as a matter of law, simultaneously establishes Porto acted under color of state law for § 1983 purposes.  His motion should thus be denied.

## **STATEMENT OF FACTS**

On March 10, 2007, Plaintiff William Haughey ("Haughey") was one of several patrons socializing in Smalley's Inn & Restaurant, an old tavern in the small Town of Carmel, New York.

---

[1]By two separate motions, the Town of Carmel and its employees, and Defendant Fire Chief Daryl Johnson moved to dismiss the Complaint.  Our oppositions to those motions will be filed by June 30, 2019.

The Inn used an antiquated electrical system and just months prior to the fire for which Haughey would be falsely arrested, the New York State Board of Fire Underwriters cited the Inn for multiple electrical code violations., and ordered the Inn to repair them.  Complaint ¶¶ 26-30.  Moreover, just two months prior to accusing Haughey of starting the fire, Porto settled a lawsuit Porto himself brought against *the Inn he owned* after he was electrocuted at the Inn due to the antiquated electrical system *he failed to repair. See Porto et al v. 57 Main Street Corp. et al*, 05 CV 270 (S.D.N.Y.) (SCR) (Complaint and Order referencing settlement attached as Exhibit A) (discussed on p. 10, *infra*).[2]

 Sometime in the evening on March 10, 2007, an electrical issue caused a small fire in the Inn's bathroom ceiling.  *Id.* ¶ 24.

Haughey and several other good Samaritans, smelling smoke,  ran into the bathroom, quickly located and extinguished the fire, removed burning material from the ceiling and spared the tavern from serious damage.  *Id.*  ¶ 25.

The tavern's owners, however, Porto and his father Anthony F. Porto, Sr., used Haughey's good deed as a means to have him falsely arrested.  *Id.* ¶ 31.   The Porto family were prominent business owners in Carmel, had close ties to local law enforcement, and there was bad blood between Porto and Haughey because of Haughey's business dealings with Porto's close friend.  *Id.* ¶ 32-33.   Seizing on Haughey's act of kindness, both Porto and his father falsely reported to police that Haughey had set the fire.  *Id.* ¶¶ 34-37.   Before they called police, they disposed of a crucial piece of evidence

---

[2]This Court may take judicial notice of the existence of these records when ruling on Porto's Rule 12 (b) 6) motion, specifically for the fact that Porto sued his own corporation and made these allegations against it.  Fed.R.Civ.P. 201; *Guzman v. United States*, 2013 WL 543343, at *3 (S.D.N.Y. Feb. 14, 2013) (Oetken, J.) (documents in prior criminal action involving one party to civil action); *Deylii v. Novartis Pharm. Corp.*, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (Roman, J.) (settlement agreements); *Charles v. Cty. of Nassau*, 116 F. Supp.3d 107, 124 (E.D.N.Y. 2015) (Brodie, J.) (associated case).

4

and the cause of the fire: a "smoke eater," an electrical device that extracts cigarette smoke from the air to prevent the fire alarm from going off.  *Id.* ¶ 165 (a).

Detective Michael Nagle ("Detective Nagle") was the first officer to respond to the Inn and after speaking with Porto, went on to falsely tell all other responding officials that Haughey had set the fire by placing paper towels in the ceiling and igniting them.  *Id.* ¶ 47-49.

Town of Carmel Fire Chief Darryl Johnson and Putnam County Bureau of Emergency Services Inspectors Robert Geoghegan ("Inspector Geoghegan") and Robert Efferen ("Inspector Efferen") responded to the scene as well.

Chief Johnson, "taking his cue" from Detective Nagle, then conducted a sham fire "investigation" and "falsely took the position that the fire did not have an electrical or accidental cause, and thus an arson had occurred."  *Id.* ¶ 50.   In truth, Chief Johnson's "investigation," "by its very nature, made it *impossible* to determine whether an arson had occurred as opposed to whether the fire had an electrical or accidental origin[.]"  *Id.* ¶¶ 50-51, 53.   Chief Johnson's investigation deviated from accepted fire investigation protocols and *intentionally* disregarded proper arson investigation procedures.  *Id.*

After conducting that false "investigation," Chief Johnson prepared a Carmel Fire Department report falsely indicating that his subordinates, the Putnam Fire Investigation Team, had "determined that the fire was incendiary in nature."  *Id.* ¶ 58.   Chief Johnson, fully aware that his report and findings would be forwarded to and relied upon by the Putnam District Attorney's Office in deciding whether criminal charges would be lodged against Haughey, "directly participated in, aided and abetted, and conspired with other defendants and unnamed individuals, to falsely designate the fire an arson" and "to have [Haughey] falsely arrested, prosecuted, and

convicted for a non-existent crime by, among other things, misleading the DA's Office as to the nature of the fire." *Id.* ¶¶ 140.[3]

Chief Johnson's false report, and those of his on the scene assistants, were used as basis for Haughey's arrest and then forwarded to the Putnam DA's Office which brought arson charges against Haughey. *Id.* ¶¶ 142, 127, 60-68. Following Haughey's indictment, Porto, along with the other defendants, "continued to mislead the DA's Office, through affirmative representations, actions and omissions, and assure that Office that the fire was incendiary in nature, and all electrical and accidental causes" for it "had been eliminated[.]" *Id.* ¶ 67.

As a result of Porto's and the other defendants' actions, Haughey was convicted and sentenced to 10 years in prison. *Id.* ¶ 69. He served 9 years until he was exonerated in May 2016. *Id.* ¶¶ 73-88.

## POINT I

### HAUGHEY'S COMPLAINT AMPLY PLEADS PORTO ACTED UNDER COLOR OF LAW BY CONSPIRING WITH STATE OFFICIALS TO MALICIOUSLY PROSECUTE AND WRONGFULLY IMPRISON HIM

**A.    The Applicable Standard**

**1.    Fed.R.Civ.P. 12 (b) (6) Motions**

A pleading must contain a "short and concise statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8 (a) (2). Under this rule, "a complaint must contain sufficient factual matter, accepted as true ... [to support] 'a claim to relief that is plausible on its

_____

[3]Haughey's allegation in this regard is contained in his Sixth Cause of Action pleading a *Monell* claim against the Town of Carmel for Chief Johnson's actions. Paragraph 127 of the Complaint, under the Sixth Cause of Action, incorporates and realleges the Complaint's prior allegations under that cause of action.

face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

As Your Honor stated in *Alvarez v. Cty. of Orange, N.Y.*, 95 F. Supp.3d 385, 391 (S.D.N.Y. 2015) (Karas, J.), a complaint "does not need detailed factual allegations" to survive a motion to dismiss, but a plaintiff is obligated to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. The Complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 563. In evaluating the plausibility of the complaint, the court must accept the plaintiff's allegations as true and give him the benefit of all reasonable inferences from the pleaded facts. *See Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 567 (2d Cir. 2011). The court's inquiry is "context-specific task," and it may use "its judicial experience and common sense," to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

Finally, a plaintiff is allowed to plead inconsistent or alternative claims for liability. *See Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (Rule 8 "permits plaintiffs to "plead two or more statements of a claim, even within the same count, regardless of consistency.")[4]

---

[4]"The flexibility afforded by Rule 8 (e) (2) is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." *Id.* at 41. Moreover, a plaintiff need not specifically label his claims as "in the alternative." *Id.*

2.    <u>**Private Parties As State Actors For § 1983 Purposes**</u>

When analyzing allegations of state action, the Court must begin "by identifying the

specific conduct of which the plaintiff complains." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308,

312 (2d Cir. 2003) (citation omitted).  As one court recently explained:

> "A private actor may be considered to be acting under the color of
> state law for purposes of § 1983 if the private actor was 'a willful
> participant in joint activity with the State or its agents.'"  *See*
> *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir.2002),
> quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970);
> *Mione v. McGrath*, 435 F. Supp.2d 266, 272 (S.D.N.Y. 2006).  This
> potential liability also applies to a private party who 'conspires with
> a state official to violate the plaintiff's constitutional rights ….' *Fisk
> v. Letterman*, 401 F.Supp.2d 362, 378 (S.D.N.Y.2005).  Thus, if the
> plaintiff has sufficiently pled the existence of joint activity by the
> [municipal] defendants and the private party defendants or
> sufficiently alleged that there was a conspiracy between the private
> party defendants and the [municipal] defendants under § 1983, []he
> will have sufficiently alleged state action by the private party
> defendants."

*Young v. Suffolk Cty.*, 705 F.Supp.2d 183, 195–96 (E.D.N.Y. 2010) (Brodie, J.); accord *Porter-*

*McWilliams v. Anderson*, 2007 WL 4276801, at *2 (S.D.N.Y. Dec. 3, 2007) (Karas, J.) (liability

for the private party may attach where the complaint makes "allegations sufficient to create an

inference that the private individual defendant and the state official were acting in concert.")

To demonstrate a private party defendant engaged in a conspiracy with other state actors

under § 1983, "[a] plaintiff is not required to list the place and date of defendants['] meetings and

the summary of their conversations when he pleads conspiracy, but the pleadings must present

facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F.Supp.2d 362,

376 (S.D.N.Y.2005) (Marrero, J.) (citations and quotations omitted).  Rather, a plaintiff  need

only allege (1) an agreement between the private party and state actors, (2) concerted acts to

inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal. *See Carmody v. City of N.Y.*, 2006 WL 1283125, at *5 (S.D.N.Y. May 11, 2006) (Baer, J.) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Haughey's Complaint easily satisfies this standard.

**B.**     **Haughey's Complaint Amply Pleads The Portos Were State Actors For § 1983 Purposes By Sufficiently Pleading They Engaged In A Civil Conspiracy With The Other Defendants In This Action, Or At The Very Least, That They Acted Jointly With Them**

As Your Honor noted, courts "should give plaintiffs particular leeway in pleading conspiracy[.]" *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp.2d 778, 795, n. 12 (S.D.N.Y. 2008) (Karas, J.). At the pleading stage, the Complaint's allegations suffice to render it plausible that Porto conspired with the municipal defendants to falsely designate the fire and arson and have Haughey arrested and convicted. *Butler v. Hesch*, 286 F. Supp.3d 337, 363 (N.D.N.Y. 2018) (" D'Agostino, J.") ("[A]llegations of direct evidence of conspiracy are not necessary, as conspiracies have long been recognized to be secretive by nature and often are proven by circumstantial evidence, though detailed allegations of the conspiracy's time and place are helpful to cross the plausibility threshold") (citations omitted).

Haughey's Complaint points the day the conspiracy was formed, the point at which the municipal defendants joined it, Porto's and the municipal defendants' overt acts in furtherance of it, and the conspiracy's ultimate goal:

1.     On March 10, 2007, Haughey was one of several patrons socializing in Smalley's Inn when an electrical issue caused a small fire in the bathroom ceiling, Complaint ¶ 23,

9

2.    The Inn had an antiquated electrical system and just months prior to the fire, the New York State Board of Fire Underwriters cited it for multiple electrical code violations, *id.* ¶ 28.

3.    In fact, around January 10, 2007, just one month prior to Porto accusing Haughey of starting the fire, Porto settled a lawsuit he brought against *the Inn* (which he owned) after he was electrocuted at the Inn due to its antiquated electrical system.  *See Porto et al v. 57 Main Street Corp. et al*, 05 CV 270 (S.D.N.Y.) (SCR) (Complaint and Order referencing settlement attached as Exhibit A).[5]  Porto's complaint in that action swore he was working in Inn's kitchen when he was "electrocuted" due to "defective, improper, faulty, and substandard electrical wiring" at the Inn, Porto Complaint, ¶ 16, and that this was a dangerous condition that the Inn allowed to exist, Porto Complaint, ¶17-18,

4.    On the night of the fire for which Haughey would be charged, Haughey and several other good Samaritans, smelling smoke, ran into the bathroom, quickly located and extinguished the fire, and spared the tavern of any serious damage, *id.* ¶ 25,

5.    Porto had a financial incentive to have the fire deemed an arson:  to recover proceedings from a property insurance policy that would otherwise be denied if the fire was deemed to be electrical and caused by the Inn's antiquated electrical system that Porto failed to update, *id.* ¶ 37,

6.    Porto also held a grudge against Haughey because of his prior business dealing with Porto's friend, *id*. ¶ 33,

7.    Porto and his father, Anthony Porto, Sr., then hatched a plan, based on Haughey's helping to put out the fire, to have Haughey falsely arrested for arson (the formation of conspiracy), *id.* ¶ 31,

8.    Before they called police, during the short window period between the fire and that phone call, they disposed of the "smoke eater," which had caused the fire, and without which the electrical nature of the fire couldn't be established, *id.* ¶ 165 (a) (an overt act by Porto),

9.    The day after the fire Porto called Carmel Police Department and falsely reported Haughey had intentionally set the fire in the bathroom ceiling, *id.* ¶¶ 34-35 (an overt act by Porto),

---

[5]Again, this Court may take judicial notice of the existence of these records when ruling on Porto's Rule 12 (b) 6) motion.  *See* footnote 2, *supra*.

10.  At the time, the Portos were prominent business owners with close ties to local law enforcement, *id*. ¶ 32,

11.  Detective Nagel responded to the Inn, and there the Portos fed him the false story about Haughey starting the fire, *id*. ¶ 39 (an overt act by Porto),

12.  Detective Nagel the joined the conspiracy and colored the investigation by fabricating an incriminating statement against Haughey (an alternative point where the conspiracy was formed: an agreement between the private party and state actors).  Nagle falsely informed all the responding officials that witnesses had informed him that Haughey started the fire by placing paper towels between the drop ceiling and igniting them when, in truth, no witness ever made such a statement, id. ¶¶ 47-49, 165 (a concerted act to inflict an unconstitutional injury),

13.  Chief Johnson, arriving at the scene and aware of the Portos prominent status, took his cue from Porto and Detective Nagel, and went along with the false narrative that the fire was an arson, conducted a sham fire investigation that "by its very nature, made it *impossible* to determine whether an arson had occurred" in the first place, *id*. ¶¶ 47, 50-51 (agreement between parties, concerted action, and an overt act on part of the municipal defendants),

14.  Chief Johnson then prepared a *false* Carmel Fire Department report indicating his on the scene subordinates, "the Putnam Fire Investigation Team, which were one of his tools and which reported to him," had determined the fire was incendiary in nature, *id*. ¶ 58( agreement between parties, concerted action, and an overt act on part of the municipal defendants),

15.  Chief Johnson prepared that false report knowing full well that (a) it was impossible to determine whether the fire was an arson, (b) he personally had conducted a sham investigation, *id*. 47, 50-51, and (c) his subordinates Putnam Fire Investigators Richard Geoghegan and Robert Efferen, had submitted several false reports claiming the fire was an arson, *id*. ¶ 55 ("*the individual defendants*, collectively, acting in concert, aiding and abetting each other, and conspiring with each other, prepared a series of false report memorializing the knowingly false

claim that all accidental causes for the fire had been eliminated and the fire was an arson") (emphasis added) (overt acts),[6]

16.     Chief Johnson, fully aware that his reports and findings would be forwarded to and relied upon by the Putnam District Attorney's Office to decide whether criminal charges were warranted against [Haughey], "directly participated in, aided and abetted, and conspired" with Porto and the other defendants, to falsely designate the fire an arson and to have [Haughey] arrested, prosecuted, and convicted for a non-existent crime by, among other things, misleading the DA's Office as to the nature of the fire[.]" *Id.* ¶ 140 (emphasis added) (agreement between parties, concerted action, and overt acts),

17.     Chief Johnson, furthering the conspiracy, did not provide the DA's Office with, or inform it of, various exculpatory photographs taken at the crime scene, *id.* ¶¶ 60-62, 83 (overt act),

18.     The Putnam DA's Office, deceived by Chief Johnson and his co-conspirators' false reports, indicted Haughey, *id.* ¶ 63,

19.     Following Haughey's indictment, Porto one of "the individual defendants[,] continued to mislead the DA's Office, through affirmative representations, actions and omissions, and assure that Office that the fire was incendiary in nature, and all electrical and accidental causes" for it "had been eliminated[.]" *Id.* ¶ 67, (agreement between parties, concerted action, and overt acts), and

---

[6]We note that allegations such as these, referring to the individual defendants' collective actions, after outlining each defendant's individual acts and omissions, are not the type of "group-pleadings" condemned by courts.  An improper group-pleading is one that fails "to differentiate as to which defendant was involved in the alleged unlawful conduct," *Holmes v. Allstate Corp.*, 2012 WL 627238 at 7 and 22 (S.D.N.Y. Jan.27, 2012) and "fails to give each defendant fair notice of the claims against it." *Wright v. Orleans Cty.*, 2015 WL 5316410 at *13 (W.D.N.Y. Sept. 10, 2015), *report and recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015).  Haughey's Complaint details the specific individual acts committed by each defendant and only after doing so, refers to those defendants collectively when they all participated in the same act or omission.  *See e.g. Conte v. Cty. of Nassau*, 2008 WL 905879 at *20 (E.D.N.Y. Mar. 31, 2008) (Bianco, J.) ("Plaintiff has sufficiently alleged the elements of a Section 1983 conspiracy" by alleging '[a]ll defendants ... conspired to injure the plaintiff' and spelling out those defendants' collective actions).  Porto cannot legitimately claim he lacked notice of the claims against him, and indeed, his motion identifies the claims. *See* Porto's Memo. of Law in Support of His Motion To Dismiss (acknowledging the Complaint contains five claims against Porto, but arguing the Complaint is factually deficient to show that he acted with state actors in a civil conspiracy). Thus, Haughey's Complaint, even if "sub-optimal, [is sufficient to] apprise each [defendant] of the nature of their participation in the alleged" wrongful conduct.  *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp.3d 401, 425 (S.D.N.Y. 2014) (Karas, J.).

20.    The Portos committed the above overt acts in the furtherance of the conspiracy, *id.* ¶165.

These allegations and the inferences drawn from them obviously allege an agreement between Porto and state actors, concerted acts to inflict an unconstitutional injury, and several overt acts in furtherance of that goal, all of the elements needed to establish a private citizen's involvement for § 1983 purposes.  *See* p. 9, *supra.*[7]

Indeed, courts have deemed far less specific conspiracy pleadings sufficient to survive a motion to dismiss.  *See e.g. Coggins v. Cty. of Nassau*, 988 F. Supp.2d 231 (E.D.N.Y. 2013) (allegations by African-American arrestee that a county police officer stopped him because of his race and not for any legal violation, that another police officer, almost immediately upon arriving at the scene, yelled to the other officer to shoot him in the back, that the two officers conspired to maliciously prosecute arrestee, fabricate and omit evidence, and misrepresent the events of the arrest, and that the officers engaged in such conduct because of racial animus stated claim for conspiracy to violate equal protection rights.), *aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015); *Daytree at Cortland Square, Inc. v. Walsh*, 332

_____

[7]While not challenged by Porto, Haughey's allegations plead causes of action for, among other things, evidence manufacturing, malicious prosecution, false arrest, and suppression of *Brady* material.  *See e.g. Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir. 2000) (recognizing a constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity."); *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015) (upholding judgment against Medicaid Fraud Unit Investigator for fabricating evidence against plaintiff, consisting of falsified billing summaries with "material omissions"); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) (police department forensic chemist who withheld exculpatory evidence and fabricated inculpatory evidence, "continued" criminal proceeding after its initiation, and was thus liable for malicious prosecution under § 1983); *Bermudez v. City of New York*, 790 F.3d 368, 376 (2d Cir. 2015) (a police officer may be liable for suppressing *Brady* material if he conceals that evidence from the prosecution); *United States v. Eisen*, 974 F.2d 246, 268 (2d Cir. 1992) ("[T]he basic principle" governing conspiracies is "that conspirators are generally held liable for the known or reasonably foreseeable acts of all other co-conspirators committed in furtherance of the conspiracy"); *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) ("[O]nce the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy.")

F. Supp.3d 610 (E.D.N.Y. 2018) (plaintiffs stated civil rights conspiracy claim against town and town officials based on officials' statements that the town had completed an investigation and determined that plaintiffs were "a responsible party" for the illegal dumping of toxic materials in children's park; plaintiffs alleged defendants conspired to deflect blame from themselves onto plaintiffs in order to further their political objectives).

Moreover, "[a]s a conspirator, [Porto] is liable, in civil as in criminal law, for the wrongful acts of the other conspirators committed within the scope of the conspiracy." *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002); *United States v. Eisen*, 974 F.2d 246, 268 (2d Cir. 1992) ("[T]he basic principle" governing conspiracies "that conspirators are generally held liable for the known or reasonably foreseeable acts of all other co-conspirators committed in furtherance of the conspiracy.") "[O]nce the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action … so long as the purpose of the tortious action was to advance the overall object of the conspiracy." *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983).

Finally, we note that while providing information to, or summoning, police officers, even if that information is false or results in the officers taking affirmative action, is not in and of itself sufficient to constitute joint action with state actors for purposes of § 1983, *Young v. Suffolk Cty.*, 705 F. Supp.2d at 196, when the private actor, as here, takes a more active role and jointly engages in action with state actors, he will be found to be a state actor. *See e.g. Adickes*, 398 U.S. at 152 (finding plaintiff entitled to relief under § 1983 against private party if she can prove

14

that private party and police officer "reached an understanding" to cause her arrest on impermissible grounds, exactly what Haughey alleges).

Accordingly, accepting the Complaint's allegations as true and drawing all reasonable inferences in Haughey's favor, it sufficiently alleges Porto was a state actor for § 1983 purposes who engaged in a civil conspiracy against him.

## **CONCLUSION**

Porto failed to carry his burden of proof, *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp.3d 634, 642 n. 3 (S.D.N.Y. 2017) (Pauley, J.), that the claims against him must be dismissed.   He should be required to account for the role he played in sending an innocent man to prison and destroying his life.  His motion should be denied, and the Court should grant such further relief as it deems proper.

DATED:      Brooklyn, New York
            July 5, 2019

_____
RITA DAVE, ESQ.
26 Court Street
Suite 1212
Brooklyn, New York 11242
Telephone: (516) 782-1614
Email: ritadaveesq@gmail.com

OSCAR MICHELEN, ESQ.
Cuomo, LLC
200 Old Country Road
Suite 2 South
Mineola, New York 11501
Telephone: (516) 741-3222
Fax: (516) 741-3223
Email: omichelen@cuomollc.com
(*Of Counsel*)

*Attorneys for Plaintiff William Haughey*

# EXHIBIT A

# Complaint & Order Referencing Settlement In *Porto et al v. 57 Main Street Corp. et al*, 05 CV 270 (S.D.N.Y.) (SCR)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
ANTHONY PORTO and CAROL PORTO

         Plaintiffs,

      -against-

57 MAIN STREET CORP.,
TNT CAFÉ d/b/a SMALLEY'S INN,

        Defendants.
------------------------------ X

**CIV.**        **ECF CASE**

**JURY TRIAL DEMANDED**

**COMPLAINT**

**05 CIV. 0270**

**ROBINSON**

Plaintiffs ANTHONY PORTO and CAROL PORTO, by their attorneys, JOSEPH A. MARIA, P.C., complaining of the defendants, respectfully allege:

### NATURE OF THE ACTION

1. This is an action for personal injuries sustained by ANTHONY PORTO and CAROL PORTO, as a result of the negligence of the defendants, 57 MAIN STREET CORP., TNT CAFÉ d/b/a SMALLEY'S INN.

### PARTIES

2. At all times hereinafter mentioned, the plaintiff, ANTHONY PORTO was and still is a resident of the city of Danbury, State of Connecticut.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

3.   At all times hereinafter mentioned, the plaintiff, CAROL PORTO was and still is a resident of the city of Danbury, State of Connecticut.

4.   That at all times hereinafter mentioned, the defendant, 57 MAIN STREET CORP., was and still is a domestic corporation duly authorized to conduct business in the State of New York.

## JURISDICTION

5.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the causes of action herein are between parties who are citizens of different states and the amount in controversy exceeds seventy-five Thousand Dollars ($75,000.00).

## JURY DEMAND

6.   The plaintiffs, ANTHONY PORTO and CAROL PORTO, demand that this case be tried to a jury.

## FACTS

7.   That at all times hereinafter mentioned the defendant owned and operated the premises known as TNT Café, 57 Main Street, Carmel, New York.

8.   That at all times hereinafter mentioned the defendant owned and operated the premises known as TNT Café, d/b/a SMALLEY'S INN, 57 Main Street, Carmel, New York.

9.    That at all times hereinafter mentioned the defendant owned and operated the premises known as 57 Gleneida Avenue, Carmel, New York.

10.   That at all times hereinafter mentioned the defendant managed and maintained the premises known as TNT Café, 57 Main Street, Carmel, New York.

11.   That at all times hereinafter mentioned the defendant managed and maintained the premises known as TNT Café, d/b/a SMALLEY'S INN, 57 Main Street, Carmel, New York.

12.   That at all times hereinafter mentioned the defendant managed and maintained the premises known as 57 Gleneida Avenue, Carmel, New York.

13.   That at all times hereinafter mentioned the premises known as TNT Café, d/b/a SMALLEY'S INN was and still is located at 57 Main Street, a/k/a 57 Gleneida Avenue, Carmel, New York.

14.   That on April 14, 2003, the plaintiff, ANTHONY PORTO, was employed as a member of the kitchen staff of TNT Café, d/b/a SMALLEY'S INN at the premises known as 57 Gleneida Avenue, Carmel, New York.

15.   That at all times hereinafter mentioned, and more particularly on April 14, 2003, the defendant, its agents, servants, and/or employees maintained and/or had a duty to maintain the premises known as TNT Café, d/b/a SMALLEY'S INN, 57 Gleneida Avenue, Carmel, New York.

16. That on April 14, 2003, the plaintiff, ANTHONY PORTO, due to the negligence of the defendant, its agents, servants, and/or employees, was caused to suffer electrocution due to defective, improper, faulty, and substandard electrical wiring located at said premises.

17. That said electrical wiring was in a dangerous and hazardous condition in that it was defective, improper, faulty, and substandard, creating a hazardous danger.

18. That the defendant, its agents, servants, and/or employees, were reckless, careless, and negligent in that they caused, created, allowed and permitted the aforementioned electrical wiring to be, become, and remain in a hazardous condition.

19. That the defendant knew, or should have known that plaintiff, ANTHONY PORTO would come into contact with, and be exposed to the aforementioned hazardous and dangerous condition.

20. That the defendant was negligent in its failure to take steps to either make the aforesaid condition safe or warn the plaintiff, ANTHONY PORTO of the dangerous condition, all of which directly and proximately caused the plaintiff, ANTHONY PORTO, to be electrocuted.

21. That as a direct and proximate cause of the defendant's negligence, the plaintiff, ANTHONY PORTO, was rendered sick, sore, lame, and disabled; sustained a severe

shock to his nervous system; sustained lasting and permanent injuries; and as a consequence thereof, this plaintiff was necessarily confined to bed at home and did undergo medical treatment, and was necessarily prevented from attending to his usual occupation, and may in the future be compelled to undergo medical care and attention and be further prevented from attending to his usual occupation; and that this plaintiff sustained loss of earnings, all to his damage.

## AS AND FOR A FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF ANTHONY PORTO

22. The plaintiff, ANTHONY PORTO, repeats and realleges as fully set forth herein the allegations of fact contained in paragraphs "1" to "21" inclusive.

23. By reason of the foregoing, the plaintiff, ANTHONY PORTO, was damaged in a sum to be determined by a jury at the time of trial and in excess of the jurisdictional requirements of the Court together with legal fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF CAROL PORTO

24. The plaintiff, CAROL PORTO, repeats and realleges as if fully set forth herein the allegations contained in paragraphs "1" through "21".

25. That plaintiff, CAROL PORTO, now is and at all times hereinafter mentioned was the spouse of the plaintiff, ANTHONY PORTO, and resided with him.

26. That solely and wholly as a result of the negligence, carelessness, and recklessness of the defendant as aforesaid, plaintiff, CAROL PORTO, has been obligated to expend monies for X-Rays, hospital expenses, physicians' services, and medical care and treatment in an attempt to cure the aforesaid injuries sustained by the plaintiff, ANTHONY PORTO.

27. That upon information and belief, because some of plaintiff ANTHONY PORTO'S injuries will be permanent and plaintiff, CAROL PORTO, will continue to become obligated and expend monies for medical care and services in the future.

28. That plaintiff, CAROL PORTO further has been deprived of the love, society, and services of her husband, plaintiff, ANTHONY PORTO.

29. As a result of the foregoing, the plaintiff, CAROL PORTO was damaged in a sum to be determined by a jury at the time of trial and in excess of the jurisdictional requirements of the Court together with legal fees, costs and disbursements of this action.

**WHEREFORE**, plaintiff, ANTHONY PORTO, demands judgment in a sum to be determined by a jury at the time of trial and in excess of the jurisdictional requirements of the Court in the First Cause of Action, and plaintiff CAROL PORTO demands

judgment in a sum to be determined by a jury at the time of trial and in excess of the jurisdictional requirements of the Court in the Second Cause of Action, together with legal fees, costs and disbursements of this action, and for such other and further relief as this Court may deem just and proper.

Dated: White Plains, New York
      December 7, 2004

                    JOSEPH A. MARIA, P.C.
                    By: _____
                    Joseph A. Maria, Esq. (0209)
                    Attorneys for Plaintiffs
                    301 Old Tarrytown Road
                    White Plains, New York 10603
                    (914) 684-0333
                    Our File #: 01-1024(rc)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
Anthony Porto
Carol Porto,

                 Plaintiff,                      05 cv 270 (SCR)

      -against-                          **ORDER**

57 Main Street Corp.,
                 Defendant.
-----------------------------------------------------------------x
Robinson, J.


      The Court having been advised that all claims asserted in the above entitled action

having been settled,

      ORDERED, that the above entitled action be and hereby is discontinued, without

costs to any party, subject to reopening should the settlement not be concluded within

thirty (30) days of the date hereof.


                              So Ordered:


                             _Stephen C Robinson_
                             **United States District Judge**

Dated: Jan. 10, 2007
       White Plains, New York

