UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------     x
WILLIAM HAUGHEY,

                                    Plaintiff,

                                                                    Index No.: 18-cv-02861
-against-                                                           (KMK)

THE COUNTY OF PUTNAM, THE TOWN OF
CARMEL, INSPECTOR ROBERT GEOGHEGAN,
ROBERT EFFEREN, CHIEF DARYL JOHNSON,
DOUGH CASEY, PO JUSTIN FISCHER, DETECTIVE
MICHAEL NAGLE, SERGEANT ROBERT BEHAN,
SERGEANT JOHN DEARMAN, JOSEPH
CHARBONNEAU, JOHN DOES 1-5, AND ANTHONY
F. PORTO SR., ANTHONY M. PORTO, JR.,
SMALLEY'S INN & RESTAURANT aka SMALLEYS
INN TNT CAFÉ INC., operating under the trade name
Smalley's Inn and/or Smalley's Inn Mainstreet Cafe,

                                    Defendants.
----------------------------------------------------------------------     x

**Memorandum of Law in Support of the Town of Carmel Defendants' Motion for Summary Judgment**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACT ........................................................................................................... 3

    **A.**   **Fire and Subsequent Investigation** ........................................................................ 3

    **B.**   **Plaintiff's Criminal Trial** ...................................................................................... 6

    **C.**   **Post-Conviction Proceedings** ............................................................................... 11

    **D.**   **Relationship between the Town of Carmel and the Carmel Fire District** ............................. 12

    **E.**   **Relationship between Detective Nagle and Anthony Porto Jr.** ................................. 13

RELEVANT PROCEDURAL HISTORY ................................................................................ 13

ARGUMENT .......................................................................................................................... 14

    **I.**    **Plaintiff's false arrest and malicious prosecution claims should be dismissed because   the arrest and prosecution were supported by probable cause and/or arguable  probable cause.** ....... 14

    **II.**     **Plaintiff was not denied the right to a fair trial.** .................................................. 17

    **III.**    **Detective Nagle is entitled to qualified immunity on Plaintiff's claim that he falsified evidence.** ...................................................................................................................... 19

    **IV.**    **The claims against Lieutenant Dearman and Officer Fischer should be dismissed  because they were entitled to rely on Detective Nagle's investigation when arresting  Plaintiff.** ................ 21

    **V.**    **Claims regarding purported deficiencies in the police investigation are not    actionable under § 42 U.S.C. § 1983.** ........................................................................................ 21

    **VI.**    **Plaintiff's Monell claims against the Town of Carmel should be dismissed because  Chief Johnson of the Carmel Fire District is not a Town Policymaker as the Town  and the District are distinct municipal entities.** ....................................................................................... 22

    **VII.**    **Plaintiff's conspiracy claim against Detective Nagle should be dismissed.** .......................... 23

CONCLUSION ....................................................................................................................... 24

## **PRELIMINARY STATEMENT**

This memorandum is submitted on behalf of Defendants the Town of Carmel, Detective Michael Nagle, Sergeant John Dearman, and Police Officer Justin Fischer.  Following a trial, Plaintiff William Haughey was convicted of setting a fire at Smalley's Tavern in the Town of Carmel shortly after midnight on March 10, 2007.  This fire was located in a ceiling subspace located above the men's room of the bar.  On the evening that the fire was set, the bar's proprietor, co-defendant Anthony Porto Jr, was angry at Plaintiff called Plaintiff a "piece of shit" and told Plaintiff not to show his face in Smalley's anymore. Several witnesses later observed Plaintiff borrow a lighter and go into the Men's bathroom on two occasions. Surveillance video established that Plaintiff was the last person to use the men's room prior to the fire and that patrons began to smell smoke approximately one minute after he exited the men's room for a second time. According to multiple eyewitnesses, once other patrons became aware of the fire and were searching for its source, Plaintiff ran into the bathroom, removed only one of the ceiling tiles and removed burning paper towels from above the ceiling.  These paper towels were of the type used in the bathroom.  None of the witnesses present at the time of the fire observed any electrical devices in the vicinity of the fire.  Town of Carmel Police Detective Michael Nagle arrived at the scene approximately two hours after the fire.  He photographed the scene and interviewed eyewitnesses.  The statements he took were fully consistent with the eyewitness's subsequent testimonies.  At noon of the following day, Detective Nagle returned with a Putnam County Fire Investigation team, which determined that the fire was incendiary in nature.  Plaintiff did not testify on his own behalf at trial and did not proffer any alternative evidence regarding the source of the fire.

1

Plaintiff's conviction was affirmed by the Appellate Division and leave to appeal to the Court of Appeals was denied. Plaintiff's petition for *habeus corpus* was reviewed by the Attorney General's office, which elected to defend his conviction. After the State's opposition to this petition was filed, the new Putnam County District Attorney substituted himself for the state and argued that Plaintiff's conviction should be vacated on the grounds that Plaintiff's defense counsel was ineffective and the County's fire investigation was flawed.

As will be discussed in detail below, Detective Nagle had probable cause to arrest and prosecute Plaintiff for arson based on the consistent testimony of multiple eyewitnesses–which he was entitled to credit–and surveillance video establishing that Plaintiff was the only one with the opportunity to set the fire. The purportedly "falsified" evidence–a report prepared by the Fire investigation team containing hearsay accounts of witness statements–was not prepared by Detective Nagle and could not have caused Plaintiff's conviction because it was not admitted into evidence at the criminal trial.

Plaintiff's claims against the other Carmel Defendants fail as well. Sergeant John Dearman and Officer Justin Fischer arrested Plaintiff but did not participate in the arson investigation in any way. Because police officers are entitled to rely on information provided by other officers in making an arrest, all claims against them should be dismissed. Finally, Plaintiff's claims against the Town of Carmel based on the actions of Fire Department Chief Daryl Johnson fail because he is employed by a Fire District that contracts with the Town, not the Town itself and is therefore not a Town policymaker.

## STATEMENT OF FACT

### A.    Fire and Subsequent Investigation

On the early morning of March 10, 2007, Town of Carmel Detective Michael Nagle was dispatched to respond to a fire at Smalley's Tavern. (Ex. A, Nagle Dep. 30:17-23). Upon his arrival, he was directed to the scene of the fire in the men's restroom by other officers who were already at the scene. (Ex. A, Nagle Dep. 48:2-20). In the restroom, he observed charred debris on the floor and in a urinal. A ceiling tile had been removed, revealing charring on the wood in the ceiling subspace. (Ex. A, Nagle Dep. 52:12-21). Detective Nagle was able to get a closer view of the ceiling subspace by standing on top of the restroom toilet. (Ex. A, Nagle Dep. 57:4-6). He photographed the charred debris in the men's room and the ceiling subspace. (Ex. B, Nagle Photographs). Several witnesses to the fire remained at the bar and Detective Nagle spoke with them about the fire. (Ex. A, Nagle Dep. 68:22-70:16). These witnesses subsequently provided written statements to the police. (Ex. C, Carmel Police Incident Report and Supporting Documents at 13-20, 27-47). Multiple witnesses observed Plaintiff borrow a cigarette lighter from Marion Pfister and they indicated that he was the last person to use the men's room prior to the discovery of the fire. (Id.).

Anthony Porto Jr. ("Porto"), the acting owner of the bar, was friends with Plaintiff's former landlord Lou Albano, who had made a criminal complaint against Plaintiff that led to his arrest earlier in the year. (Ex. D, Pl. Dep. 34:12-22; 96:21-97:6; 193:5-194:5). Upon seeing Plaintiff for the first time that night, Porto told Plaintiff that he had "some nerve" showing his face at Smalley's, called Plaintiff a "piece of shit," and told him never to show his face at Smalley's again. Porto

3

relayed this information to Detective Nagle.  (Ex. E, Porto Aff. ¶ 2, 9; Ex. F, Tr. Trans. 685:2-23).

AnneMarie Navarro, the bartender, stated that she saw Plaintiff borrow a cigarette lighter from a patron named Marion and immediately head into the men's room for what she characterized as an unusually long period of time.  After Plaintiff exited the men's room, he returned to the bar. Several minutes later, Ms. Navarro began smelling smoke and checked the kitchen to see if there was a fire.  She returned to the dining room and realized that the smoke was coming from the men's room.  Two patrons named Fred and Marion Pfister were in the men's room looking for a fire in the garbage can when Plaintiff pushed them out of the way, jumped onto a men's room toilet and removed a ceiling tile.  Ms. Navarro heard Marion say "It's paper towels there in the wall." Plaintiff exited the bathroom and returned to the bar without saying anything.  Ms. Navarro told Plaintiff that she knew that he set the fire and Plaintiff then left the bar.  (Ex. C at 38-42).

Porto also provided Nagle with surveillance footage depicting the bar area of Smalley's during the time the fire occurred.  The video depicts Plaintiff using the men's room twice during the fifteen minutes prior to the fire.  (Ex. G, Smalley's Video)..  No one else used the men's room during this time.  Plaintiff left the men's room for a second time approximately one minute before patrons began reacting in a way that indicated that they smelled smoke.  (Ex. F, Tr. Trans. 698:2-708:10).

After he finished investigating the fire scene, Detective Nagle asked Plaintiff if he would accompany him to the police station for questioning.  (Ex. D, Pl. Dep. 158:10-15).  Plaintiff voluntarily accompanied him to the police station in Detective Nagle's vehicle.  (Ex. D, Pl. Dep. 159:6-19).  Plaintiff testified that he was not handcuffed and he understood that he was free to

leave the police station at any time.  (Ex. D., Pl. Dep. 160:2-5).  Upon questioning, Plaintiff said

he did not do anything wrong and requested to leave.  (Pl. Dep. 161:2-162:5).  Another officer

then drove Plaintiff back to his car. (Ex. D, 164:22-24).

After Detective Nagle left the crime scene, Porto closed the bar for the night.  He was the

only person with access to the men's room and did not enter it or tamper with the crime scene.

(Ex. E, Porto Aff. ¶ 14).  At noon of the following day, Detective Nagle returned to Smalley's with

two Putnam County Fire Investigators: Robert Geoghan and Robert Efferen and Daryl Johnson,

the Chief of the Carmel Fire Department.  (Ex. A, Nagle Dep. 91:18-20; Ex. C at).  Nagle observed

the investigation team inspect and photograph the men's room where the fire occurred.  (Ex. A,

Nagle Dep. 105:9-106:6).

Following their investigation, the fire investigation team prepared an investigation report.

The narrative portion of this report states, in pertinent part:

> The Fire Investigation Team arrived on scene at 1405 hours.  CPD Detective Michael Nagle
> and CFD Chief Daryl Johnson arrived on scene a few moments later.  Detective Nagle
> informed F.I.T. members present and Chief Johnson that at approximately 0100 hours on
> 03-10-07 a male had allegedly tried to set a fire in the Men's Room at Smalley's inn.
> Detective Nagle requested that the F.I.T. examine the men's room and determine the cause
> of the fire; whether it was accidental, natural, or incendiary in nature.
>
> Detective Nagle informed the team that he had statements from witnesses present at the
> time of the incident that a male had placed paper towels in between the drop ceiling and lit
> the paper.  Witnesses stated that the male then sat at the bar and as the fire grew in size,
> smoke started to enter the bar area.  The male, identified as Mr. William Haughey, then
> entered the bathroom and removed a drop ceiling tile and pulled out the burning paper
> police.

(Ex. H, Fire Investigation Team Report).  The fire investigation team determined that the fire was

incendiary in nature because there was no electrical wiring, electrical outlets, electrical appliances,

heating units, or pipes in the vicinity of the fire.  (Id).  They viewed the surveillance video showing

that Plaintiff exited the bathroom approximately one minute before patrons and staff began to react

to the smell of smoke.  (Id.).   The report indicates that it was prepared by Inspector Robert Geoghan. (Id.).

The incident report and criminal complaint prepared by Detective Nagle do not indicate that he was in possession of witness statements that indicated that they actually observed a male placing paper towels between the drop ceiling.  (Ex. C at 13-20; 27-27).  The witnesses inferred this based on Mr. Porto having a verbal altercation with Plaintiff, Plaintiff borrowing a lighter, the timing of Plaintiff's exit from the men's room and the discovery of the fire, and the fact that Plaintiff knew exactly which ceiling tile to remove in order to pull out the burning paper in the ceiling subspace.

Town of Carmel Sergeant John Dearman first became aware of the criminal case against Plaintiff when he was contacted by Detective Nagle, who informed Dearman that he was going to bring arson charges against Plaintiff.  (Ex. I, Dearman Dep. 20:17-21:1; 23:10-13).  Nagle asked Dearman to arrest Plaintiff because Nagle was off-duty attending a religious function prior to his wedding.  (Ex. I, Dearman Dep. 22:19-23:2).  Sergeant Dearman and Officer Justin Fischer arrested Plaintiff in the vicinity of the local Knights of Columbus and transported him to the Carmel police station.  (Ex. I, Dearman Dep. 27:5-18).  Sergeant Dearman and Officer Fischer did not personally investigate the fire at Smalley's and relied on the determination by Detective Nagle that there was probable cause to place Plaintiff under arrest.  (Ex. I, Dearman Dep. 22:10-14; 29:21-31:15).

Following his arrest, Plaintiff did not answer questions posed to him by the police or convey his version of events to them.  (Ex. A, Pl. Dep. 175:1-22).

**B.**     **Plaintiff's Criminal Trial**

Anthony Porto testified at trial that at after midnight on March 10, 2007, he noticed Plaintiff in the bar area of Smalley's. (Ex. F, Tr. Trans 685:2-23). He had known Plaintiff for approximately ten years but was angry at Plaintiff because of something he believed that Plaintiff had done. (Id.). Porto told Plaintiff "you've got some nerve showing your face here," called him "a piece of shit," and told him "not to show his face in [Smalley's] anymore." (Ex. F, Tr. Trans 685:2-23). As Porto began cleaning the bar in preparation for closing, he noticed Plaintiff exit Smalley's, get into his car, and start it. (Ex. F, Tr. Trans. 686:5-12). Porto then returned to the kitchen. (Ex. F, Tr. Trans 686:13-16). However, Plaintiff did not leave and returned to the bar. The other people in the bar at the time were Tom Nally, Fred and Connie Pfister, Marion Snizek, and Annemarie Navarro. (Ex. F, Tr. Trans. 690:7-11). Porto's wife was sleeping in the residence on the second floor of the building. (Id.).

Witness Tom Nally testified that he used the men's room but noticed nothing unusual. (Ex. F, Tr. Trans. 723:18-724:13). He returned to his seat at the end of the bar and heard Plaintiff ask Fred Pfister for a lighter. (Ex. F, Tr. Trans 725:13-21). Plaintiff lit a cigarette and gave the lighter back to Pfister "at some point" that night. (Ex. F, Tr. Trans 740:5-11; 858:11-24).

Nally and Pfister both observed Plaintiff use the men's room. (Ex. F, Tr. Trans. 731:7-13; 862:21-864:7). At approximately 1:15 a.m., several of the patrons began to smell smoke. (Ex. F, Tr. Trans. 726:5-9; 732:19-24; 859:10-12). This occurred approximately ten minutes after Plaintiff left the bar, got into his car, and then re-entered Smalley's. (Ex. F, Tr. Trans. 686:13-24). After Porto heard patrons yelling about smoke, he returned to the kitchen to see if the fire had originated there. He did not see any fire in the kitchen. (Ex. F, Tr. Trans. 686:25-687:7). Annemarie Navarro, the bartender, also checked the kitchen but did not see any signs that the fire originated from there. (Ex. F, Tr. Trans 875:22-876:17). Porto and Navarro returned to the bar area, and Navarro

7

indicated that the smoke was originating from the men's room. (Ex. F, Tr. Trans. 687:7-15; 876:8-9). Marion Snizek, an off-duty bartender, went into the men's room and checked the trashcan. (Ex. F, Tr. Trans. 887:24-888:15). She determined that it was not the source of the smoke. (Id.) Navarro, Nally, and Pfister all observed either flames or a "glow" coming out of a vent in the wall located above the door of the men's room.[1] (Ex. F, Tr. Trans. 726:21-25; 865:6-20; 877). Porto hurried towards the bathroom, but Plaintiff "jumped off the stool, cut Porto off, and ran into the men's room. (Ex. F, Tr. Trans 688:10-15). He pushed aside Snizek and immediately climbed onto either a toilet or urinal. (Ex. F, Tr. Trans 688:16-22; 877:18-25; 888:11-25). He then reached directly up, removed only one of the approximately eight ceiling tiles in the men's room, and pulled burning brown paper towels down from the space between the ceiling tiles. (Ex. F, Tr. Trans. 688:23-689:15; 888:22-890:9). The paper towels were the same kind that were kept in a stack on the men's room toilet. (Ex. F, Tr. Trans. 688-23:689:15). Marion Snizek did not observe anything–such as wires or electrical devices–fall out of the ceiling area fall to the ground. (Ex. F, Tr. Trans. 890:10-21). Porto yelled at Plaintiff that there was nothing in the ceiling that could cause a fire. (Ex. F, Tr. Trans. 689:21-690:6). Plaintiff looked at Porto with "a blank look on his face" and shouted "it's out, its out," and left the men's room. (Id.).

Porto testified that the fire occurred in a small subspace between the ceiling tiles of the men's room and the second floor. (Ex. F, Tr. Trans. 693:5-15). A fan containing an electric light was attached to the ceiling tile. (Ex. F, Tr. Trans. 693:21-694:13). This fan was undamaged by the fire and remained operational. (Id.). The subspace also contained a "smoke eater" that Porto testified was not plugged in at the time of the fire and had not been plugged in in ten to fifteen

---

[1] This vent is visible in the photograph submitted as page 9 of Exhibit B.

years.[2]  (Ex. F, Tr. Trans 693:9-24).  A smoke eater is an electronic device used to filter cigarette smoke from air.  (Ex. F, Tr. Trans. 828:18-829:4).  There were no other electrical devices in the area.  (Ex. F, Tr. Trans 693:21-24).

Snizek climbed on top of the men's room toilet and saw that the wooden beams above the ceiling tiles were still smoldering.  (Ex. F, Tr. Trans. 890:25-891:4).  Navarro and gave Snizek pitchers of water which she threw on the fire until it was extinguished.  (Ex. F, Tr. Trans.891:6-24).  Snizek had previously worked in Putnam Hospital and had been trained not to throw water at an electrical fire.  She observed no electrical appliances or wires in the vicinity of the smoldering wooden beams where she threw the water and did not see anything else burning.  (Id.)

Navarro asked Plaintiff what he had been doing in the bathroom and he "just kept saying…are you kidding me, are you serious, are you serious?"  (Ex. F, Tr. Trans. 879:15-24).  When she asked him again, he left the bar.  (Id.).  Porto called the Putnam County Sheriff's Department, but they "said that the car that was in that vicinity was down."  (Ex. F, Tr. Trans 706:17-24).  He then called the Carmel Police Department.  (Ex. F, Tr. Trans. 694:16-22).  Carmel Police arrived at approximately 1:15 to 1:30 a.m.  (Id.).

Detective Nagle was the only police witness to testify at the trial.  He arrived at Smalley's at approximately 2:40 a.m.  (Ex. F, Tr. Trans. 913:14-22).  As he walked outside the restaurant, he observed Plaintiff sitting outside in a car.  (Ex. F, Tr. Trans. 914:6-11).  He testified that Plaintiff had glassy eyes and smelled of alcohol.  (Ex. F, Tr. Trans. 914:7-23).  He entered the men's room

---

[2] Porto remains in possession of this smoke eater and produced it for discovery and inspection in this litigation.  It was plugged in and found to be operational.  (Ex. M Schneiders Report ¶ 12-13).

and took photographs which were admitted into evidence.  (Ex. F, Tr. Trans 915:6-917:3; Ex. B, Nagle Photographs).  He interviewed Porto and Navarro.  (Ex. F, Tr. Trans. 919:20-25).

The Smalley's surveillance footage previously reviewed by Detective Nagle was admitted into evidence and shown to the jury.  (Ex. F, Tr. Trans. 698:2-708:10; Ex. G, Surveillance Video). The jury was shown that Plaintiff exited the bathroom for the second time within fifteen minutes at time stamp 107:48 on the video and that people began to react to the smell of smoke approximately one minute later, at 108:52. (Ex. F, Tr. Trans. 704:8-21).

During a sidebar prior to the testimony of County Fire Investigator Robert Geoghan, defense counsel objected to the use of photographs and notes taken by the Fire Investigation Team during its investigation on the grounds that they were not produced in a timely manner before trial and were only provided in black and white.  (Ex. F, Tr. Trans 762:15-775:21).  Defense counsel indicated that he had received color copies of the photographs taken by Detective Nagle.  (Ex. F, Tr. Tans 774:19-775:2).  Before the court ruled on the issue, the prosecution agreed to use the photographs taken by Detective Nagle in lieu of the Fire Investigation Team's photographs.  (Ex. F, Tr. Trans 775:17-21).

Investigator Geoghan testified that the photographs taken by Detective Nagle accurately depicted the scene of the fire.  (Ex. F, Tr. Trans 809:7-21).  He opined that the v-shaped charring pattern on the wall indicated that the fire originated on the ceiling tile.  (Ex. F, Tr. Trans 815:14-817:2).  This charring pattern was consistent with a big circular burn pattern on the ceiling tile that had been removed at the time Detective Nagle photographed the scene of the fire.  (Ex. F, Tr. Trans. 853:17-854:10).  Inspector Geoghan further opined that there were no holes or staples in the wood near the burned area or irregularities in the burn pattern, indicating that nothing had been

removed from the scene.  (Ex. F, Tr. Trans. 817:3-818:16).  He further testified that the blistering

on the burned area of the ceiling indicated that there was high heat coming from below it and there

were no irregularities or residue in the burn pattern on the ceiling indicating the presence of wiring

or areas protected by piping or metal when the fire occurred.  (Ex. F, Tr. Trans. 817:3-820:5).  He

ruled out the bathroom light fixture as a cause of the fire because the fixture was operational.  (Ex.

F, Tr. Trans. 820:6-14).  He testified that throwing water on an electrical fire could cause the fire

to grow instead of extinguishing it.  (Ex. F, Tr. Trans. 847:23-848:4).  He concluded that the fire

was not electrically, mechanically, or naturally caused and was therefore incendiary in nature.  (Ex.

F, Tr. Trans 821:11-822:10).  He did not testify about the "eyewitness statements" taken by

Detective Nagle referenced in his report.  On cross-examination, Inspector Geoghan testified that

he had no direct knowledge that Plaintiff started the fire and did not see him start the fire.  (Ex. F,

Tr. Trans 842:9-12).  Defense counsel obtained Geoghan's report prior to the trial and alluded to

the statement in the report attributed to Nagle without disclosing it to the jury.  (Ex. F. Tr. Trans.

776:2:15-772:8; 840:11-841:3).

Plaintiff did not testify or present any witnesses on his behalf.  (Ex. F, Tr. Trans. 934:11-

936:12).  He was convicted of Arson in the Second Degree and sentenced to a determinate sentence

of imprisonment ten years.  His sentence was aggravated by a prior felony conviction, past failure

to comply with community supervision, and was taken in satisfaction of five open misdemeanor

cases against him.  (Ex. F, Sentencing Trans.[3] at 10:10-17:18).

C.    **Post-Conviction Proceedings**

---

[3] The transcript of Plaintiff's sentencing begins immediately after the conclusion of the trial transcript but is numbered
separately.

Plaintiff's conviction was affirmed by the Appellate Division on direct appeal.  People v. Haughey, 67 A.D.3d 928 (2d Dept. 2009) *leave to appeal denied* 14 N.Y.3d 771 (2010).  The court ruled that the evidence was legally sufficient to establish Plaintiff's guilt beyond a reasonable doubt.  Id.    In 2012, Plaintiff filed an application for a writ of error coram nobis to vacate his conviction on the grounds of ineffective assistance of counsel which was denied by the Second Department, which found that he failed to establish that his counsel was ineffective.  94 A.D.3d 776 (2d. Dept. 2012) *leave to appeal denied* 19 N.Y.3d 961.  In 2013, Plaintiff filed a habeus corpus petition pursuant to 28 U.S.C. § 2254 in this Court.   (Case No. 13-cv-8768[vb][lms]).  The New York Attorney General's office opposed his petition.  (Dkt. No. 88).  Robert V. Tendy[4], the Putnam County District Attorney, then substituted himself for the state and submitted a memorandum in support of Plaintiff's release.  (Dkt. No. 94).[5]  On or about May 23, 2016, the court so-ordered a stipulation between the parties consenting to Plaintiff's release.  (Dkt. No. 98).    There was no finding of misconduct by Detective Nagle.

**D.    Relationship between the Town of Carmel and the Carmel Fire District**

Plaintiff seeks to hold the Town of Carmel liable for the actions of Carmel Fire Department Chief Daryl Johnson, a putative Town policymaker.  However, the Carmel Fire Department is not a municipal subdivision.  Instead, the Carmel Fire Department is a Fire District, a separate legal entity established pursuant to N.Y. Town Law § 170 et seq.  (Ex. J, Folchetti Dep. 12:3-18:5).  In 2007, the

---

[4] Mr. Tendy was not the District Attorney when the case was initially prosecuted.
[5] The District Attorney's memorandum, which is annexed to Plaintiff's complaint as an Exhibit, is devoid of any citations to the record, which it frequently mischaracterizes.  (Ex. L, Second Amended Complaint)  For example, it states that there was "no evidence of paper towels having been the cause of the fire."  (Dkt. No. 94 at ¶ 21).  Yet two witnesses testified that they observed Plaintiff remove burning paper towels from the subspace.  (Tr. Trans. 688:23-689:15; 888:22-890:9).  The D.A. also faults the Fire Investigation team for failing to "investigate" the vent.  But since there was burning material in the subspace, and individuals in the bar could see a glow coming from the vent, the vent merely separated the subspace from the wall.  The memorandum also states that Porto said that he unplugged the smoke eater when smoking in the bar became illegal, but he did not testify to this.  (Tr. Trans. 718:8-719:2).

Town contracted with the District to provide fire protection services. (Ex. K, 2007 Contract for Fire Protection Services). Fire Protection Districts are distinct municipal entities with the capacity to sue and be sued. Town Law § 180. Fire Districts are not governed by the Town Board, but by publicly-elected Commissioners, who are vested with the power to hire and fire the Fire Chief. Town Law §§ 175-176.

### E.    Relationship between Detective Nagle and Anthony Porto Jr.

Plaintiff's complaint is rife with references to a pre-existing relationship between Porto and the Detective, however these claims are unsubstantiated by testimony. Plaintiff admitted that he was unaware of any pre-existing relationship between Detective Nagle and Porto. (Ex. D, Pl. Dep. 280:2-21). Detective Nagle testified that prior to the incident giving rise to this case, he had no personal relationship with Porto, except for an occasion in the past where Porto voiced displeasure towards Nagle for parking his police vehicle near Smalley's, potentially hurting business. (Ex. A, Nagle Dep. 59:22-61:20). Detective Nagle did not frequent Smalley's while off-duty. (Ex. A, Nagle Dep. 60:1-2).

### RELEVANT PROCEDURAL HISTORY

Following Defendants' motion to dismiss, the Court dismissed all claims against Defendants Charbonneau and Behan. (Dkt. No. 97 at 32). The court also dismissed the conspiracy claim against Defendants Fischer and Dearman. (Id. at 31-32). Accordingly, these dismissed claims are not addressed in the instant motion.

**ARGUMENT**

I.    **Plaintiff's false arrest and malicious prosecution claims should be dismissed because the arrest and prosecution were supported by probable cause and/or arguable probable cause.**

The existence of probable cause to the underlying criminal charges is a complete defense to claims of false arrest and malicious prosecution. Savino v. City of New York, 331 F.3d 63, 72 (2d. Cir. 2003). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." This standard "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates. 462 U.S. 213, 243 n.13 (1983). Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Because probable cause is an objective standard, the subjective motivation of the arresting officers is *not* a consideration in assessing probable cause. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) [citing Mozzochi v. Borden, 959 F.2d 1174, 1179-1180 (2d Cir.1992)]. When determining the existence of probable cause in the context of a malicious prosecution claim, Courts may consider both pre-arrest evidence and post-arrest evidence obtained prior to the initiation of the criminal charges at issue. Jackson v. City of New York, 939 F.Supp.2d 235, 251 (E.D.N.Y.2013).

Once probable cause is established, officers have no duty to investigate the affirmative defenses the arrestee could potentially raise at trial. See Jocks v. Tavernier, 316 F. 3d 128, 135-136 (2d. Cir 2003) ("We do not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest."), Ricciuti v. N.Y.C. Transit Auth.,124 F.3d 123, 128 (2d. Cir 1997) ("although Officer Lopez was entitled to credit [arrestee's] version of events over

14

[complainant's] he was not required to do so"). <u>Moscoso v. City of New York</u>, 92 F.Supp.2d. 310, 313-314 (S.D.N.Y. 2000) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making the arrest.").

Moreover, in claims involving false arrest and malicious prosecution against individual officers, the officers are entitled to qualified immunity if there was arguable probable cause to arrest and/or prosecute. "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." <u>Garcia v. Does</u>, 779 F.3d 84, 92 (2d Cir. 2015). The arguable probable cause standard is "more favorable to the officers than the one for probable cause," <u>Ackerson v. City of White Plains</u>, 702 F.3d 15, 21 (2d Cir. 2012), as "[t]his forgiving standard protects all but the plainly incompetent or those who knowingly violate the law." <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 160 (2d Cir. 2001).

In the case at bar, there was probable cause to arrest and prosecute Plaintiff because there was overwhelming circumstantial evidence that he started the fire. Porto indicated that upon seeing Plaintiff for the first time, he was angry at the Plaintiff for something he thought the Plaintiff had done, cursed at him, and told Plaintiff never to show his face at Smalley's again. Plaintiff then went to his car, but returned to the bar and borrowed a cigarette lighter from a patron. Witness testimony and the Smalley's surveillance video established that Plaintiff used the men's room on two occasions shortly before the discovery of the fire and that no other witness used the men's room during this time. The surveillance video depicts witnesses becoming aware of the fire approximately one minute after Plaintiff left the men's room for the second time. Witness testimony further established that after the patrons became aware of the fire and were searching

15

for its origins, Plaintiff pushed past Marianne Snizek, stood on the toilet, and removed only one of the many ceiling tiles in the men's room and immediately pulled out the burning paper that was the source of the fire. Ms. Snizek, who threw water into the burned area of the ceiling subspace and had received training regarding electrical fires, testified that she did not observe any wires or electrical appliances at the site of the fire and her observations are corroborated by the photographs taken by Detective Nagle. Porto testified that the smoke eater in the vicinity of the fire was not plugged in and had not been plugged in for years at the time the fire occurred and that there were no other electrical devices in the area other than the fan and light which remained functional. Thus, Plaintiff–who had been drinking alcohol throughout the night of the incident–was the only person with the motive and opportunity to set the fire. He also demonstrated a knowledge of the fire's precise point of origin at a time when no other patron was able to locate it. A reasonable police officer could conclude that Plaintiff was able to do this because he in fact set the fire during the time he he was alone in the men's room a mere one minute before the fire's discovery. Furthermore, many of the the eyewitnesses to the fire–who had ability to observe Plaintiff's demeanor during the time immediately before and after the fire–indicated that they believed that Plaintiff had set it. Furthermore prior to Plaintiff's arrest, Detective Nagle consulted with the Putnam County District Attorney's office, who indicated that there was probable cause to arrest. Accordingly, there was probable cause to believe that Plaintiff committed the offense of arson.

While the above-referenced circumstantial evidence alone was clearly enough to constitute probable cause and/or arguable probable cause, Detective Nagle's probable cause determination was also supported by the findings of the County Fire Investigation Team. Detective Nagle called fire experts to the scene who determined that the fire was incendiary in nature and originated from a burning object above the ceiling tile. Plaintiff alleges that the fire investigation was flawed

because the scene was "unsecured" prior to the Investigation Team's arrival, however the factual basis for their conclusion was visible in the photographs taken by Detective Nagle shortly after the fire occurred and was consistent with eyewitness accounts of the fire.  Moreover, Porto indicated in his affidavit that the bar was closed and the men's room was inaccessible between the time Smalley's was closed on the night of the fire and the Fire Investigation team's arrival the following day.  The fire investigation team was aware of the delay in time between the fire and their arrival on the scene and still concluded without reservation that the fire was incendiary.[6]

This conclusion is reinforced by the fact that the same evidence forming the basis of Detective Nagle's probable cause determination led Plaintiff to be convicted by a jury of his peers and the Appellate Division rejected his challenge to the sufficiency of the evidence presented against him at trial.  Accordingly, because probable cause is a complete defense to false arrest and malicious prosecution claims, these claims against the moving defendants must be dismissed. Moreover, Detective Nagle is entitled to qualified immunity as there is no clearly established law that would have alerted every reasonable officer that probable cause was lacking given the strong circumstantial evidence presented.

## II.    __Plaintiff was not denied the right to a fair trial.__

When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).  However, this rule does not apply where the allegedly falsified evidence does not affect the trial in question or the

---

[6] The County fire inspector's report provided the option for them to indicate that the cause of the fire was unable to be determined.  They made no such finding and instead concluded, in no uncertain terms, that the fire was incendiary, and later testified to that effect.

deficiencies of the evidence in question are made available to the opposing party at trial. "Mere attempts to withhold or falsify evidence cannot form the basis for a § 1983 claim for a violation of the right to due process when those attempts have no impact on the conduct of a criminal trial." DuFort v. City of New York, 874 F.3d 338, 355 (2d. Cir. 2017) (holding that suggestive lineup did not deprive plaintiff of his right to a fair trial where deficiencies in the lineup were fully mitigated because they were disclosed at trial).

In the case at bar, Plaintiff relies on the narrative in the Fire Investigation Team's report to contend that detective Nagle improperly influenced the Fire investigation team's opinion by falsely informing them that he had statements from witnesses stating that they actually observed Haughey setting the fire. However, this report was not created or forwarded to Prosecutors by Detective Nagle and the witness statements that he forwarded to prosecutors were fully consistent with these witnesses' subsequent trial testimony. Thus, Detective Nagle did not "create false information likely to influence a jury's decision and forward that information to prosecutors." Ricciuti, 123 F.3d at 130. Additionally, the Fire Investigation' Team's report was disclosed to defense counsel in advance of trial and defense counsel was free to use it to cross-examine Inspector Geoghan regarding the extent to which his opinion was based on anything he was told by Detective Nagle. Inspector Geoghan plainly did not base his opinion on what he thought Detective Nagle's witness statements said as he testified at trial during his cross-examination that he had no direct knowledge that Plaintiff started the fire. Moreover, the jury heard direct testimony from the eyewitnesses who Detective Nagle interviewed and did not hear the hearsay account that appears only in the Fire Investigation Team's report. Because the Fire Investigation Report in question was not admitted into evidence and was made available to defense counsel, it cannot form the basis for a claim that Plaintiff was denied the right to a fair trial by Detective Nagle.

18

Plaintiff also appears to be arguing that he was denied the right to a fair trial because the prosecution withheld supposedly exculpatory evidence by not producing color copies of the photographs taken by the County Fire Investigation Team in advance of trial.  As discussed above, Plaintiff's criminal defense counsel objected to the admission of the photographs at issue and the prosecution agreed to use the photographs taken by Detective Nagle instead.  Any claim against Detective Nagle based on these photographs fails on multiple grounds.  First, the photographs in question are not exculpatory and simply depict the same burned areas as are depicted in the photographs taken by Detective Nagle.  If the photographs somehow established Plaintiff's innocence, then his criminal defense counsel would not have objected to their admission into evidence.  More fundamentally, Detective Nagle cannot be held personally liable for failing to produce these photographs as he did not take the photographs in question and the photographs that he did take were produced.  He satisfied any disclosure obligations he had by producing the photographs he took to the prosecution, which were turned over to defense counsel and admitted into evidence without objection during Plaintiff's criminal trial.  See Bermudez v. City of New York, 790 F.3d 368, 376 n.4 (2d Cir. 2015)(stating that police officers can be held liable for due process violations under § 1983 if they withhold exculpatory evidence from prosecutors).

## III.    Detective Nagle is entitled to qualified immunity on Plaintiff's claim that he falsified evidence.

The doctrine of qualified or good faith immunity shields police officers from being subject to personal liability for damages. The doctrine extends to official conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The "contours of a right" must be "sufficiently clear that every reasonable official would have understood that what he is doing

19

violates that right." <u>Ashcroft v. Al-Kidd</u>, 563. U.S. 731-741 (2011).  Furthermore, clearly established rights must be defined "with specificity," not "at a high level of generality."  <u>City of Escondido, Cal v. Emmons</u>, 139 S.Ct. 500, 503 (2019).  As discussed above, Second Circuit precedent at the time of Plaintiff's trial held that the right to a fair trial was violated when "a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors."  <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 130 (2d Cir 1997).  The false information in Ricciuti was a "known false confession almost certain to influence a jury's results." <u>Id</u>.

In the case at bar, Plaintiff's claim far exceeds the bounds of <u>Ricciuti</u> in seeking to hold Detective Nagle liable for statements attributed to him in a report prepared by a third party that was produced to defense counsel and not admitted into evidence.  Regardless of what the fire investigators believed was told to Detective Nagle by unidentified witnesses, the statements Detective Nagle actually took and forwarded to the District Attorney were fully consistent with the testimony adduced at trial and there is no basis to conclude that Detective Nagle knew them to be false.  Both the trial testimony and the witness statements indicate that no one observed Plaintiff actually setting the fire as he was alone in the bathroom immediately before the fire was discovered.  However, multiple witnesses did observe Plaintiff reach up into the ceiling subspace and remove burning paper towels, leading them to conclude that Plaintiff set the fire.   Because <u>Ricciuti</u> and its progeny do not clearly hold that Police Officers are have a legal duty to edit third parties' reports to make sure that they accurately characterize the evidence actually collected by the police, Detective Nagle is entitled to qualified immunity.

**IV.    The claims against Lieutenant Dearman and Officer Fischer should be dismissed because they were entitled to rely on Detective Nagle's investigation when arresting Plaintiff.**

Plaintiff's claims against Officer Fischer and Lieutenant Dearman should be dismissed. These Defendants' involvement in the case against Plaintiff was limited to arresting Plaintiff on the basis of the investigation conducted by Detective Nagle because Detective Nagle was unavailable.   Neither defendant investigated the fire at issue or testified against Plaintiff at his criminal trial.  It is well-settled that police officers are entitled to rely on information provided to them by other officers when making an arrest without subjecting themselves to personal liability under § 1983.   See Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) ("When making a probable cause determination, police officers are 'entitled to rely on the allegations of fellow police officers.'")(quoting Martinez v. Simonetti, 202 F.3d 625, 634 [2d. Cir 2000]).   Accordingly, because Lieutenant Dearman and Officer Fischer were entitled to rely on the information performed by Detective Nagle in determining that Plaintiff should be arrested, the claims against them should be dismissed.

**V.    Claims regarding purported deficiencies in the police investigation are not actionable under § 42 U.S.C. § 1983.**

Plaintiff claims that Detective Nagle should be held personally liable for Plaintiff's conviction because he "failed to secure the scene of the fire" (other than photographing the area where the fire occurred) between his initial visit to the scene and the fire investigation the following day.  In a similar vein, Plaintiff's claim that Nagle should have somehow "investigated" the vent on top of the men's room door through which the eyewitnesses observed either flames or a glow emanating from the ceiling sub-space.  Finally, Plaintiff claims that Detective Nagle was obligated

21

to determine whether electrical fires occurred at Smalley's before May 10, 2007, prior to making a probable cause determination.   However, any claim based on the police investigation fails because it is well-settled that criminal defendants have no constitutional right to a have the police investigate a crime in a specific way. See Antonetti v. City of New York, 422 F.Supp.3d 66, 671 (E.D.N.Y. 2017) ("A police officer's failure to pursue a particular investigative path is not a constitutional violation."); Johnson v. Ruiz, No. 11 CV 542, 2012 WL 90159, at *4 (D. Conn. Jan. 10, 2012) (holding that plaintiff had no constitutionally protected right to a proper investigation of his claims);  Stokes v. City of New York, No. 05-CV-0007, 2007 WL 1300983, at *6 (E.D.N.Y. May 3, 2007) ("[I]t is well-settled that there is no independent claim for a police officer's purported failure to investigate.").  Moreover, these purported deficiencies in the police investigation were known to Plaintiff's criminal defense counsel and presented to the jury as reasons for acquittal during the criminal trial.  (Ex. F, Tr. Trans. 716:14-717:7; 925:22-926:12).  Accordingly, any claim that Detective Nagle somehow violated Plaintiff's criminal rights by conducting an inadequate investigation of the fire is without merit.

**VI.** **Plaintiff's Monell claims against the Town of Carmel should be dismissed because Chief Johnson of the Carmel Fire District is not a Town Policymaker as the Town and the District are distinct municipal entities.**

Plaintiff seeks to hold the Town liable for the actions of Daryl Johnson for complying with his statutory obligation to forward fire investigation reports to the state on the ground that he is a policymaker for the Town.  (Ex. L, Second Amended Complaint).  As discussed above, this is incorrect as the Carmel Fire District is not a municipal subdivision, but an independent Fire District established pursuant to Town Law § 170 that contracts with the Town to provide fire protection services.  (Ex. K, 2007 Fire District Contract).  Fire Districts are not governed by Town Boards, but by by publicly elected Commissioners, who have the power to appoint a fire chief.  Town Law

§ 176.  Fire Districts have the power to sue and be sued independently from the municipality in which they are located.  Town Law § 180.  Accordingly, because Chief Johnson was not even an employee of the Town of Carmel–much less a municipal policymaker–the Town cannot be held vicariously liable for his conduct.

Even assuming, *arguendo*, that there was some basis for holding the Town vicariously liable for Chief Johnson's conduct, there is no evidence raising a triable issue of fact that he somehow violated Plaintiff's constitutional rights.  As discussed at length in his concurrently-filed motion for summary judgment the evidence shows that he merely signed and forwarded the Putnam County Fire Investigation Team's report to the state as state law required him to do.  This report was not admitted into evidence at Plaintiff's underlying criminal trial and therefore did not lead to his conviction.  Chief Johnson did not testify in this trial and therefore he had no impact on the criminal proceedings whatsoever.  Because he did not violate Plaintiff's constitutional rights, the Town is not vicariously liable for his conduct.

## VII.  <u>Plaintiff's conspiracy claim against Detective Nagle should be dismissed.</u>

To state a claim for conspiracy under Section 1983, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 324–25 (2d Cir. 2002).  In the case at bar, there is no evidence that Detective Nagle had any pre-existing relationship with co-Defendant Anthony Porto, the owner of Smalley's, or that they reached any agreement regarding Plaintiff's criminal prosecution. Porto was a complaining witness and Detective Nagle was the police officer assigned to investigate his complaint.  <u>See Ginsberg v. Healey Car & Truck Leasing, Inc.</u>, 198 F.3d. 268,272 (2d. Cir 1999)(holding that furnishing information to a police officer does not constitute joint action under color of state law); <u>Vazquez. v. Combs</u>, 2004 WL 2404224 at *4 (S.D.N.Y. Oct. 22, 2004)  Moreover, as discussed above, there is no

evidence that Plaintiff's constitutional rights were violated by defendants in the first place.  As such,

Plaintiff's conspiracy claim against Detective Nagle should be dismissed.[7]


## CONCLUSION

Wherefore, in light of the foregoing, it is respectfully submitted that the moving

defendants are entitled to summary judgment pursuant to Fed. R. Civ. P. 56.


Dated: New York, New York
       February 8, 2022                    Respectfully Submitted,

                                          MORRIS DUFFY ALONSO & FALEY


           By:          /s/  Kenneth E. Pitcoff
                        KENNETH E. PITCOFF
                        MICHAEL A. CZOLACZ
                        CRISTINA A. SOLLER
                        *Attorneys for the Defendants the*
                        *Town of Carmel, Detective Michael Nagle, ,*
                        *Sergeant John Dearman, and PO Justin Fischer*
                        101 Greenwich Street, 22nd Floor
                        New York, New York 10006
                        Tel: (212) 766-1888
                        mczolacz@mdafny.com


CC: Via ECF

---

[7] Plaintiff's conspiracy claims against Officer Fischer and Lieutenant Dearman have already been dismissed.