UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ —— — — ‒ ‒X

WILLIAM HAUGHEY,                                                   :
                                                                  :
                                       Plaintiff,                 :
          -against-                                               :
                                                                  :
THE COUNTY OF PUTNAM; THE TOWN OF CARMEL;          :   18 CV 2861 (KMK)
INSPECTOR ROBERT GEOGHEGAN; ROBERT EFFEREN;        :
CHIEF DARYL JOHNSON; DOUGH CASEY; PO JUSTIN        :
FISCHER; DETECTIVE MICHAEL NAGLE; SERGEANT         :
ROBERT BEHAN; SERGEANT JOHN DEARMAN; JOSEPH        :
CHARBONNEAU; JOHN DOES 1-5; and ANTHONY F. PORTO,  :
SR., ANTHONY M. PORTO, JR., SMALLEY'S INN &        :
RESTAURANT aka SMALLEY'S INN,TNT CAFE INC.,        :
operating under the trade name : Smalley's Inn and/or Smalley's :
Inn Mainstreet Cafe,                                              :
                                                                  :
                                       Defendants.                :
                                                                  :
‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ —— — ‒ ‒ ‒ ‒ ‒ ‒ ‒X

---

## PLAINTIFF'S MEMORANDUM OF LAW OPPOSING
## THE COUNTY OF PUTNAM DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

---

RITA DAVE, ESQ.                          OSCAR MICHELEN. ESQ.
26 Court Street                          Cuomo, LLC
Suite 1212                               200 Old Country Road
Brooklyn, New York 11242                 Suite 2 South
Telephone: (516) 782-1614                Mineola, New York 11501
Email: ritadaveesq@gmail.com             Telephone: (516) 741-3222
                                         Fax: (516) 741-3223
                                         Email:omichelen@cuomollc.com

*Attorneys for Plaintiff Estate of William Haughey*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ……………………………………………………………….  1

STATEMENT OF FACTS …………………………………………………….  2

ARGUMENT …………………………………………………………………  2

POINT I

A REASONABLE JURY COULD FIND PUTNAM, THROUGH ITS FIRE
INVESTIGATORS, VIOLATED HAUGHEY'S RIGHT TO DUE PROCESS AND A
FAIR TRIAL BY MANUFACTURING EVIDENCE AND SUPPRESSING *BRADY*
MATERIAL …………………………………………………………..  2

    A.    Standard For Deciding A Summary Judgment Motion ……………………  2

    B.    Haughey's Evidence Manufacturing Claim …………………………..  3

        1.    Elements Of An Evidence Manufacturing Claim …………..……..  3

        2.    A Reasonable Jury Could Find Geoghegan and Efferen
            Fabricated Evidence ………………………………………….  4

        3.    Putnam Caused Haughey To Suffer Damages ……………………  9

        4.    Geoghegan Is Not Entitled To Witness Immunity …………………  11

        5.    Putnam's Meritless Arguments And Expert Evidence
            Do Not Merit Summary Judgment …………………………………  12

    C.    A Reasonable Jury Could Find Putnam Suppressed *Brady* Material ………  15

        1.    Essential Elements Of A *Brady* Claim …………………………..  15

        2.    Putnam Violated, Or Caused The  Violation, Of Haughey's
            *Brady* Rights …………………………………………………  16

POINT II

A REASONABLE JURY COULD FIND PUTNAM CAUSE HAUGHEY'S
MALICIOUS PROSECUTION ……………………………………………….  18

POINT III

HAUGHEY'S EVIDENCE OF PUTNAM'S LIABILITY UNDER *MONELL*
IS VIRTUALLY CONCLUSIVE  …………………………………………..

21

POINT IV

HAUGHEY STATES A VALID CONSPIRACY CLAIM …………………………

23

CONCLUSION ……………………………………………………………………

25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Pages**

*Anilao v. Spota*, 3
      40 F.Supp.3d 224 (E.D.N.Y. 2018) …………….……………………………………    20

*Ashley v. City of New York*,
      992 F.3d 128 (2d Cir. 2021) …………….……………………………..……    3, 5

*Beech Aircraft Corp. v. Rainey*,
      488 U.S. 153 (1988) …………….……………………………………………….    7

*Bellamy v. City of New York*,
      914 F.3d 727 (2d Cir. 2019) ……………………………..…………………    16, 17

*Bermudez v. City of New York*,
      790 F.3d 368 (2d Cir. 2015) ………………………………………………..……    10

*Boyd v. City of New York*,
      336 F.3d 72 (2d Cir. 2003) ………………………………………………..……    18, 19

*Bridgeway Corp. v. Citibank*,
      201 F.3d 134 (2d Cir. 2000) ………………………………………..………………    6

*Buari v. City of New York*,
      530 F.Supp.3d 356 (S.D.N.Y. 2021) (Vyskocil, J.) …………………………………    20

*Capital Bridge Co., Ltd. v. IVL Technologies Ltd.*,
      2006 WL 2585529 (S.D.N.Y. 2006) (Karas, J.) …………………………..…………    5

*Ciambriello v. County of Nassau*,
      292 F.3d 307 (2d Cir. 2002) …………………………………..…………………    23

*Coggins v. Buonora*,
      776 F.3d 108 (2d Cir. 2015) …………………………………………..……    11

*Complaint of Nautilus Motor Tanker Co., Ltd.*,
      85 F.3d 105 (3d Cir. 1996) …………………………………………………..………    7

*Costello v. Milano*,
　　20 F. Supp.3d 406 (S.D.N.Y. 2014) (Seibel, J.) ……………………………..… 19, 20

*Davis v. City of New York*,
　　296 F.R.D. 127 (E.D.N.Y. 2013) ……………………………………………… 21

*Deskovic v. City of Peekskill*,
　　894 F.Supp.2d 443 (S.D.N.Y. 2012) (Karas, J.) ……………………………..…… 19, 25

*Diduck v. Kaszycki & Sons Contractors*, Inc.,
　　774 F.Supp. 802 (S.D.N.Y. 1991) (Stewart, J.) ……………………………………..… 23

*Garnett v. Undercover Officer C0039*,
　　838 F.3d 265 (2d Cir. 2016) ………………………………………..……….. 4

*Gomez v. City of New York*,
　　2017 WL 1034690 (E.D.N.Y. 2017) (Garaufis, J.) ………………………………..… 4

*Haughey v. County of Putnam*,
　　2020 WL 1503513 (S.D.N.Y. 2020) (Karas, J.) ………………… 8, 10, 11, 16, 21, 23, 24

*Horn v. Stephenson*, 11 F.4th 163 (2d Cir. 2021) ………………………………..…… 16

*Hutchins v. Solomon*,
　　2018 WL 4757970 (S.D.N.Y., 2018) (Karas, J.) …………………………..……….. 11

*In re Dana Corp.*,
　　574 F.3d 129 (2d Cir. 2009) ………………………………………………….. 2, 3

*In re September 11 Litigation*,
　　621 F.Supp.2d 131 (S.D.N.Y. 2009) (Hellerstein, J.) …………………………….… 7

*Jackson v. City of New York*,
　　939 F.Supp.2d 235 (E.D.N.Y. 2013) (Kuntz, II, J.) …………………………..… 20

*Jenkins v. City of New York*,
　　2013 WL 870258 (S.D.N.Y. Mar. 6, 2013) (Nathan, J.) ……………………………… 19

*Kee v. City of New York*,
　　12 F.4th 150 (2d Cir. 2021) …………………………………………..…… 2, 12

ii

*Knight v. New York State Department of Corrections*,
　　2022 WL 1004186 (S.D.N.Y. 2022) (Karas, J.) ……………………..……………  15

*Kyles v. Whitley*,
　　514 U.S. 419 (1995) ……………………………………………………………  15, 17

*Lanning v. City of Glens Falls*,
　　908 F.3d 19 (2d Cir. 2018) ……………………………………………………...  18

*Lathrop v. Onondaga County*,
　　220 F.Supp.2d 129 (N.D.N.Y 2002) (Scullin, J.) …………………..…………………..  23

*Manganiello v. City of New York*,
　　612 F.3d 149 (2d Cir. 2010) ……………………………………..……………  9, 21

*Moroughan v. County of Suffolk*,
　　514 F.Supp.3d 479 (E.D.N.Y.  2021) (Bianco, J.) …………………..……………  4

*Morse v. Fusto*,
　　804 F.3d 538 (2d Cir. 2015) ………………………………………………………  3

*Miner v. City of Glen Falls*,
　　999 F.2d 655 (2d Cir. 1993) ……………………………………………..……………  3

*Panetta v. Cassel*,
　　2020 WL 2306473 (S.D.N.Y. 2020) ……………………………………………  11

*Pangburn v. Culbertson,*
　　200 F.3d 65 (2d Cir.1999) …………………………………………..……  23

*Poventud v. City of New York*,
　　750 F.3d 121 (2d Cir. 2014) ……………………………………………..……  16

*Realtime Data, LLC v. Stanley*,
　　897 F. Supp.2d 146 (S.D.N.Y. 2012) (Forrest, J.) ………………………………..  15

*Rehberg v. Paulk*,
　　566 U.S. 356 (2012) …………………………………………………………  11

*Scotto v. Almenas,*
　　143 F.3d 105 (2d Cir. 1998) ……………………………………………..………..  12

*Smalls v. Collins,*
    10 F.4th 117 (2d Cir. 2021) ……………………………………..… 3, 4, 13

*Strickler v. Greene,*
    527 U.S. 263 (1999) ………………………………………..… 4, 15

*Su v. Filion,*
    335 F.3d 119 (2d Cir. 2003) …………………………………..… 18

*Stansbury v. Wertman,*
    721 F.3d 84 (2d Cir. 2013) …………………………………… 18

*Swartz v. Insogna,*
    704 F.3d 105 (2d Cir. 2013) …………………………………… 4

*Taylor–Williams v. Rembert,*
    712 Fed.Appx. 960 (11th Cir. 2017) ……………………………….. 12

*Thompson v. Clark,*
    142 S.Ct. 1332 (2022) …………………………………………… 18

*United States v. Bagley,*
    473 U.S. 667 (1985) …………………………………..………… 17

*United States v. Ulbricht,*
    858 F.3d 71 (2d Cir. 2017) …………………………..…………….. 16

*Ying Li v. City of New York,*
    246 F. Supp.3d 578 (E.D.N.Y. 2017) ……………………………… 20

*Zahrey v. Coffey,*
    221 F.3d 342 (2d Cir. 2000) ……………………………………… 9, 10

**Statutes**                                           **Pages**

42 U.S.C. § 1983 ……………………………………………… *Passim*

Fed.R.Evid. 801 (d)(2)(A) ..……………………………………… 6, 7

Fed.R.Evid. 801 (d)(2)(B) ………………………………………… 6, 7

Fed.R.Evid. 801 (d)(2)(C) …………………………………………………………… 6, 7

Fed.R.Evid. 801 (d)(2)(D) …………………………………………………………… 6, 7

Fed.R.Civ.P. 12 (b)(6) ……………………………………………………..…… 8

Fed.R.Civ.P. 56 (a) ……………………………………………………..…… 2

## **Secondary Sources**

4 Leonard B. Sand, *et al.,* Modern Federal Jury Instructions: Civil § 87.03
(Matthew Bender 1995) …………………………………………………...………… 3

6 Am.Jur.2d *Conspiracy* § 68 (1979) ……………………………………………. 23

**<u>INTRODUCTION</u>**

William Haughey ("Haughey") spent nine horrific years in prison for a so-called "arson" that never occurred.  The Putnam County District Attorney, in consenting to vacatur of Haughey's conviction, declared he was "actually innocent" and had been sent to prison "for helping to put out a fire - not start one."   After enduring this unspeakable injustice, Haughey suffered one that was arguably worse: five years after being exonerated, before a jury could learn what the defendants did to him, he died of a massive heart attack.[1]

Now, the very defendants who framed Haughey and destroyed his life  —Fire Investigators Robert Geoghegan, Robert Efferen, and the County of Putnam (collectively "Putnam")— attempt to escape all liability and preclude a jury from learning what they did to him.  Putnam, ignoring the mountain of evidence against them that must be viewed in Haughey's favor and assumed as true, cherry-picks facts and draws inferences in their favor to argue they did not fabricate evidence, suppress *Brady* material, or maliciously prosecuted Haughey.  The investigators also baselessly claim they are entitled to qualified immunity, and that Haughey failed to raise a material issue concerning their civil conspiracy with a Town Detective and Carmel Fire Chief.  As we demonstrate below, Putnam's arguments are meritless and their motion for summary judgment must be denied.  Haughey's estate should have its day and the public should see the infuriating lawlessness that led this innocent man to lose his life.

---

[1] On February 9, 2022, the Court substituted Richard J. Haughey, Haughey's surviving brother, as executor of Haughey's estate (Doc # 166).

## STATEMENT OF FACTS

The Court is respectfully referred to Plaintiff's Response To Putnam's Rule 56.1

Statement and Statement of Additional Facts, as well as the Declaration of Rita Dave, Esq., both

dated May 9, 2022, for the factual predicate of this Memorandum.

## ARGUMENT

## POINT I

**A REASONABLE JURY COULD FIND PUTNAM,
THROUGH ITS FIRE INVESTIGATORS, VIOLATED
HAUGHEY'S RIGHT TO DUE PROCESS AND A FAIR
TRIAL BY MANUFACTURING EVIDENCE AND
SUPPRESSING *BRADY* MATERIAL**

### A.    Standard For Deciding A Summary Judgment Motion

Summary judgment is proper only "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56

(a).  Summary judgment is a limited tool: "[t]he function of the district court in considering the

motion for summary judgment is not to resolve disputed questions of fact but only to determine

whether, as to any material issue, a genuine factual dispute exists." *In re Dana Corp.*, 574 F.3d

129, 151 (2d Cir.2009).

The evidence of the nonmovant is to be believed, and "all justifiable inferences are to be

drawn in his favor." *Id.*  In addition, "the court in considering such a motion must disregard all

evidence favorable to the moving party that the jury is not required to believe."  *Kee v. City of

New York*, 12 F.4th 150, 167 (2d Cir. 2021).  "Summary judgment is inappropriate when the

admissible materials produced in opposition to the summary judgment motion make it arguable

that the claim has merit.  Thus, Rule 56 authorizes summary judgment only where the moving

2

party is entitled to judgment as a matter of law on the basis that no genuine issue remains for trial because it is quite clear what the truth is."  *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009)

**B.    Haughey's Evidence Manufacturing Claim**

    **1.    Elements Of An  Evidence Manufacturing Claim**

Section § 1983 subjects to liability "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution."  42 U.S.C. § 1983.  The elements of such a claim are: (1) a person acting under color of state law; (2) committed (or caused the commission of) a constitutional violation; (3) which proximately caused; (4) damages.  *See* 4 Leonard B. Sand, *et al.,* Modern Federal Jury Instructions: Civil§ 87.03, at 87-151 (Matthew Bender 1995); *Miner v. City of Glen Falls*, 999 F.2d 655, 660 (2d Cir. 1993).

To bring a fair trial claim based on fabrication of evidence, a plaintiff must demonstrate "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."  *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021).

"Information may be 'false' if material omissions render an otherwise true statement false," and the Second Circuit does not distinguish "deliberate omissions of material facts ... from affirmative misstatements," or hold that "omissions alone cannot support a successful section 1983 action for using fabricated evidence to deprive a plaintiff of his constitutional rights[.]"  *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015).

Critically, the fabrication of evidence tort is complete the moment a plaintiff suffers some loss of liberty as a result of  false information being forwarded to prosecutors.  *See e.g.Ashley v.*

*City of New York*, 992 F.3d 128, 132 (2d Cir. 2021) ("[A]" claim for fabricated evidence does not require that a plaintiff have been subjected to a trial; it is enough that the fabrication results in a deprivation of the plaintiff's liberty") (citation omitted); *Gomez v. City of New York*, 2017 WL 1034690, at *9  (E.D.N.Y. 2017) (Garaufis, J.) ("[T]he constitutional violation occurs when the false information is transmitted to prosecutors.")[2]

Consequently, the false evidence need not have been used at trial.  *Moroughan v. County of Suffolk*, 514 F.Supp.3d 479, 537 (E.D.N.Y.  2021) (Bianco, J.) (denying summary judgment on fabricated evidence claim where prosecutor considered the fabricated evidence but criminal charges were dismissed before trial).

Finally, the existence of probable cause is not a defense to a manufacturing of evidence claim.  *See e.g. Strickler v. Greene*, 10 F.4th at 132 ("[W]e have long held 'that Section 1983 liability attaches for knowingly falsifying evidence even where there simultaneously exists a lawful basis for [the] deprivation of liberty' that the plaintiff suffered."); *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 268 (2d Cir. 2016) (same).

## 2. <u>A Reasonable Jury Could Find Geoghegan and Efferen Fabricated Evidence</u>

Haughey's First Cause of Action alleges Geoghegan and his codefendants deceived the District Attorney's Office into bringing arson charges against him by submitting false reports and making a host of misrepresentations leading the District Attorney, including (1) all possible electrical causes for the fire had been eliminated and thus the fire was incendiary, (2) the failure to secure the fire scene for 13-hours, and leaving it under Porto's control, did not have any

---

[2]The Second Circuit has consistently held, for example, that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required "suffers a Fourth Amendment deprivation of liberty."  *Swartz v. Insogna,* 704 F.3d 105, 112 (2d Cir. 2013) (citation omitted).

impact on the ability to determine the fire was incendiary, and (3) several eyewitnesses observed Haughey start the fire and then return to sit down at the bar (the "Eyewitness Report").  *See* Haughey's Exh. W at ¶¶ 48-49, 90-95;[3] Haughey's Rule 56.1 at ¶¶108-110, 308-310.

Putnam concedes they made these reports and representations to the District Attorney, but contend they were all truthful.  However, "whether the disputed statement[s] … w[ere] a fabrication [i]s a jury question[,]" *Ashley v. City of New York*, 992 F.3d 128, 143 (2d Cir. 2021), and accepting Haughey's evidence as true, a reasonable jury could easily find the reports and representations were knowingly false or misleading, and that Haughey suffered a resultant loss of liberty.  *Capital Bridge Co., Ltd. v. IVL Technologies Ltd., 2006 WL 2585529*, at *2 (S.D.N.Y. 2006) (Karas, J.) ("[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.")

First, our evidence shows neither ADA Noah or Folchetti were arson experts, and they totally relied on the Fire Team's expertise to determine whether the fire was an arson. Geoghegan, on behalf of himself and his codefendants, repeatedly represented to the District Attorney that they inspected Smalley's entire electrical system and excluded it as a potential source of the fire.  But there is powerful evidence a jury could credit to find those reports and representations were false.

---

[3]Haughey's Response to Putnam's Fed.R.Civ.P. 56.1 Statement, which includes Haughey's sequentially numbered Statement of Additional Facts, will be referred to as "Haughey's 56.1" followed by the paragraph number, or, where the context is clear, just to the paragraph number.  Exhibits attached to Haughey's 56.l will be referred to as "Haughey Exh." followed by the letter designation.  Putnam's Rule 56.1 Statement will be referred to as "Putnam's 56.1".

A notation buried in one of Geoghegan and Efferen's own reports shows that, in truth, they failed to inspect the Inn's electrical panel: "Tripped/Blown: Panel *not* inspected" (Haughey Exh. Q) (emphasis added).[4]

Haughey's fire expert will testify that it was impossible for Geoghegan and Efferen to conclude the fire was incendiary because, as they well knew, their investigation:

(1)     Failed to inspect the Inn's entire electrical system and thus eliminate it as a potential cause of the fire,

(2)     Never identified the smoke eater, determined whether it was energized, or whether it serviced the vent above the bathroom door from which witnesses had observed flames emanating,

(2)     Did not examine the floor above the fire, which sustained the bulk of the damage, and which was consistent with the smoke eater causing the fire,

(3)     Never addressed the fact that papers were removed from the ceiling when the fire was extinguished indicated that the fire had ignited the paper rather the paper igniting the fire,

(4)     Never accounted for the charred wood noted by witnesses, charring that could not have occurred in the short period between PLAINTIFF entering the bathroom and a customer smelling smoke,

(5)      Left unresolved whether (i) there was any other wiring or electrical device or a fire origin on the second floor, (ii) there was an extension of burn patterns on the second floor, (iii) the smoke eater was hardwired or plugged in, (iv) flames could be observed in the vent from the bar area, (v) what device serviced that vent, (vi) the vent was damaged, (vii) the fire could have started in any other area of the ceiling, and (viii) inspection of the electrical system could have revealed information that would aid in identifying another possible ignition scenario, Haughey's 56.1 at ¶ 115.

---

[4]This report, as well as Geoghegan and Efferen's other reports, is admissible against Putnam under Fed.R.Evid. 803 (8)(C) as a public record they prepared, *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000) ("[A] public report is presumptively admissible in a civil action if (1) it is "based upon an investigation made pursuant to legal authority" and (2) contains "factual findings"); as a party statement in their individual or representative capacity under Fed.R.Evid. 801 (d)(2)(A); as a statement they adopted and believed to be true under Fed.R.Evid. 801 (d)(2)(B); as a statement authorized to be made under Fed.R.Evid. 801 (d)(2)(c); and as a statement of an agent of Efferen and Putnam County under Fed.R.Evid. 801 (d)(2)(D).

Haughey's expert's testimony regarding the omissions in the fire investigation will be corroborated by Geoghegan and Efferen's own records. For example, despite the presence of the smoke eater in the bathroom ceiling at the time the fire took place, Geoghegan did not see it here when inspected ceiling 13-hours later, and the smoke eater *is not depicted or mentioned in a single Fire Team report*. Likewise, despite the burn marks on the second floor —obviously relevant and fundamental to a fire investigation— *not a single Fire Team report even documents their existence. See* Haughey's Rule 56.1 at ¶ 115 (c) - (e). Despite several patrons in the bar area reporting flames emanating from a vent above the bathroom door —which could have serviced the smoke eater— not a single entry in any Fire Team report documents the distance from the vent to the charring, much less those actual measurements.

Our evidence also consists of Fed.R.Evid. 801 (d)(2)(A), (B), (C) and (D) admissions from Geoghegan during Haughey's criminal trial that "we" did not examine "the entire electrical system," and that he did not see, much less examine, the smoke eater. Indeed, our evidence shows the Putnam District Attorney consented to vacate Haughey's conviction after that office concluded, by virtue of their own independent fire expert, that based on Geoghegan and Efferen's "investigation" it was impossible to determine the fire was incendiary.[5]

Similarly, our fire expert will testify that the failure to secure the fire scene for 13-hours, leaving it under Porto's control, and failing to account for the missing smoke eater at the time of

---

[5]Haughey Exhs. K and L. The report was jointly authorized by the Putnam District Attorney and New York Attorney General's Fire Expert Report during Haughey's federal habeas corpus proceeding, *Haughey v. Gonyea*, 13 CV 8768 (VB)(LMS). It is admissible by virtue of Joseph Toscano's declaration, Haughey Rule 56.1, Exh. K, and independently under Fed.R.Evid. 803 (8)(C). *See e.g. In re September 11 Litigation*, 621 F.Supp.2d 131, 153 (S.D.N.Y. 2009) (Hellerstein, J.) (factual findings of a government agency's duly-authorized investigation are admissible); *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170 (1988) (opinions and conclusions of the agency on matters of fact that flow from the investigative findings may be admissible); *Complaint of Nautilus Motor Tanker Co., Ltd.,* 85 F.3d 105, 112–13 (3rd Cir. 1996) (admitting conclusions and recommendations in a Coast Guard Report, under 803(8)(C)).

the investigation corrupted the investigators' ability to legitimately determine whether the fire was incendiary. Haughey Rule 56.1, Exhs. I & J. Indeed, Geoghegan testified that never, *in his entire career*, had been called to fire scene like this one where the scene had not been secured or unattended to for more than half a day, Haughey 56.1 ¶ 297, and that there was universal concern amongst the fire team members of failure to secure the scene and leaving it under Defendant Porto's control for 13-hours. Yet despite these concerns, Geoghegan never informed the prosecutors this could have seriously impacted the integrity of the investigation, as Haughey's fire expert will testify. Haughey Exh. J.

Our evidence will also show Geoghegan and Efferen, acting with their codefendants, fabricated the Eyewitness Report. As previously stated, the report falsely indicates there were at least two eyewitness who observed Haughey "place paper towels in between the drop ceiling and the ceiling and lit the paper" and then go sit back down at the bar. Haughey Rule 56.1 at ¶¶ 310-311, Exh. N. The report claims that Detective Nagle provided this information. But Nagle admitted at his deposition that he had made no such statements, "no one saw that," and that he did not know where that information came from. *Id.*[6]

Finally, a jury could find that Putnam's actions were intentional. As Your Honor noted in denying the Fed.R.Civ.P. 12 (b)(6) motions to dismiss this case, such actions raise a plausible inference they were knowingly false, rendering the conduct illegal, *Haughey v. County of Putnam,*

[6]Putnam attempts to minimize the evidentiary value of Geoghegan's report by pointing out that Detective Nagle could not remember exactly what he told Geoghegan at the scene. In other words, Putnam argues they did not fabricate evidence based on the *possibility* that Detective Nagle actually conveyed the information about the eyewitnesses to Geoghegan. Putnam Memo. of Law at pp. 5, 8-9. But on a summary judgment motion all justifiable inferences must be drawn against Putnam, in Haughey's favor, and a justifiable inference is the one we posit here: that Putnam manufactured the Eyewitness Report to prop up Detective Nagle's narrative, and Detective Nagle never actually conveyed that information to them.

2020 WL 1503513, at *6 (S.D.N.Y. 2020) (Karas, J.), and fabrication of evidence such as the

Eyewitness Report "is objectively unreasonable as a matter of law." *Id.* at *8 (S.D.N.Y. 2020)

(Karas, J.). Indeed, Geoghegan —the *de facto* spokesman for the other wrongdoers— was a

career police officer and a jury could it find perfectly plausible that he conducted a sham

investigation to confirm his fellow officer Detective Nagle's false narrative that Haughey started

the fire. Based on the totality of this evidence, a jury could easily conclude Putnam manufactured

false evidence and deceived the District Attorney into charging Haughey. *See e.g. Manganiello v.

City of New York*, 612 F.3d 149, 159 (2d Cir. 2010) (affirming a fabrication of evidence judgment

against a police officer who "misrepresented the evidence to the prosecutors," while knowing he

was doing so).

### 3. <u>Putnam Caused Haughey To Suffer Damages</u>

As previously stated, the tort of evidence fabrication was complete the moment Haughey

was obligated to appear in court in connection with the arson charges. *See* pp. 3-4. After

Putnam forwarded their fabricated evidence to the District Attorney, the District Attorney relied

on that evidence and charged Haughey with arson, obligating him to maintain bond and appear in

court. Haughey 56.1 at ¶¶ 329-330 (citing ADA Noah's deposition testimony that he relied on

Putnam, their reports, and the Eyewitness Report in deciding to charge Haughey). Putnam is, of

course, liable for all foreseeable consequences from these actions, including Haughey's

subsequent conviction and nearly nine-year incarceration. *See Zahrey v. Coffey,* 221 F.3d 342,

351 (2d Cir. 2000) (§ 1983 defendants are liable for the consequences of "reasonably foreseeable

intervening forces" and an "officer who deliberately supplied misleading information that

influenced" later prosecutorial and judicial decisions is liable for those results); *Haughey v. County of Putnam*, 2020 WL 1503513, at *12 (same).

Indeed, after Haughey was arrested, Geoghegan *continued to mislead the District Attorney* regarding the validity of the fire investigation.[7]  During cross-examination at Haughey's trial, Haughey's defense attorney managed to elicit some of the flaws of the investigation.  However, the District Attorney's office, by then convinced of the righteousness of their case against Haughey, continued the case under the belief that Putnam's "incendiary" finding was correct.  Moreover, on redirect, Geoghegan reassured the District Attorney that the incendiary finding and the investigation was valid, notwithstanding defense counsel's attacks.  Geoghegan swore "[i]f there were some sort of electrical" cause for the fire, Geoghegan testified, "we would have looked for some item such as wiring, some sort of electrical device, anything in the area that would indicate that it was something electrical" but he found none."  The District Attorney, accepting Geoghegan's claims, went on to cite his testimony during summation, arguing the fire "was not electrical."

After Haughey was convicted, the District Attorney, still believing in the validity of Putnam's investigation, defeated Haughey's appeal by arguing to the Appellate Division that

---

[7]Putnam, while contending they made prosecutors aware of the 13-hour gap between the fire and their investigation, Putnam Memo. of Law at p. 6, does *not* argue that broke the chain of causation with respect to Haughey's fabrication of the evidence claim.  Nor could they legitimately do so.  The prosecutors were not arson experts and they relied squarely on Geoghegan's expertise.  Geoghegan's repeated assurances to the prosecutors that the fire investigation was valid despite the 13-hour gap misled the prosecutors into believing the flaw was not dispositive and thus did not break the chain of causation.  *See e.g. Bermudez v. City of New York*, 790 F.3d 368, 374 (2d Cir. 2015) ("Defendants can be held liable for violating [plaintiff's] due process rights if they misled … the intervening decision-maker such that the decision-maker's conduct was tainted") (citations omitted); Haughey Rule 56.1 at ¶ 339 (prosecutor dismissing flaws in investigation).  And even if the prosecutors were not misled, "it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an "independent" decision that results in a deprivation of liberty."  *Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) (emphasis added).

based on that fabricated evidence Haughey was not entitled to reversal. The District Attorney maintained this position and fought every effort Haughey made to challenge his conviction based squarely on the supposed validity of the investigation, resulting in Haughey's nearly nine-year incarceration. Not only was Haughey's unjust incarceration "reasonably foreseeable" to Putnam, but it "was actually intentionally triggered[.]" *Haughey v. County of Putnam*, 2020 WL 1503513, at *9. Thus, a jury could easily find that Putnam's fabrication of evidence caused Haughey's wrongful conviction and nearly nine-year imprisonment.

### 4.  Geoghegan Is Not Entitled To Witness Immunity

Putnam contends Geoghegan is shielded from liability by witness immunity because he testified at Haughey's trial concerning the cause and origin of the fire. Putnam Memo. of Law at p. 2, 5 citing *Panetta v. Cassel*, 2020 WL 2306473, at *4 (S.D.N.Y. 2020). They then cite *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) for the proposition that this rule "may not circumvented by claiming that a grand jury witness [or criminal trial witness] conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution."

But Haughey's claims against Geoghegan are based on his *pretrial* fabrication of evidence, suppression of *Brady* material, and initiation of a baseless prosecution against him. Geoghegan's subsequent trial testimony does not retroactively cloak his pretrial misconduct with immunity. Indeed, as Your Honor has held, this is "exactly the type of conduct, namely the fabrication of false statements and evidence, that courts in the Second Circuit have refused to immunize." *Hutchins v. Solomon*, 2018 WL 4757970, at *12 (S.D.N.Y., 2018) (Karas, J.) (citing cases); *accord Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015) (affirming denial of

11

absolute immunity to a police officer who testified before the grand jury, but who also allegedly falsified police reports, made false statements to the district attorney, and fabricated evidence, finding that the plaintiff's § 1983 claims were based on alleged misconduct that was independently actionable "prior to and independent of [the officer's] perjurious grand jury appearance").[8]

### 5.    Putnam's Meritless Arguments And Expert Evidence Do Not Merit Summary Judgment

Putnam relies on two primary arguments to persuade the court that a jury should not hear Haughey's case.

First, Putnam claims that defendant Efferen actually inspected the Inn's electrical system —based on Efferen's affidavit and deposition testimony 14 years after the fact.  Putnam Memo. at 6— and thus the notion that the fire investigation was corrupted is simply wrong.  But a jury is free to disbelieve Efferen's eleventh hour claims and they thus cannot justify summary judgment. *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) ("[T]he court in considering such a motion must disregard all evidence favorable to the moving party that the jury is not required to believe.")  This is particularly so given Efferen's claim in incredible in light of the mountain of evidence of the omissions in the fire investigation.[9]

---

[8]Similarly, the "collective knowledge" and "fellow officer" doctrines are inapplicable in this action as Geoghegan is not a police officer and did not arrest Haughey.  Even if those doctrine were applicable, they would not save Geoghegan as he fabricated evidence and "directly communicated with source" of the information: his coconspirators.  *See Scotto v. Almenas,* 143 F.3d 105, 113 (2d Cir. 1998) ("[I]t would be objectively unreasonable for [an officer] to believe he had probable cause to arrest [the plaintiff] if [the officer] himself fabricated the grounds for arrest."); *Taylor–Williams v. Rembert*, 712 Fed.Appx. 960, 962 (11th Cir. 2017).

[9]Indeed, for a jury to accept Efferen's self-serving claim that he inspected the entire electrical system, the jury would need to disregard all of our evidence, believe Geoghegan lied at Haughey's criminal trial about not inspecting the electrical system, and that the independent fire expert both the New York Attorney General and Putnam District Attorney's office relied on to later vacate Haughey's conviction, was misguided.

Moreover, Efferen's improper participation in the investigation and his suspicious conduct during the litigation of this case provides the jury with an additional basis to reject his claim. The Putnam Bureau of Emergency Services protocols disqualified Efferen from investigating the Smalley's fire because he was a Carmel Fire fighter. Yet he not only took part in the investigation but served as its *Incident Coordinator*. And Efferen sat in on Geoghegan's deposition in this action and was caught taking notes, admitting he was preparing his answers for his own deposition. Haughey Rule 56.1 at ¶¶ 370-372.

Second, Putnam relies on a fire expert they found 14-years after the fact who was willing —for a financial benefit— to conclude the fire was incendiary, and to smear the conclusions reached by Haughey's *unpaid* fire expert and implicitly, the fire expert retained by the District Attorney and New York Attorney General's Offices. But Putnam's expert's conclusion —that the fire was intentionally set— does not address the conclusion reached by Haughey's and the Attorney General's fire experts: *that the investigation failed to eliminate all potential electrical causes of the fire and was thus incapable of determining whether the fire incendiary.* In fact, Putnam's expert *never once* addresses the deficiencies in the investigation or how an incendiary finding could be made without examining the electrical system and smoke eater.

This omission is dispositive. Even if the fire was incendiary, that would have not absolve Putnam of liability for lying to the District Attorney that the fire investigation was valid and they eliminated all potential electrical causes of the fire. "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee." *Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021).

Once the District Attorney brought charges against Haughey and he suffered a loss of liberty — being required to maintain bail and appear on the charges— the tort was complete, and Putnam is liable for any foreseeable harm resulting from that tort. Putnam's 2022 expert opinion does not retroactively justify the deception of the District Attorney in 2007, or justifying failing to correct that deception while the District Attorney prosecuted Haughey, convicted him, and fought his efforts for freedom for nearly nine years based squarely on the false investigation.

Additionally, Putnam's expert's conclusions are based on three logical fallacies:

1. **Putnam's expert erroneously presupposes the smoke eater he examined in 2022 was the same smoke eater present when the 2007 fire took place.** It is undisputed that there was a smoke eater in the bathroom ceiling when the fire occurred. However, Geoghegan testified that when he examined the bathroom 13 hours after the fire, he *did not see the smoke eater in the bathroom ceiling*. This is fully corroborated by the Fire Team's hand drawn diagrams, which do not reflect the presence of the smoke eater. Porto alone had access to the bathroom in the 13 hours before the Fire Team's inspection, By 2022, however, Porto produced a smoke eater for Putnam's expert to examine. It is thus an open question whether the smoke eater Putnam's expert examined in 2022 was the same one there in 2007, or if was, whether it was in the same condition.

2. **Putnam's expert makes the absurd claim that simply because "the" smoke eater worked when he plugged it in *2022,* Haughey's expert opinion that the smoke eater might have caused the fire in 2007 was wrong**. Obviously, the mere fact that "the" smoke eater worked in 2022 does not exclude the possibility that it malfunctioned and caused the fire in 2007. A malfunction need not have been catastrophic, and it is entirely possible, as explained by Haughey's fire expert, that the smoke eater malfunctioned, emanated sparks that ignited the nearby paper, and caused a fire that was extinguished before it permanently damaged the smoke eater.

3. **Putnam's expert erroneously presupposes the fire scene was intact.** Putnam's expert claims when he examined the scene in 2022 it was "virtually intact." But it was impossible to legitimately make that conclusion considering the open questions regarding the smoke eater, and whether the vent above the bathroom door —which Putnam's expert claims was never ignited — was the same vent present at the time of the 2007 fire (Putnam offers no evidence that it was). Putnam's expert also claims there was no evidence that the

14

fire originated from the second floor, yet fails to address the burn marks on the second floor. Haughey Rule 56.1 at ¶ 115 (f).[10]

Finally, even setting aside the above, Putnam's expert's opinion would at most create an issue of dueling experts incapable of resolution on a summary judgment motion. *See Knight v. New York State Department of Corrections*, 2022 WL 1004186, at *10 (S.D.N.Y., 2022) (Karas, J.), citing *Realtime Data, LLC v. Stanley*, 897 F. Supp.2d 146, 153 (S.D.N.Y. 2012) (Forrest, J.) ("[W]hen there are dueling experts, both of whom have put forward opinions in contradiction with each other, and when those opinions are important to resolution of a material factual dispute, summary judgment may not be appropriate"). Thus, Haughey's manufacturing of evidence claim must be resolved by a jury.

**C.    A Reasonable Jury Could Find Putnam Suppressed _Brady_ Material**

**1.    Essential Elements Of A _Brady_ Claim**

A *Brady* violation claim has three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice ensues when the evidence is "material," *id.* at 280-82, which is to say "whether in its absence [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). This "does not depend on factual innocence, but rather what would have been proven absent the violation ... [with] reference to the likely effect that the suppression of [the]

---

[10]Putnam's expert erroneously presupposes Haughey's expert never visited the scene when, in truth, he did. Haughey Rule 56.1 at ¶ 239. Putnam also attacks Haughey's expert for pointing out what a basic fire inspection entails "based upon years of experience with millions of fires and training[.]" Obviously, the "millions" was a reference to the collective body of knowledge of the scientific community, not his personal training and experience,

particular evidence had on the outcome of the trial." *Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019), citing *Poventud v. City of New York*, 750 F.3d 121, 134 (2d Cir. 2014) (*en banc* ) (internal quotation marks and emphasis omitted).  To show prejudice the claimant "must demonstrate a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Ulbricht*, 858 F.3d 71, 112 (2d Cir. 2017) (internal quotation marks omitted).

"When police officers withhold exculpatory or impeaching evidence from prosecutors, they may be held liable under § 1983 for violating the disclosure requirements of *Brady v. Maryland*, 373 U.S. 83 (1963)."  *Bellamy v. City of New York*, 914 F.3d at 751.  This principle also applies to others who act on behalf of the police.  *See e.g. Horn v. Stephenson*, 11 F.4th 163, 171 (2d Cir. 2021) ("[A police forensic examiner, whether an analyst or technician fulfilling any of the roles associated with forensic analysis, in 1999 reasonably would have understood that he or she was required to turn over exculpatory information to the prosecutor.")[11]

## 2.      Putnam Violated, Or Caused The  Violation, Of Haughey's *Brady* Rights

Haughey alleges Putnam violated his *Brady* rights by suppressing three categories of material from the District Attorney: (1) the impeaching information concerning their fire investigation, (2) the falsity of their fire investigation reports, and (3) the falsity of their representations and omissions to prosecutors.  Haughey Exh. W at ¶ 119.  Putnam, however,

---

[11]Putnam does <u>not</u> argue they did not have a *Brady* obligation, or that they could not be held liable for violating it.  As such, that matter is not before the court.  *Bellamy v. City of New York*, 914 F.3d at 755 ("The Defendants did not seek summary judgment on this claim ... and therefore it was error for the district court to have dismissed it without providing Bellamy notice and a reasonable time to respond") (citation and quotes omitted).  In any event, Geoghegan and Efferen acted on Nagle's behalf, *Horn v. Stephenson, supra.* and took part in the civil conspiracy to railroad Haughey, rendering them liable for the acts of their coconspirators.  *Haughey v. County of Putnam*, 2020 WL 1503513, at \*9 (S.D.N.Y. 2020) (Karas, J.) (citing cases).

argues only that no *Brady* violation occurred because the Fire Team made prosecutors aware of the 13-hour gap between the fire and the investigation.  Putnam Memo. at p. 6.  Thus, summary judgment would be inappropriate as to other grounds for Haughey's *Brady* claim.  *See Bellamy v. City of New York*, 914 F.3d at 755.

As to the 13-hour gap*,* our evidence raises triable issues of fact whether Putnam concealed from prosecutors, and thus Haughey, that the 13-hour gap fundamentally corrupted the resultant investigation and arson finding. *See e.g. Kyles v. Whitley,* 514 U.S. 419, 449 (1995) (information impeaching the integrity of a police investigation constitutes favorable evidence for *Brady* purposes).  That evidence is clearly material: the District Attorney acknowledged in consenting to have Haughey's conviction vacated, without the arson finding resulting from that corrupted investigation, there could be no case against Haughey.  *See* Haughey Rule 56.1 at ¶ 360.

Putnam, however, argues there was no *Brady* violation because they disclosed the 13-hour gap to prosecutors.  But Putnam ignores that they also *misled the prosecutors* that the gap had no impact on the investigation or arson declaration, which in turn caused prosecutors to conceal that fact from the defense and to essentially represent to the defense that the 13-hour gap was inconsequential.  This constituted "suppression" for *Brady* purposes. *See e.g. United States v. Bagley*, 473 U.S. 667, 682 (1985) ("an incomplete response to a specific request not only deprives the defense of certain evidence, but also has the effect of representing to the defense that the evidence does not exist. In reliance on this misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued. We agree that the prosecutor's failure to respond fully to a *Brady*

request may impair the adversary process in this manner[.]"); *Su v. Filion,* 335 F.3d 119, 128 (2d Cir. 2003) ("[I]t would be an unreasonable application of federal law, as determined by the Supreme Court, to fault the defendant for not proceeding in his cross-examination on the assumption that the prosecutor is a liar.")

The prosecutors in Haughey's case were not fire experts and simply did not understand that the investigation and arson declaration were invalid. By not disclosing that information to prosecutors and actively misleading them about it, Putnam suppressed the information and prevented the prosecutors from disclosing it to Haughey.

## POINT II

### A REASONABLE JURY COULD FIND PUTNAM CAUSED HAUGHEY'S MALICIOUS PROSECUTION

"To prevail on his § 1983 claims for malicious prosecution, [Haughey is] required to prove a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment. He also ha[s] to show that criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor." *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018), *abrogated in part by Thompson v. Clark*, 142 S.Ct. 1332 (2022).

Probable cause in the malicious prosecution context is "slightly higher than the standard for false arrest cases," *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013), requiring facts and circumstances supporting a reasonable belief that a prosecution against the defendant "could succeed[.]" *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003).

As we demonstrated in Point I, Putnam fabricated evidence, mislead prosecutors, and caused them to pursue unfounded charges against Haughey.  *See e.g. Costello v. Milano*, 20 F. Supp.3d 406, 415 (S.D.N.Y. 2014) (Seibel, J.) (a police officer "initiate[s] a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding  material information from a prosecutor" ) (collecting cases).

Putnam, however, argues Haughey's malicious prosecution claim fails for three reasons. Putnam Memo. of Law at p. 11.  First, they contend  Haughey's indictment "establishes the existence of probable cause and there is no intervening information that caused probable cause to dissipate between" Haughey's arrest and indictment.  *Id.*  But as Your Honor held in the Jefferey Deskovic case, "[w]here there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an indictment," and "a jury could reasonably find that the indictment was secured through bad faith or perjury," the presumption of probable cause created by the indictment may be overcome. *Deskovic v. City of Peekskill,* 894 F.Supp.2d 443, 457 (S.D.N.Y. 2012) (Karas, J.) (citing cases).[12]

As we have shown, Putnam created a host of false reports and mislead the prosecutor charged with deciding whether to seek Haughey's indictment.  Their coconspirator Nagle then testified before the grand jury that "[t]here would be no  other reason —there is no electrical wires up there— there would be no other reason  —unless someone  starting a fire—  that something would combust in that area," specifically referencing the sham fire investigation.

---

[12]"[O]nce a question of material fact is found as to probable cause, 'the element of malice also becomes an issue of material fact' and precludes dismissal on summary judgment." *Jenkins v. City of NY*, 2013 WL 870258, at *12 (S.D.N.Y. Mar. 6, 2013) (Nathan, J.) quoting *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("A lack of probable cause generally creates an inference of malice").

Similarly, the grand jury never learned of the mountain of evidence impeaching the fire investigation and the arson declaration.

Thus, any presumption of probable cause is rebutted or, at the very least, a question for the jury. *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 612 (E.D.N.Y. 2017) (deeming presumption of probable cause rebutted where plaintiff alleged police officers "failed to obtain or disclose evidence inconsistent with plaintiff's guilt, did not document or inform the district attorney's office of exculpatory evidence ... and fabricated oral statements of witnesses"); *Anilao v. Spota*, 340 F.Supp.3d 224, 263 (E.D.N.Y. 2018) (deeming the question of whether the presumption of probable cause applicable to grand jury indictments had been rebutted a fact-intensive question that in some cases may need to be resolved by a jury).[13]

Second, Putnam argues they did not initiate Haughey's prosecution because there is no evidence that they forwarded false information to prosecutors. *Id.* 12-13. But as we have shown, they did in fact lie and forward a host of false information to the District Attorney, which constitutes initiating a prosecution for malicious prosecution purposes. *See e.g. Costello v. Milano*, 20 F. Supp.3d at 415; *Buari v. City of New York*, 530 F.Supp.3d 356, 383 (S.D.N.Y. 2021) (Vyskocil, J.) (same).

Indeed, Putnam's repeated representations to the District Attorney after Haughey's arrest, and Geoghegan's testimony at Haughey's trial, "support a reasonable inference that the prosecution would not have continued but for Putnam's deception, and thus they are liable for

---

[13]Putnam inexplicably cites without explanation ADA Noah's belief, long after Haughey was arrested, that police had probable cause for the arrest. Putnam Memo. at pp. 11-12. But ADA Noah's belief might be relevant only to the extent it was formed *before* initiating charges against Haughey. *Jackson v. City of New York*, 939 F.Supp.2d 235, 251 (E.D.N.Y. 2013). There is no evidence as to when Noah evaluated the propriety of Nagle's arrest.

*continuing the* prosecution as well.  *See Davis v. City of New York*, 296 F.R.D. 127, 130

(E.D.N.Y. 2013) (Weinstein, J.) (allegations that officers testified falsely against plaintiff could

satisfy the continuation element); *Buari v. City of New York*, 530 F.Supp.3d at 385 (same).

Finally, Geoghegan and Efferen argue they are entitled to qualified immunity because

there was arguable probable cause to arrest Haughey, and it was not clearly established that their

actions constituted an initiation of his prosecution.  *Id.* at 14.  But as Your Honor recognized, the

conduct Haughey alleges here, and which the evidence raises a material question on,

"is objectively unreasonable as a matter of law."  *Haughey v. County of Putnam*, 2020 WL

1503513, at *8 (citing cases).  Qualified immunity simply does not apply to a defendant's

fabrication of evidence. *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010)

(same).

## POINT III

### HAUGHEY'S EVIDENCE OF PUTNAM'S LIABILITY
### UNDER *MONELL* IS VIRTUALLY CONCLUSIVE

Haughey's *Monell* theory is that Putnam County, through its Bureau of Emergency

Services, delegated to Geoghegan and Efferen final policymaking authority with respect to

assisting the Carmel Fire Chief with the determination of whether a fire was an arson.  Haughey

Rule 56.1, Exh. W at ¶ 148.  "In the Second Circuit, an official has final authority if his

decisions, at the time they are made, for practical or legal reasons constitute the municipality's

final decisions.  Accordingly, where a policymaker wholly delegates certain policy powers to a

subordinate, the subordinate may herself qualify as a policymaker, thus subjecting the

municipality to liability." *Haughey v. County. of Putnam*, 2020 WL 1503513, at *11 (citations and quoted omitted).

Our evidence shows this delegation is exactly what happened here. At the time of the March 2007 fire the Putnam County Legislature delegated final policymaking authority for fire investigations to the Commissioner of the Putnam County Bureau of Emergency Services. *See* Putnam Memo. of Law at p. 17 (conceding this point); Putnam County Code § 52-1 (providing Commissioner with the duty to respond to *all* man-made emergencies). Pursuant to that authority, the Commissioner promulgated Standard Operating Guidelines creating a Fire Team to "provide Fire Departments, and others, with a comprehensive and professional fire investigation," Haughey Rule 56.1, Exh. R, and provided Fire Team members "shall be responsible for providing Fire Departments with a proper fire investigation." *Id.* at 8.1.

Geoghegan and Efferen swore at their depositions that in carrying out their duties as part of the Fire Team, (1) their role was to assist Chief Johnson in making his ultimate determination of the nature of a fire,[14] (2) they were autonomous and their decisions on the assistance they provided to the Carmel Fire Chief went unreviewed, (3) no one at the scene reviewed their decisions or actions with respect to the assistance that they provided to the Chief Johnson, (4) the Putnam Bureau of Emergency Services would as matter of practice defer to Geoghegan and Efferen's on-the-scene analysis of the fire, (5) their decisions had *never* been overruled and they did not know of single case where that happened, and (6) the fire investigation team did not report to the Commissioner on a day to day basis. Haughey's Rule 56.1 at ¶¶ 321-324.

---

[14]Both Geoghegan and Efferen agreed with Commissioner McMahon's description of their role and function during the course of a fire investigation. Haughey Rule 56.1, Exhs. S and T.

22

This evidence is virtually conclusive on the issue of whether Geoghegan and Efferen exercised final policymaking authority in assisting the Carmel Fire Department and its Fire Chief with the determination of the causes of fires.  *See e.g. Lathrop v. Onondaga County,* 220 F.Supp. 2d 129, 138 (N.D.N.Y 2002) (holding Commissioner of DCJS delegated to a Deputy final policymaking authority with respect to employment decisions, as the Commissioner left such decisions to the Deputy, spent little time reviewing such matters, and the Deputy understood his autonomy)

Putnam ignores all of this, makes a several conclusory claims, Putnam Memo p. 16, and argues Haughey failed to prove the Commissioner was delegated policymaking authority.  *Id.* at pp. 16-18.   As demonstrated above, Putnam's arguments are simply non-responsive to our theory.

## POINT IV

## HAUGHEY STATES A VALID CONSPIRACY CLAIM

The elements of a civil conspiracy claim are (1) an agreement between a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages." *Haughey v. County of Putnam*, 2020 WL 1503513, at *7, citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir. 2002).  A civil conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct. Moreover, a meeting of the minds is difficult to directly prove and may be inferred from circumstantial evidence.  *See Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999).[15]

--------

[15]Proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement for civil conspiracy purposes, and a court may infer an agreement.  "[I]n doing so it may consider relevant evidence such as the relationships between the actors and between the actions." *Diduck v. Kaszycki & Sons Contractors*, Inc., 774 F.Supp. 802, 813 (S.D.N.Y. 1991); 6 Am.Jur.2d *Conspiracy* § 68 (1979).

A reasonable jury could find a meeting of the minds between Detective Nagle and Chief Johnson (a Town of Carmel employee and policymaker, respectively), Geoghegan and his partner Efferen (Putnam County employees), and Porto, to falsely arrest and convict Haughey.

Porto called and falsely reported Haughey started a fire in the bathroom. When Detective Nagle arrived at Smalley's to investigate the fire he spoke with Porto. Following that conversation, Nagle, despite having been trained in basic fire investigation and aware of the importance of securing a potential crime scene, neither secured the bathroom, called the Fire Department or Putnam Bureau of Emergency Services.

After closing the Inn, and sometime before fire investigators arrived the next day, Porto removed the smoke eater from the bathroom ceiling —the likely cause of the fire. Haughey's 56.1 at ¶¶ 115, 230. Nagle reported the fire the following day, and when Chief Johnson, Geoghegan and Efferen responded, Nagle then *told* them the narrative he wanted confirmed: that Haughey started the fire in the bathroom. Haughey Rule 56.1 at ¶ 105. Taking that cue, Putnam then went about creating false evidence to confirm Nagle's narrative. *See* Point I, *supra*.

Chief Johnson, Efferen, and Geoghegan, a former police lieutenant, conducted a sham fire investigation with "startling" gaps in methodology, *Haughey v. County of Putnam*, 2020 WL 1503513, at *8, incapable of legitimately determining if the fire was incendiary. Despite those gaps, Chief Johnson then falsely concluded the fire was incendiary, and created a false report memorializing that finding.

Geoghegan then met with the District Attorney, conveyed the false evidence he and the others manufactured, and mislead the District Attorney into charging Haughey with arson. Both Nagle and Geoghegan then testified against Haughey: Nagle in the grand jury relating that the

24

fire was incendiary and specifically citing the sham fire investigation, and Geoghegan at trial

claiming that all accidental and electrical cause of the fire had been eliminated and the fire was

incendiary (Nagle testified at trial as well).   Based on their testimony, Haughey was wrongfully

convicted and loss nearly nine-years of his life in prison.

This evidence amply demonstrates a meeting of the minds for conspiracy purposes.  *See*

*e.g. Deskovic v. City of Peekskill*, 894 F.Supp.2d at 443 (genuine issues of fact precluded

summary judgment on plaintiff's conspiracy claim where evidence showed polygraph examiner,

at other defendants' request, conducted a sham polygraph examination designed to elicit a

confession).  Putnam responds to all of this in conclusory fashion, arguing there was no violation

of Haughey's constitutional rights and no elicit agreement.  Putnam Memo. of Law at p. 15.

## <u>CONCLUSION</u>

Putnam's motion for summary judgment should be denied, and they should answer for

falsely convicting an innocent man and literally destroying his life.

DATED:        Brooklyn, New York
              May 9, 2022

<table>
<tr><td><i>Rita Dave</i></td><td><i>Oscar Michelen</i></td></tr>
<tr><td>_____</td><td>_____</td></tr>
<tr><td>RITA DAVE, ESQ.</td><td>OSCAR MICHELEN. ESQ.</td></tr>
<tr><td>26 Court Street</td><td>Cuomo, LLC</td></tr>
<tr><td>Suite 1212</td><td>200 Old Country Road</td></tr>
<tr><td>Brooklyn, New York 11242</td><td>Suite 2 South</td></tr>
<tr><td>Telephone: (516) 782-1614</td><td>Mineola, New York 11501</td></tr>
<tr><td>Email: ritadaveesq@gmail.com</td><td>Telephone: (516) 741-3222</td></tr>
<tr><td></td><td>Fax: (516) 741-3223</td></tr>
<tr><td></td><td>Email:omichelen@cuomollc.com</td></tr>
</table>

*Attorneys for Plaintiff Estate of William Haughey*