UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – — — — — – –X
                                 :

WILLIAM HAUGHEY,                         :
                                 :

                    Plaintiff,       :

       -against-                      :

THE COUNTY OF PUTNAM; THE TOWN OF CARMEL;  :    18 CV 2861 (KMK)
INSPECTOR ROBERT GEOGHEGAN; ROBERT EFFEREN; :
CHIEF DARYL JOHNSON; DOUGH CASEY; PO JUSTIN  :
FISCHER; DETECTIVE MICHAEL NAGLE; SERGEANT  :
ROBERT BEHAN; SERGEANT JOHN DEARMAN; JOSEPH  :
CHARBONNEAU; JOHN DOES 1-5; and ANTHONY F. PORTO,:
SR., ANTHONY M. PORTO, JR., SMALLEY'S INN &amp;  :
RESTAURANT aka SMALLEY'S INN,TNT CAFE INC.,  :
operating under the trade name : Smalley's Inn and/or Smalley's :
Inn Mainstreet Cafe,  :
                                 :

                Defendants.    :
                                 :
– – – – – – – – – – – – – – – – – – – – – – – – — — — — – –X

---

### PLAINTIFF'S MEMORANDUM OF LAW OPPOSING THE TOWN OF CARMEL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

RITA DAVE, ESQ.
26 Court Street
Suite 1212
Brooklyn, New York 11242
Telephone: (516) 782-1614
Email: ritadaveesq@gmail.com

OSCAR MICHELEN. ESQ.
Cuomo, LLC
200 Old Country Road
Suite 2 South
Mineola, New York 11501
Telephone: (516) 741-3222
Fax: (516) 741-3223
Email:omichelen@cuomollc.com

*Attorneys for Plaintiff Estate of William Haughey*

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ……………………………………………………………………… 1

STATEMENT OF FACTS ………………………………………………………… 2

ARGUMENT ……………………………………………………………………… 2

    <u>POINT I</u>

    A REASONABLE JURY COULD FIND THE TOWN, THROUGH CHIEF JOHNSON,
    VIOLATED HAUGHEY'S RIGHT TO DUE PROCESS AND A FAIR TRIAL BY
    MANUFACTURING EVIDENCE AND SUPPRESSING *BRADY* MATERIAL ……... 2

    A.    Standard For Deciding A Summary Judgment Motion ………………………… 2

    B.    Haughey's Evidence Manufacturing Claim …………………………………… 3

        1.    Elements Of A Evidence Manufacturing Claim ……….………………  3

        2.    A Reasonable Jury Could Find Town Of Carmel Final Policymaker
             Chief Johnson Fabricated Evidence Which Deceived Prosecutors
             Into Charging Haughey With Arson ……………………………………  4

        3.    Chief Johnson Caused Haughey To Suffer Damages …………………..  6

        4.    Detective Nagle Is Not Entitled To Qualified Immunity
             For Fabricating The Eyewitness Report ………………………………  7

        5.    The Town's Arguments For Summary Judgment Are Meritless ……….  8

    <u>POINT II</u>

    A REASONABLE JURY COULD FIND THE TOWN LIABLE UNDER
    *MONELL* FOR FINAL POLICYMAKER CHIEF JOHNSON'S PERSONAL
    INVOLVEMENT IN THE VIOLATION OF HAUGHEY'S
    CONSTITUTIONAL RIGHTS ……………………………………………………  12

    A.    The Town Formally And By Custom Delegated To The Carmel Fire
        District And Chief Johnson Final Policymaking Authority To Determine
        Whether Fires Were Arsons …………………………………………………..  12

B.    Chief Johnson Was Personally Involved In The Violation Of Haughey's Constitutional Rights …………………………………………………………… 15

C.    The Town's Arguments For Summary Judgment Are Meritless ……..……….. 18

POINT III

A REASONABLE JURY COULD FIND THE TOWN, THROUGH CHIEF JOHNSON, ENGAGED IN A CIVIL CONSPIRACY TO DEPRIVE HAUGHEY OF HIS CONSTITUTIONAL RIGHTS …………………………..………………….. 19

CONCLUSION ……………………………………………………………………… 22

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                                  **<u>Pages</u>**

*Ashley v. City of New York,*
    992 F.3d 128 (2d Cir. 2021)  ……………………………………………………  3

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019)  ………………………………  10

*Board of County Com'rs of Bryan County, Okl. v. Brown,*
    520 U.S. 397 (1997)  …………………………………………………..…  13

*Capital Bridge Co., Ltd. v. IVL Technologies Ltd.,*
    2006 WL 2585529, at *2 (S.D.N.Y. 2006) (Karas, J.)  ………………………..……  12

*Ciambriello v. County of Nassau,*
    292 F.3d 307 (2d Cir. 2002)  ………………………………………………….  19

*City of St. Louis v. Praprotnik,*
    485 U.S. 112 (1988)  ……………………………………………………....... 13 n. 6

*Coggins v. Buonora,*
    776 F.3d 108 (2d Cir. 2015)  …………………………………………………..   7

*Deskovic v. City of Peekskill,*
    894 F.Supp.2d 443 (S.D.N.Y. 2012) (Karas, J.)  ………………………………………  21

*Diduck v. Kaszycki & Sons Contractors, Inc.,*
    774 F.Supp. 802 (S.D.N.Y. 1991) (Steward, J.), *r'vd on other grounds*,
    974 F.2d 270 (2d Cir. 1992)  …………………………………………………..……  10

*DuFort v. City of New York,*
    874 F.3d 338 (2d. Cir. 2017)  ………………………………………………….  10

*Frost v. New York City Police Department,*
    980 F.3d 231 (2d Cir. 2020)  …………………………………………………..  19

*Garnett v. Undercover Officer C0039,*
    838 F.3d 265 (2d Cir. 2016)  …………………………………………………… 4

*Gomez v. City of New York,*
    2017 WL 1034690 (E.D.N.Y. 2017) (Garaufis, J.)  ………………………………………..  4

*Haughey v. County of Putnam*,
    2020 WL 1503513 (S.D.N.Y. 2020) (Karas, J.)  ……  5, 6, 7, 8, 13, 14, 15, 16, 17, 19, 21

*In re Dana Corp.*,
    574 F.3d 129 (2d Cir. 2009)  ………………………………………………  2, 3

*Jeffes v. Barnes*,
    208 F.3d 49 (2d Cir. 2000)  ………………………………………..……  13, 15

*Kee v. City of New York*,
    12 F.4th 150 (2d Cir. 2021)  …………………………………………….……  2

*Manganiello v. City of New York*,
    612 F.3d 149 (2d Cir. 2010)  …………………………………………………  5, 7

*Miner v. City of Glen Falls*,
    999 F.2d 655 (2d Cir. 1993)  ………………………………………………..  3

*Monell v. Department of Soc. Servs.*,
    436 U.S. 658 (1978)  …………………………………………….…………..  12

*Moroughan v. County of Suffolk*,
    514 F.Supp.3d 479 (E.D.N.Y.  2021) (Blanco, J.)  …………………………  4, 10, 18

*Morse v. Fusto*,
    804 F.3d 538 (2d Cir. 2015)  …………………………………………………  3

*O'Hara v. City of New York*,
    2021 WL 4932287  (E.D.N.Y. 2021) (Glasser, J.) …………………….,,.…………  5, 8

*Pangburn v. Culbertson,*
    200 F.3d 65 (2d Cir.1999)  ……………………………………………………  19

*Ricciuti v. N.Y.C. Transit Authority,*
    124 F.3d 123 (2d Cir. 1997)  ……………………………..……………………  10

*Roe v. City of Waterbury*,
    542 F.3d 31 (2d Cir. 2008)

*Smalls v. Collins*,
    10 F.4th 117 (2d Cir. 2021)  ……………………………………………………  3, 4

*Stalter v. County of Orange*, 2016 WL 8711397
(S.D.N.Y. Aug. 5 2016) …………………………………………………… 13

*Swartz v. Insogna,*
704 F.3d 105 (2d Cir. 2013) ………………………………………..…… 4 n. 2

*Tangreti v. Bachmann,*
983 F.3d 609 (2d Cir. 2020) …………………………………....……… 15

*Zahrey v. Coffey,*
221 F.3d 342 (2d Cir. 2000) ………………………………….………... 5

**Statutes**                                                             **Pages**

42 U.S.C. § 1983 …………………………………………………… *Passim*

Fed.R.Civ.P. 56 ……………………………………………………..….. 2

**Secondary Sources**                                          **Pages**

4 Leonard B. Sand, *et al.,* Modern Federal Jury Instructions
Civil§ 87.03 (Matthew Bender 1995) …………………………………….. 3

6 Am.Jur.2d Conspiracy § 68 (1979) ………………………………….……… 20

'

## **INTRODUCTION**

William Haughey ("Haughey") spent nine horrific years in prison for a so-called "arson" that never occurred.  The Putnam County District Attorney, in consenting to vacatur of Haughey's conviction, declared he was "actually innocent" and had been sent to prison "for helping to put out a fire - not start one."   After enduring this unspeakable injustice, Haughey suffered one that was arguably worse: five years after being exonerated, before a jury could learn what the defendants did to him, he died of a massive heart attack.[1]

Now, the very defendants who framed Haughey and destroyed his life  —Detective Michael Nagle and the Town of Carmel  (collectively the "Town")— attempt to escape all liability and preclude a jury from learning what they did to him.  The Town, ignoring the mountain of evidence against them that must be viewed in Haughey's favor and assumed as true, cherry-picks facts and draws inferences in their favor to argue they did not fabricate evidence, suppress *Brady* material, or maliciously prosecute Haughey.  They also baselessly claim Detective Nagle is entitled to qualified immunity, and that Haughey failed to raise a material issue concerning whether he participated in a civil conspiracy.  As we demonstrate below, the Town's  arguments are meritless and their motion for summary judgment must be denied.  Haughey's estate should have its day and the public should see the infuriating lawlessness that led to this innocent man losing his life.

---

[1]On February 9, 2022, the Court substituted Richard J. Haughey, Haughey's surviving brother, as executor of Haughey's estate (Doc # 166).

## STATEMENT OF FACTS

The Court is respectfully referred to Plaintiff's Response To The Town's Rule 56.1

Statement and Statement of Additional Facts, as well as the Declaration of Rita Dave, Esq., both

dated May 9, 2022, for the factual predicate of this Memorandum.

## ARGUMENT

### POINT I

**A REASONABLE JURY COULD FIND THE TOWN, THROUGH CHIEF JOHNSON, VIOLATED HAUGHEY'S RIGHT TO DUE PROCESS AND A FAIR TRIAL BY MANUFACTURING EVIDENCE AND SUPPRESSING *BRADY* MATERIAL**

**A.**    **Standard For Deciding A Summary Judgment Motion**

Summary judgment is proper only "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56

(a).  Summary judgment is a limited tool: "[t]he function of the district court in considering the

motion for summary judgment is not to resolve disputed questions of fact but only to determine

whether, as to any material issue, a genuine factual dispute exists." *In re Dana Corp.*, 574 F.3d

129, 151 (2d Cir.2009).

The evidence of the nonmovant is to be believed, and "all justifiable inferences are to be

drawn in his favor." *Id.*  In addition, "the court in considering such a motion must disregard all

evidence favorable to the moving party that the jury is not required to believe."  *Kee v. City of

New York*, 12 F.4th 150, 167 (2d Cir. 2021).  "Summary judgment is inappropriate when the

admissible materials produced in opposition to the summary judgment motion make it arguable

that the claim has merit.  Thus, Rule 56 authorizes summary judgment only where the moving

party is entitled to judgment as a matter of law on the basis that no genuine issue remains for trial because it is quite clear what the truth is."  *In re Dana Corp.*, 574 F.3d at 151.

B.    **Haughey's Evidence Manufacturing Claim**

    1.    **Elements Of An Evidence Manufacturing Claim**

Section § 1983 subjects to liability "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution."  42 U.S.C. § 1983.  The elements of such a claim are: (1) a person acting under color of state law; (2) committed (or caused the commission of) a constitutional violation; (3) which proximately caused; (4) damages.  *See* 4 Leonard B. Sand, *et al.,* Modern Federal Jury Instructions: Civil§ 87.03, at 87-151 (Matthew Bender 1995); *Miner v. City of Glen Falls*, 999 F.2d 655, 660 (2d Cir. 1993).

To bring a fair trial claim based on fabrication of evidence, a plaintiff must demonstrate "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."  *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021).

"Information may be 'false' if material omissions render an otherwise true statement false," and the Second Circuit does not distinguish "deliberate omissions of material facts ... from affirmative misstatements," or hold that "omissions alone cannot support a successful section 1983 action for using fabricated evidence to deprive a plaintiff of his constitutional rights[.]"  *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015).

Critically, the tort of fabrication of evidence is complete the moment a plaintiff suffers some loss of liberty as a result of  false information being forwarded to prosecutors.  *See*

*e.g.Ashley v. City of New York*, 992 F.3d 128, 132 (2d Cir. 2021) ("[A]" claim for fabricated

evidence does not require that a plaintiff have been subjected to a trial; it is enough that

the fabrication results in a deprivation of the plaintiff's liberty") (citation omitted); *Gomez v. City*

*of New York*, 2017 WL 1034690, at *9  (E.D.N.Y. 2017) (Garaufis, J.) ("[T]he constitutional

violation occurs when the false information is transmitted to prosecutors.")[2]

Consequently, the false evidence need not have been used at trial.  *Moroughan v. County*

*of Suffolk*, 514 F.Supp.3d 479, 537 (E.D.N.Y.  2021) (Bianco, J.) (denying summary judgment on

fabricated evidence claim where prosecutor considered the fabricated evidence but criminal

charges were dismissed before trial).

Finally, the existence of probable cause is not a defense to a manufacturing of evidence

claim.  *See e.g. Smalls v. Collins*, 10 F.4th at 132 ("[W]e have long held 'that Section 1983

liability attaches for knowingly falsifying evidence even where there simultaneously exists a

lawful basis for [the] deprivation of liberty' that the plaintiff suffered."); *Garnett v. Undercover*

*Officer C0039*, 838 F.3d 265, 268 (2d Cir. 2016) (same).

### 2.    A Reasonable Jury Could Find Chief Johnson Fabricated Evidence Which Deceived Prosecutors Into Charging Haughey With Arson[3]

Haughey's First Cause of Action alleges Chief Johnson, along with others, deceived the

Putnam District Attorney's Office into bringing arson charges against him by manufacturing

---

[2]The Second Circuit has consistently held, for example, that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required "suffers a Fourth Amendment deprivation of liberty."  *Swartz v. Insogna,* 704 F.3d 105, 112 (2d Cir. 2013) (citation omitted).

[3]The Town asserts Haughey seeks to hold Nagle liable for a deficient police investigation.  In truth, Haughey's claims against Nagle are grounded solely on his acts and omissions concerning the Eyewitness Report, and the sham fire investigation, the latter of which by virtue of his role as a member of the civil conspiracy.  *See* p. 8, *infra*.

false reports leading the District Attorney to believe Haughey committed arson.  *See* Haughey's Second Amended Complaint ("SAC") at ¶¶ 90-95.

Our evidence is powerful.  *See* Haughey's Memorandum of Law opposing Chief Johnson's motion for summary judgment, pp. 4-12.  Chief Johnson, acting as a Town of Carmel policymaker, *see* pp. 12-18, *infra*, manufactured a false Carmel Fire Department report indicating the fire team determined "the fire was incendiary in nature."  Haughey Rule 56.1, Exh. CC".[4] Based on this evidence, a jury could easily conclude Nagle and Chief Johnson manufactured the Eyewitness Report and Carmel Fire Department report.  *See e.g. Manganiello v. City of New York*, 612 F.3d 149, 159 (2d Cir. 2010) (affirming a fabrication of evidence judgment against a police officer who "misrepresented the evidence to the prosecutors," while knowing he was doing so).

Obviously, without Chief Johnson's declaration that the fire was an arson, there could be no criminal prosecution of Haughey.

After Chief Johnson manufactured his report, Geoghegan personally delivered it to the District Attorney.  This act is chargeable to Chief Johnson as it was reasonably foreseeable that his arson declaration would be forwarded to prosecutors, and as members of the civil conspiracy to falsely convict Haughey, he is liable for the acts of his conspirators.  *See Zahrey v. Coffey,* 221 F. 3d 342, 351 (2d Cir. 2000) (§ 1983 defendants are liable for the consequences of "reasonably foreseeable intervening forces"); *Haughey v. County of Putnam*, 2020 WL 1503513, at *12 (same); *O'Hara v. City of New York*, 2021 WL 4932287, at *8 (E.D.N.Y. 2021) (Glasser, J.) (that

---

[4]Haughey's Response to the Town's Fed.R.Civ.P. 56.1 Statement, which includes Haughey's sequentially numbered Statement of Additional Facts, will be referred to as "Haughey's 56.1" followed by the paragraph number, or, where the context is clear, just to the paragraph number.  Exhibits attached to Haughey's 56.1 will be referred to as "Haughey Exh." followed by the letter designation.  The Town's Rule 56.1 Statement will be referred to as "Town's 56.1".

conspirator "may not have been directly involved in the … use of the fabricated testimony … is irrelevant to his liability for that act[.]")

    3.    **Chief Johnson Caused Haughey To Suffer Damages**

As previously stated, the tort of evidence fabrication was complete the moment Haughey was obligated to appear in court in connection with the arson charges. *See* pp. 3-4. After Chief Johnson's fabricated evidence was forwarded to the District Attorney, the District Attorney relied on that evidence and charged Haughey with arson, obligating him to maintain bond and appear in court. Haughey's 56.1 at ¶ 166 (citing ADA Noah's deposition testimony that he relied on Putnam, their reports, and the Eyewitness Report in deciding to charged Haughey).

Chief Johnson's false report was critical to Haughey's case. As District Attorney Tendy acknowledges, without the declaration that the fire was an arson, there could be no case against Haughey. Haughey 56.1 at ¶ 200. Chief Johnson's report bolstered the Putnam defendants' representations to the District Attorney that the fire was incendiary, and confirmed their reliance on the validity of the sham investigation. *See also* Haughey's Memos. of Law opposing Putnam Defendants' and Chief Johnson's motions for summary judgment. Indeed, as discussed in our memorandum of law opposing Putnam's summary judgment motion, the deception regarding the validity of the fire investigation led the District Attorney to oppose Haughey's appeals for nearly nine years. *Id.*

Not only was Haughey's unjust incarceration "reasonably foreseeable," but it "was actually intentionally triggered" by Chief Johnson's actions. *Haughey v. County of Putnam*, 2020 WL 1503513, at *9. Thus, a jury could easily find Chief Johnson's fabrication of evidence

caused Haughey's wrongful conviction and nearly nine-year imprisonment, conduct squarely

chargeable to the Town of Carmel.  *See* <u>Point II</u>, *infra*.

### 4. Detective Nagle Is Not Entitled To Qualified Immunity For Fabricating The Eyewitness Report

Our evidence demonstrates Detective Nagle falsely informed Geoghegan that

eyewitnesses had actually observed Haughey stuff paper towels into the bathroom ceiling and

then ignite them.  Geoghegan then memorialized Nagle's false statement in an Incident Summary

Report (the "Eyewitness Report").  Haughey Rule. 56.1 at ¶¶ 144-145, Exh. N.

Qualified immunity simply does not apply to this fabrication of evidence. *Manganiello v.

City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (same).  As Your Honor recognized, such

conduct "is objectively unreasonable as a matter of law."  *Haughey v. County of Putnam*, 2020

WL 1503513, at *8 (citing cases).   Indeed,"the Second Circuit has explained [that] the right to

be free of [any government officer's fabrication of evidence] has been clearly established for

decades. *Haughey v. County of Putnam*, 2020 WL 1503513, at *7, citing *See Zahrey*, 221 F.3d at

357. "[I]ntentional falsification and suppression of evidence … is objectively unreasonable as a

matter of law."  *Id.* at *8; *See Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) ("[T]he

alleged falsification of evidence and the related conspiracy, if true, constitute a violation of

clearly established law, and no objectively reasonable public official could have thought

otherwise.")

Yet Detective Nagle attempts to avoid this established authority by reframing the issue.

He argues he is entitled to qualified immunity because the law does not clearly hold police have

"a legal duty to edit third parties' reports to make sure that they accurately characterize the

evidence actually collected by the police[.]"  Obviously, that argument is simply non-responsive to the evidence fabrication claim Haughey actually raises.

4.    <u>**The Town's Arguments For Summary Judgment Are Meritless**</u>

Despite the above, the Town advance four absurd arguments in support of its summary judgment motion.

*First*, they argue they are not liable for fabricating evidence because the Eyewitness Report "was not created or forwarded to Prosecutors by Detective Nagle[.]"  Town Memo. of Law at p. 18.  But Nagle *did in fact cause the creation of Eyewitness Report* by conveying that information to Fire Investigators at the scene.  It was obviously foreseeable that the false information would be recorded and forwarded to the District Attorney as that was the whole point of Nagle fabricating information in the first place.  Plus, 42 U.S.C. § 1983 makes any person who subjects, *or causes to be subjected,* to the deprivation of his or her constitutional rights, liable.. *Id.*

Additionally, as a member of a civil conspiracy, Nagle is, "as a matter of law, liable for each act taken in furtherance of the conspiracy, even if he was not directly involved in the specific act."  *O'Hara v. City of New York*, 2021 WL 4932287, at *8 (E.D.N.Y. 2021) (Glasser, J.); *Haughey v. County of Putnam*, 2020 WL 1503513, at *9 (S.D.N.Y. 2020) (Karas, J.) (noting applicability of this doctrine in § 1983 cases).  Thus, Nagle is chargeable with every wrong committed by his coconspirators, including the forwarding of the Eyewitness Report to prosecutors, and the fact that "he may not have been directly involved in" it "is irrelevant to his liability for that act"  *O'Hara* at *8.

*Second*, the Town argues the witness statements that Nagle forwarded to prosecutors were fully consistent with these witnesses' subsequent trial testimony. Town Memo. of Law at p. 18. But that is simply irrelevant. The issue here is the Eyewitness Report, not any other report Nagle created. It would be a perverse application of the law to hold that a police officer who fabricates evidence to have someone falsely prosecuted can escape liability because the officer also provided the District Attorney with other truthful and consistent information. Of course, the Town does not cite a single case to support this absurd argument.

*Third*, without citation to any authority, the Town argues they are not liable for fabricating evidence because the Eyewitness Report was disclosed to Haughey's trial attorney "in advance of trial" and he was "free to use it" to cross-examine Geoghegan. But the Town had not produced any evidence demonstrating the Eyewitness Report was turned over during Haughey's criminal trial. *See* Haughey Rule 56.1 at ¶ 94. The Town's failure to produce such evidence is particularly telling as both of Haughey's trial prosecutors were deposed in this action and the Town did not ask them a single question about whether they disclosed the Eyewitness Report during Haughey's trial.

And even if the Eyewitness Report was provided to the defense, how could the defense have possibly known that the eyewitness accounts it memorialized were fabricated? There was nothing about the report to alert the reader to the fact that it had been manufactured. Indeed, the Eyewitness Report was so deceptively crafted that it was relied on by the District Attorney to charged Haughey with arson. Any rationale defense attorney, confronted with the report, would have avoided attempting to investigate such "eyewitnesses" who had identified his client but had no been presented at trial. Thus, even if the report had been disclosed, without any evidence that

9

the falsity of it was disclosed, the Town cannot escape liability.  To conclude otherwise would be to actually reward the Town for fabricating evidence so well that it both fooled the District Attorney and the wronged § 1983 plaintiff.

Finally, the Town cites *DuFort v. City of New York*, 874 F.3d 338, 355 (2d. Cir. 2017) for the proposition that "[m]ere attempts to withhold or falsify evidence cannot form the basis for a § 1983 claim for a violation of the right to due process when those attempts have no impact on the conduct of a criminal trial."  But *DuFort* is distinguishable as it involved a claim based on the use of fabricated evidence *during a criminal trial*.  Id. at 355 ("The constitutional right on which Dufort's § 1983 due process claim rests is the right to have *one's case tried based on an accurate evidentiary record that has not been manipulated by the prosecution*") (emphasis added).

Haughey's due process claim is different.  It is based on *pretrial* fabrication and *pretrial* use of the Eyewitness Report, and Chief Johnson's report, to deceive the prosecutors into charging Haughey.  *See e.g. Ricciuti v. N.Y.C. Transit Authority*, *supra*; *Moroughan v. County of Suffolk, supra*.  As previously discussed, this pretrial use of false evidence is complete the moment false information is forwarded to prosecutors and the plaintiff suffers some loss of liberty.  The false evidence need not have been actually used against the plaintiff during his criminal trial.  *See* pp. 3-4, *supra*.

But even if *Dufort* were applicable to pretrial fabrication of evidence claims, it would be distinguishable by virtue of its facts and the Second Circuit's recent decision *Bellamy v. City of New York*, 914 F.3d 727, 748 (2d Cir. 2019). As the Second Circuit explained in *Bellamy*,

> "*DuFort* involved a "paradigmatic example of an improperly suggestive lineup," in which detectives allowed a criminal suspect, DuFort, to wear a red sweatshirt during a lineup despite knowing

that the sole eyewitness, Park, had told them that, although she
could not identify his face, one of the assailants was wearing a red
sweatshirt during the commission of the crime. *Id.* at 348. Park then
selected DuFort out of the lineup but did so based solely on her
knowledge that the assailant was wearing a red sweatshirt. During
the subsequent criminal trial of DuFort, Park could not identify
DuFort and testified that she only selected DuFort at the lineup due
to his distinctive clothing."

*Id.* at 748.

DuFort was acquitted and sued the detectives claiming their manipulation of the lineup

violated his right to a fair trial.  The Second Circuit rejected the claim because the evidence

DuFort claimed was withheld or misrepresented "was in fact disclosed in a straightforward

manner at the trial: the prosecution elicited testimony from [the witness] that she recognized

DuFort not by his face, but by his clothing. Consequently, in *DuFort*, the jury was presented with

the full universe of information, despite any earlier police misconduct …. [I]t was undisputed

that the attempt to distort the trial record failed." *Bellamy* at 748 (quotes and alterations omitted).

Haughey's case is the exact opposite.  There was never *any* disclosure, much less a

"straightforward" one,  of the falsity of the Eyewitness Report.  The Town does not point to a

shred of evidence that jury, or prosecutors for that matter, were ever made aware that Detective

Nagle had fabricated the Eyewitness Report.  To the contrary, the prosecutors operated under the

belief that no evidence had been fabricated and all of the evidence they were provided with was

truthful, Haughey Rule 56.1 at ¶¶ 342-343.  Thus, unlike *DuFort* the jury was never presented

with "the full universe of information," and Nagle's misconduct was concealed throughout the

case. Accordingly, *DuFort* in inapplicable to Detective Nagle's pretrial fabrication and use of the Eyewitness Report.[5]

In sum, accepting Haughey's evidence as true, a reasonable jury could easily find Nagle fabricated the Eyewitness Report and Haughey suffered a resultant loss liberty. *See Capital Bridge Co., Ltd. v. IVL Technologies Ltd., 2006 WL 2585529*, at *2 (S.D.N.Y. 2006) (Karas, J.) ("[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.")

## POINT II

### A REASONABLE JURY COULD FIND THE TOWN LIABLE UNDER *MONELL* FOR FINAL POLICYMAKER CHIEF JOHNSON'S PERSONAL INVOLVEMENT IN THE VIOLATION OF HAUGHEY'S CONSTITUTIONAL RIGHTS

**A.    The Town Formally And By Custom Delegated To The Carmel Fire District And Chief Johnson Final Policymaking Authority To Determine Whether Fires Were Arsons**

Under *Monell v. Department of Soc. Servs.*, 436 U.S. 658, (1978), a municipality may be liable for its employee's violation of a citizen's federal rights if the employee's violation was undertaken pursuant to a "policy" or "custom" of the municipality.   While *Monell* plaintiffs normally seek to establish a municipal "policy" or "custom" by pointing to a formal or longstanding municipal practice ratified by municipal policymakers, a plaintiff may also establish a *Monell* "policy" by showing a municipal policymaker in the relevant area committed

---

[5]The Town does <u>not</u> contend Haughey's trial attorney's ineffectiveness impacts the analysis of this issue. *Belmontes v. Brown*, 414 F.3d 1094, 1115 (9th Cir. 2005) ("[T]he prosecutor's duty to correct false testimony arises, not simply out of a duty of fairness to the defendant, but out of the free standing constitutional duty of the State and its representatives to protect the system against false testimony. Therefore, regardless of whether defense counsel should have known that a state witness testified falsely, a prosecutor's responsibility and duty to correct what he knows to be false and elicit the truth requires him to act when put on notice of the real possibility of false testimony") (citations omitted).

the wrong alleged in the Complaint. *See e.g. Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 417-18 (1997); *Haughey v. County of Putnam,* 2020 WL 1503513, at *11 (same).

Where a plaintiff seeks to hold a municipality liable for a 'single decision by a municipal policymaker, the plaintiff must show that the official had final policymaking power over the particular matters the plaintiff alleges led to the violation of his rights. *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) ("the court must "ask whether [the] governmental official [ is a] final policymaker for the local government in a particular area, or on [the] particular issue involved in the action.")

As Your Honor explained,

> In the Second Circuit, an official has final authority "if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." [*Roe v. City of Waterbury,* 542 F.3d 31, 38 (2d Cir. 2008)] (citation and quotation marks omitted). Accordingly, where a policymaker wholly delegates certain policy powers to a subordinate, the subordinate may herself qualify as a policymaker, thus subjecting the municipality to liability. *See Stalter v. County of Orange*, No. 15-CV-5274, 2016 WL 8711397, at *11 (S.D.N.Y. Aug. 5, 2016) (finding that a plaintiff adequately pleaded that a sheriff had "delegated all final policy-making authority as to disciplinary matters" to an undersheriff, and thereby sufficiently pleaded a *Monell* action based on the undersheriff's conduct (record citation and quotation marks omitted)

*Haughey v. County of Putnam*, 2020 WL 1503513, at *11.[6]

---

[6]Policymaking authority may be shared among various individuals. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) ("There seems to be no disagreement among the members of the Court that in some municipalities "policymaking responsibility is shared among more than one official or body[.]")

Haughey's evidence raises a material question as to whether the Town delegated final policymaking authority to the Carmel Fire District and Chief Johnson to determine whether fires occurring in Carmel New York were incendiary.

As we have shown, the Town entered into a formal contract with the Carmel Fire District for the Fire District to provide the Town with fire protection services.[7]  That District, a legal entity, in turn carried out those contractual duties through Chief Johnson.

Chief Johnson had complete autonomy as to how he carried out his duties. Johnson, testifying as Fed.R.Civ.P. 30 (b)(6) witness for the Fire District, swore that at the time of the 2007 fire neither the Carmel Town Board or any other Town official reviewed or overruled any of his decisions with respect to  (1) whether a fire was an arson, (2) any interaction he had with the Putnam Fire Team, (3) his reliance on Putnam fire investigators' conclusions regarding whether a  fire  was  an  arson, and (4) Chief Johnson's role and functions at the scene of potential arson. Haughey Rule 56.1 at ¶ 325.  The Town's attorney, Gregory Folchetti, testified that the Fire District *governs itself* and that the Town Commissioners have no say in governing it.

Stated differently, the Town "wholly delegate[d] certain policy powers to a subordinate," the Fire District, which acts through Chief Johnson, so that they "qualify as … policymaker[s], thus subjecting the municipality to liability."  *Haughey v. County of Putnam*, 2020 WL 1503513, at *11 (S.D.N.Y., 2020).

---

[7]The Fire District is a legal entity, while the "Fire Protection District" the geographical area the Fire District serves. Haughey Exh. C at p. 14.  The Town of Carmel contracts annually with the Fire District to provide Fire Protection Services, and the Fire District acts through its volunteer Carmel Fire Department.

The Town also delegated final policymaking authority by way of longstanding custom. As Your Honor recognized, Emergency Services Commissioner McMahon's statements[8] explaining that "local policy was (and is) for Johnson to make arson determinations" support the conclusion that Chief Johnson wielded delegated Town policymaking authority. *Haughey v. County of Putnam*, 2020 WL 1503513, at *12, citing *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (explaining that courts may look to "a custom or usage having the force of law" in determining whether an official is a policymaker (citation and quotation marks omitted).

**B.    Chief Johnson Was Personally Involved In The
Violation Of Haughey's Constitutional Rights**

Chief Johnson, wielding the Town's policymaking authority, directly participated in the acts and omissions leading to Haughey's injuries or, at the very least, failed to intervene to prevent Geoghegan and Efferen from causing those injuries. *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) ("[C]ourts may not apply a special rule for supervisory liability. Rather, the plaintiff must directly plead and prove that "each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

As Your Honor recognized in denying Chief Johnson's motion to dismiss, Johnson's actions in developing misleading evidence and causing it to be forwarded to the District Attorney are sufficient to find he was personally involved in violating Haughey's constitutional rights. *Haughey v. County of Putnam*, 2020 WL 1503513, at *6. But our evidence goes far beyond establishing that single point.

_____

[8]McMahon's statement is one of fact based on personal knowledge and admissible under Federal of Evidence 406 as evidence of an "organization's routine practice." Fed. R. Evid. 406; *Haughey v. County of Putnam*, 2020 WL 1503513, at *6 n. 3. Moreover, the statement is admissible as a party admission. Fed.R.Evid. 801 (d) (2) (A), (C) and (D).

It was Chief Johnson who authorized Geoghegan and Efferen's dispatch to Smalley's. Town Rule 56.1 at ¶ 17.   It was Chief Johnson who was in charge at the scene, and used Geoghegan and Efferen as his "tools" to investigate the fire.[9]  It was Chief Johnson who made the ultimate determination that the fire was an arson, and Geoghegan and Efferen really had no power to make that designation independently.

When Chief Johnson responded to the scene and spoke with Detective Nagle, Nagle asked Chief Johnson to "*rule out any possible causes for the fire*" and Chief Johnson then used this two subordinates and friends, Geoghegan and Efferen, [10] to do just that.

Chief Johnson knew that the fire occurred the night before.  He also knew that Smalley's owner, Porto, made a conscious decision not to call the fire department, as Porto personally informed Chief Johnson that he did not call because he was afraid it would lead to Smalley's being shut down.  And Chief Johnson knew that Porto, who only 13-hours earlier had avoided calling the fire department to the scene, now inexplicably changed course and allowed the fire department to inspect Smalley's.[11]

Chief Johnson fully understood the significance of the failure to secure a fire scene, as he had personally arranged for the Putnam Fire Investigation Team to train his fire fighters on "crime scene preservation," understanding that if a scene was altered the investigation team

---

[9]Robert McMahon, the Commissioner of the Putnam County Bureau of Emergency Services during the relevant period, explained that Putnam fire investigators "simply assist the fire chief in his determination" regarding the fire.  *Haughey v. County of Putnam*, 2020 WL 1503513, at *6 (quotations omitted).

[10]Chief Johnson was friends with both Geoghegan, long-time friends with Efferen, and Efferen's family would socialize with Chief Johnson's family.

[11]Our evidence, of course, explains why Porto was now being so helpful: During the period between the fire and the inspection, the smoke eater that was in the bathroom ceiling at the time the fire took place, had been removed.  *See* Haughey's Memo. of Law Opposing Putnam Defendants' Motion For Summary Judgment, p. 14.

16

"would not get a true overview" and the investigation could not be conducted "properly."  The

fire scene, however, as Johnson personally observed, had not been cordoned off with crime scene

tape, despite the fire occurring the night before.

Yet Chief Johnson did not make a single note or report noting the lack of integrity of the

fire scene, that it had been left unsecured, and obviously in Porto's control.[12]  He did not make a

record regarding the impossibility of his investigators reaching an accurate determination as to

the nature of the fire by virtue of the inability to ensure the integrity of the fire scene.  Instead,

while failing to document the lack of integrity of the fire scene,  he created a false report he

personally signed, listing himself as the "officer in charge," and declaring "[t]he team determined

the fire was inc[e]ndiary in nature."  That false report that was then forwarded to the District

Attorney's office.  *Id.* at *6 (S.D.N.Y.  2020).[13]

Critically, Chief Johnson's actions were calculated: he acknowledged at his deposition

that he did <u>not</u> have to accept the Geoghegan and Efferen's findings, that he could have demand

that they explain the basis for their conclusion and challenge their findings by bringing the matter

to the Putnam County Commissioner.   As Your Honor held, if proven, these facts "suggest that

Johnson's conduct was intentional."  *Id.*

---

[12]Johnson took no notes, no pictures, and did not make any record of how much time his investigators
took examining the scene or what they examined.

[13]That Chief Johnson did not personally forwarded his report to the District Attorney is irrelevant.  It was
wholly foreseeable that having been called to investigate whether a fire was arson, his finding that it was
would be forwarded to the District Attorney and relied on by that office.  Moreover, as a member of a
civil conspiracy, Chief Johnson is liable for each act taken in furtherance of the conspiracy, including the
forwarding of information to the District Attorney, even if he was not directly involved in the specific act.
*Haughey v. County of Putnam,* 2020 WL 1503513, at *9 ("[A] defendant may be "liable as a conspirator
for the[ ] reasonably foreseeable crimes of his coconspirators.")  Moreover, Chief Johnson's false report
served to bolster his codefendants' misleading the District Attorney that the failure to secure the fire scene
for 13-hours was inconsequential.  Chief Johnson' arson designation despite the 13-hour gap, and his
report's failure to indicate the 13-hour gap impacted that designation in any way,  implicitly conveyed that
same false narrative.

Had Chief Johnson not declared the fire an incendiary one, Haughey would have never been convicted.  Haughey Rule 56.1 at ¶ 200 (quoting DA Tendy's declaration that as "the origin of the fire could not be determined …there could not be an arson conviction.")  Based on these facts, a reasonable jury could easily find Chief Johnson was personally involved in the violation of Haughey's constitutional rights.

**C.**    **The Town's Arguments For Summary Judgment Are Meritless**

The Town ignores the entire body of *Monell* jurisprudence concerning policymakers by delegation, and argues that because Chief Johnson was not a Town of Carmel employee  or municipal policymaker, the Town cannot be held vicariously liable for his conduct.  Town's Memo. of Law, pp. 22-23.  As demonstrated above, the Town's argument has no merit.

The Town also argues that Haughey failed to establish a constitutional violation because Chief Johnson's false report "was not admitted into evidence at Plaintiff's underlying criminal trial and therefore did not lead to his conviction," and Chief Johnson "did not testify in this trial and therefore he had no impact on the criminal proceedings whatsoever." *Id.* at 23. But as discussed above, with pretrial fabrication of evidence claims, Second Circuit precedent does not require that the false evidence be "entered in evidence" or that the lying witness "testify at trial."

For example, in *Moroughan v. County of Suffolk*, 514 F.Supp.3d 479, 537 (E.D.N.Y. 2021) (Bianco, J.) the defendants argued they were not liable for fabricating a statement the plaintiff supposedly made because the statement "was never used, or even considered during his brief pending criminal prosecution." *Id.* at 537.  Judge Bianco squarely rejected that argument:

The Court finds this argument unpersuasive … [T] he Second Circuit recently rejected this precise argument. More specifically, in [*Frost v. New York City Police Department*, 980 F.3d 231, 244 (2d Cir. 2020)] the Second Circuit held that the "fair trial right protects against deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury.*" *Frost*, 980 F.3d at 250. The Court emphasized that "we have expressly distinguished this right from the separate, although related, right not to be convicted based on the use of false evidence *at trial.*" *Id.* Thus, the fair trial claim survived summary judgment in *Frost* even though the allegedly fabricated evidence was presented to the prosecutor, but never used at any trial.

*Id.* at 537.

## POINT III

### A REASONABLE JURY COULD FIND THAT THE TOWN ENGAGED IN A CIVIL CONSPIRACY TO DEPRIVE HAUGHEY OF HIS CONSTITUTIONAL RIGHTS

The elements of a civil conspiracy claim are (1) an agreement between a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages." *Haughey v. County of Putnam*, 2020 WL 1503513, at *7, citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir. 2002). A civil conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct. Moreover, a meeting of the minds may be inferred from circumstantial evidence. *See Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999).

Proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement for civil conspiracy purposes, and a court may infer an agreement. "[I]n doing so it may consider

relevant evidence such as the relationships between the actors and between the actions." *Diduck v. Kaszycki & Sons Contractors*, Inc., 774 F.Supp. 802, 813 (S.D.N.Y. 1991) (Steward, J.), *r'vd on other*, 974 F.2d 270, 282 (2d Cir. 1992); 6 Am.Jur.2d Conspiracy § 68 (1979).

A reasonable jury could find a meeting of the minds between Detective Nagle and Chief Johnson (a Town of Carmel employee and policymaker, respectively), Geoghegan and Efferen (Putnam County employees), and Porto (a private citizen), to have Haughey falsely arrested, prosecuted, and convicted of arson.

Porto started the ball rolling by calling police and falsely reporting Haughey started a fire in the bathroom. When Detective Nagle arrived to investigate, he spoke with Porto and despite Nagle being fully aware of the importance of securing a potential crime scene, he neither secured the bathroom or called the Fire Department or Putnam Bureau of Emergency Services. Instead, Nagle inexplicably allowed Porto to close Smalley's with the bathroom unsecured and under Porto's control.

After the Inn was closed, and sometime before fire investigators arrived the next day, the smoke eater that was in the bathroom ceiling during the fire —and the likely cause of the fire— was removed, likely by Porto.

When Chief Johnson, Geoghegan, a former police lieutenant, and Efferen responded the following day, Detective Nagle *told* them the narrative he wanted them to confirm: Haughey started the fire in the bathroom. Haughey Rule 56.1 at ¶ 105. Taking that cue, Chief Johnson, Geoghegan and Efferen went about creating false evidence to confirm Nagle's narrative. *See* Point I, *supra*.

The men then conducted a sham fire investigation with "startling" gaps in methodology, *Haughey v. County of Putnam*, 2020 WL 1503513, at *8, incapable of legitimately determining whether the fire was incendiary. Despite those gaps, Chief Johnson falsely concluded the fire was incendiary, and created a false report memorializing that finding.

Geoghegan then met with the District Attorney, conveyed the false evidence he and the others manufactured, and mislead the District Attorney into charging Haughey with arson, assuring the District Attorney that any delay in securing the "crime scene" was inconsequential. Both Nagle and Geoghegan then testified against Haughey: Nagle in the grand jury, specifically citing the sham fire investigation, and Geoghegan at trial, claiming all accidental and electrical cause of the fire had been eliminated and the fire was incendiary. Based on this conduct, Haughey was wrongfully convicted, sentenced to10-years, and lost nearly nine-years of his life in prison.

This evidence amply demonstrates a meeting of the minds for conspiracy purposes. *See e.g. Deskovic v. City of Peekskill*, 894 F.Supp.2d 443 (S.D.N.Y. 2012) (Karas, J.) (genuine issues of fact precluded summary judgment on plaintiff's conspiracy claim where evidence showed polygraph examiner, at other defendants' request, conducted a sham polygraph examination designed to elicit a confession).

The Town's substantive response to all of this evidence is a single sentence: "[T]here is no evidence that Detective Nagle had any pre-existing relationship with co-Defendant Anthony Porto, the owner of Smalley's, or that they reached any agreement regarding Plaintiff's criminal prosecution." Town's Summary Judgment Memo. of Law, pp. 23-24. Obviously, that argument

is a straw man, and the Town had not produced any evidence to justify precluding a jury from deciding Haughey's conspiracy claims.

## **CONCLUSION**

The Town's motion for summary judgment should be denied, and the Town should answer for falsely convicting an innocent man and destroying his life.

DATED:       Brooklyn, New York
             May 9, 2022


*Rita Dave*                                                        *Oscar Michelen*
_____          _____
RITA DAVE, ESQ.                                          OSCAR MICHELEN. ESQ.
Dave Law, P.C.                                             Cuomo, LLC
26 Court Street                                            200 Old Country Road
Suite 1212                                                   Suite 2 South
Brooklyn, New York 11242                         Mineola, New York 11501
Telephone: (516) 782-1614                        Telephone: (516) 741-3222
Email: ritadaveesq@gmail.com                  Fax: (516) 741-3223
                                                                  Email:omichelen@cuomollc.com


*Attorneys for Plaintiff Estate of William Haughey*