UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ —X
                                                              :
WILLIAM HAUGHEY,                                              :
                                                              :
                                    Plaintiff,                :
            -against-                                         :
                                                              :
THE COUNTY OF PUTNAM; THE TOWN OF CARMEL;      :      18 CV 2861 (KMK)
INSPECTOR ROBERT GEOGHEGAN; ROBERT EFFEREN;    :
CHIEF DARYL JOHNSON; DOUGH CASEY; PO JUSTIN    :
FISCHER; DETECTIVE MICHAEL NAGLE; SERGEANT     :
ROBERT BEHAN; SERGEANT JOHN DEARMAN; JOSEPH    :
CHARBONNEAU; JOHN DOES 1-5; and ANTHONY F. PORTO,:
SR., ANTHONY M. PORTO, JR., SMALLEY'S INN &     :
RESTAURANT aka SMALLEY'S INN,TNT CAFE INC.,     :
operating under the trade name : Smalley's Inn and/or Smalley's :
Inn Mainstreet Cafe,                                           :
                                                              :
                                    Defendants.               :
                                                              :
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ —_ _ _ _ _ _ _ _ _ —X

---

**PLAINTIFF'S MEMORANDUM OF LAW OPPOSING
CARMEL FIRE CHIEF DARYL JOHNSON'S MOTION
FOR SUMMARY JUDGMENT**

---

RITA DAVE, ESQ.                          OSCAR MICHELEN. ESQ.
26 Court Street                          Cuomo, LLC
Suite 1212                               200 Old Country Road
Brooklyn, New York 11242                 Suite 2 South
Telephone: (516) 782-1614                Mineola, New York 11501
Email: ritadaveesq@gmail.com             Telephone: (516) 741-3222
                                         Fax: (516) 741-3223
                                         Email:omichelen@cuomollc.com
                                         (*Of Counsel*)


*Attorneys for Plaintiff Estate of William Haughey*

## **TABLE OF CONTENTS**

INTRODUCTION ……………………………………………………………………. 1

STATEMENT OF FACTS ……………………………………………………………. 1

ARGUMENT ………………………………………………………………………… 2

    POINT I

    A REASONABLE JURY COULD FIND CHIEF JOHNSON VIOLATED
    HAUGHEY'S RIGHT TO DUE PROCESS AND A FAIR TRIAL BY
    MANUFACTURING EVIDENCE AND SUPPRESSING *BRADY* MATERIAL …. 2

    A.    Standard For Deciding A Summary Judgment Motion ………..…………… 2

    B.    Haughey's Evidence Manufacturing Claim ………………………………… 3

        1.    Elements Of A Evidence Manufacturing Claim …………..………… 3

        2.    A Reasonable Jury Could Find Chief Johnson Was Personally
            Involved In Violating Haughey's Constitutional Rights ……….…… 4

            a.    Chief Johnson Knowingly Conducted A Sham Fire
                Investigation That Was Incapable Of Determining Whether
                An Arson Occurred, And Then Personally Created A False
                Report Indicating The Fire Was Incendiary ………………… 4

            b.    Chief Johnson Engaged In A Civil Conspiracy With
                Detective Nagle, Geoghegan, Efferen, And Porto ………..… 9

    C.    Chief Johnson's Arguments For Summary Judgment Are Meritless ………. 12

    POINT II

    CHIEF JOHNSON IS NOT ENTITLED TO QUALIFIED IMMUNITY
    FOR FABRICATING EVIDENCE ……………………………………………… 14

CONCLUSION ………………………………………………………………………. 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                  **Pages**

*Ashley v. City of New York*,
     992 F.3d 128 (2d Cir. 2021) ……………………………………………………… 3

*Ciambriello v. County of Nassau*,
     292 F.3d 307 (2d Cir. 2002) …………………………………………………..… 10

*Coggins v. Buonora*,
     776 F.3d 108 (2d Cir. 2015) ………………………………………………….. 14

*Deskovic v. City of Peekskill*,
     894 F.Supp.2d 443 (S.D.N.Y. 2012) (Karas, J.) ……………………………… 11

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
     774 F.Supp. 802 (S.D.N.Y. 1991) (Steward, J.), *r'vd on other grounds*,
     974 F.2d 270 (2d Cir. 1992) ………………………………………..…… 10

*Folk v. City of New York*,
     243 F.Supp.3d 363 (E.D.N.Y. 2017) ………………………………………… 7

*Frost v. New York City Police Department*,
     980 F.3d 231 (2d Cir. 2020) …………………………………………….….. 13

*Garnett v. Undercover Officer C0039*,
     838 F.3d 265 (2d Cir. 2016) …………………………………………………… 4

*Gomez v. City of New York*,
     2017 WL 1034690 (E.D.N.Y. 2017) (Garaufis, J.) …………………………….. 4

*Haughey v. County of Putnam*,
     2020 WL 1503513 (S.D.N.Y. 2020) (Karas, J.) ……………………..… 5, 7, 9, 11, 14, 15

*In re Dana Corp.*,
     574 F.3d 129 (2d Cir. 2009) ……………………………………………… 1, 2

*Kee v. City of New York,*
    12 F.4th 150 (2d Cir. 2021) ……………………………………….……… 2

*Manganiello v. City of New York,*
    612 F.3d 149 (2d Cir. 2010) …………………………………………… 14

*Miner v. City of Glen Falls,*
    999 F.2d 655 (2d Cir. 1993) ………………………………………….. 3

*Moroughan v. County of Suffolk,*
    514 F.Supp.3d 479 (E.D.N.Y. 2021) (Blanco, J.) ………………………… 4, 12

*Morse v. Fusto,*
    804 F.3d 538 (2d Cir. 2015) …………………………………………… 3, 9

*Pangburn v. Culbertson,*
    200 F.3d 65 (2d Cir.1999) …………………………………………… 10

*Ricciuti v. N.Y.C. Transit Authority,*
    124 F.3d 123 (2d Cir. 1997) …………………………...……………… 12

*Smalls v. Collins,*
    10 F.4th 117 (2d Cir. 2021) …………………………………………… 3, 4

*Swartz v. Insogna,*
    704 F.3d 105 (2d Cir. 2013) ………………………………………….…… 4 n. 2

*Tangreti v. Bachmann,*
    983 F.3d 609 (2d Cir. 2020) ………………………………….…………… 4

*Zahrey v. Coffey,*
    221 F.3d 342 (2d Cir. 2000) …………………………………….……….. 14

**<u>Statutes</u>**                                                             **<u>Pages</u>**

42 U.S.C. § 1983 …………………………………………………….……… 3

Fed.R.Civ.P. 56 ………………………………………………………….. 2, 5

**<u>Secondary Sources</u>**                                                                         **<u>Pages</u>**

4 Leonard B. Sand, *et al.,* Modern Federal Jury Instructions
        Civil§ 87.03 (Matthew Bender 1995) …………………………………………….. 3

6 Am.Jur.2d Conspiracy § 68 (1979) ………………………………………….…… 10

iii

## INTRODUCTION

William Haughey ("Haughey") spent nine horrific years in prison for a so-called "arson" that never occurred. The Putnam County District Attorney, in consenting to vacatur of Haughey's conviction, declared he was "actually innocent" and had been sent to prison "for helping to put out a fire - not start one." After enduring this unspeakable injustice, Haughey suffered one that was arguably worse: five years after being exonerated, before a jury could learn what the defendants did to him, he died of a massive heart attack.[1]

Now, one of the very defendants who took part in framing Haughey and destroying his life —Carmel Fire Chief Darryl Johnson ("Chief Johnson" or "Johnson")— attempts to escape all liability and preclude a jury from learning what they did to Haughey, Chief Johnson, ignoring the mountain of evidence against him that must be viewed in Haughey's favor and assumed as true, cherry-picks facts and draws self-serving inferences to argue he did not fabricate evidence, suppress *Brady* material, or maliciously prosecute Haughey. He also baselessly claims he is entitled to qualified immunity, and that Haughey failed to establish Chief Johnson participated in a civil conspiracy. As we demonstrate below, Chief Johnson's arguments are meritless and his motion for summary judgment must be denied. Haughey's estate should have its day and the public should know how Chief Johnson's conduct led to this innocent man losing his life.

## STATEMENT OF FACTS

The Court is respectfully referred to Plaintiff's Response To Chief Johnson's Rule 56.1 Statement and Statement of Additional Facts, as well as the Declaration of Rita Dave, Esq., both dated May 9, 2022, for the factual predicate of this Memorandum.

---

[1]On February 9, 2022, the Court substituted Richard J. Haughey, Haughey's surviving brother, as executor of Haughey's estate (Doc # 166).

1

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

**A REASONABLE JURY COULD FIND CHIEF JOHNSON
VIOLATED HAUGHEY'S RIGHT TO DUE PROCESS AND A
FAIR TRIAL BY MANUFACTURING EVIDENCE AND
<u>SUPPRESSING *BRADY* MATERIAL</u>**

**A.**  <u>**Standard For Deciding A Summary Judgment Motion**</u>

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (a).  Summary judgment is a limited tool: "[t]he function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir.2009).

The evidence of the nonmovant is to be believed, and "all justifiable inferences are to be drawn in his favor." *Id.*  In addition, "the court in considering such a motion must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021).  "Summary judgment is inappropriate when the admissible materials produced in opposition to the summary judgment motion make it arguable that the claim has merit.  Thus, Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law on the basis that no genuine issue remains for trial because it is quite clear what the truth is."  *In re Dana Corp.*, 574 F.3d at 151.

B.      **Haughey's Evidence Manufacturing Claim**

      1.      **Elements Of An Evidence Manufacturing Claim**

Section § 1983 subjects to liability "[e]very person who, under color of [state law],

subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any

rights ... secured by the Constitution." 42 U.S.C. § 1983. The elements of such a claim are: (1) a

person acting under color of state law; (2) committed (or caused the commission of) a

constitutional violation; (3) which proximately caused; (4) damages. *See* 4 Leonard B. Sand, *et*

*al.,* Modern Federal Jury Instructions: Civil§ 87.03, at 87-151 (Matthew Bender 1995); *Miner v.*

*City of Glen Falls*, 999 F.2d 655, 660 (2d Cir. 1993).

To bring a fair trial claim based on fabrication of evidence, a plaintiff must demonstrate

"an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's

verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of

life, liberty, or property as a result." *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021).

"Information may be 'false' if material omissions render an otherwise true statement

false," and the Second Circuit does not distinguish "deliberate omissions of material facts ...

from affirmative misstatements," or hold that "omissions alone cannot support a successful

section 1983 action for using fabricated evidence to deprive a plaintiff of his constitutional

rights[.]" *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015).

Critically, the tort of fabrication of evidence is complete the moment a plaintiff suffers

some loss of liberty as a result of false information being forwarded to prosecutors. *See e.g.*

*Ashley v. City of New York*, 992 F.3d 128, 132 (2d Cir. 2021) ("[A]" claim for fabricated evidence

does not require that a plaintiff have been subjected to a trial; it is enough that

the fabrication results in a deprivation of the plaintiff's liberty") (citation omitted); *Gomez v. City*

*of New York*, 2017 WL 1034690, at *9  (E.D.N.Y. 2017) (Garaufis, J.) ("[T]he constitutional

violation occurs when the false information is transmitted to prosecutors.")[2]

Consequently, the false evidence need not have been used at trial.  *Moroughan v. County*

*of Suffolk*, 514 F.Supp.3d 479, 537 (E.D.N.Y.  2021) (Bianco, J.) (denying summary judgment on

fabricated evidence claim where prosecutor considered the fabricated evidence but criminal

charges were dismissed before trial).

Finally, the existence of probable cause is not a defense to a manufacturing of evidence

claim.  *See e.g. Smalls v. Collins*, 10 F.4th at 132 ("[W]e have long held 'that Section 1983

liability attaches for knowingly falsifying evidence even where there simultaneously exists a

lawful basis for [the] deprivation of liberty' that the plaintiff suffered."); *Garnett v. Undercover*

*Officer C0039*, 838 F.3d 265, 268 (2d Cir. 2016) (same).

> **2.      A Reasonable Jury Could Find Chief Johnson Was Personally
>          Involved In Violating Haughey's Constitutional Rights**
>
>     **a.      Chief Johnson Knowingly Conducted A Sham Fire Investigation That
>              Was Incapable Of Determining Whether An Arson Occurred, And
>              Then Personally Created A False Report Indicating The Fire Was
>              Incendiary**

Chief Johnson directly participated in the acts and omissions leading to Haughey's

injuries or, at the very least, failed to intervene to prevent Geoghegan and Efferen from causing

those injuries.  *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) ("[C]ourts may not apply

---

[2]The Second Circuit has consistently held, for example, that a post-arraignment defendant who is
obligated to appear in court in connection with criminal charges whenever his attendance is required
"suffers a Fourth Amendment deprivation of liberty."  *Swartz v. Insogna,* 704 F.3d 105, 112 (2d Cir. 2013)
(citation omitted).

a special rule for supervisory liability.  Rather, the plaintiff must directly plead and prove that "each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

As Your Honor recognized in denying Chief Johnson's motion to dismiss, Johnson's actions in developing misleading evidence and causing it to be forwarded to the District Attorney are sufficient to find he was personally involved in violating Haughey's constitutional rights. *Haughey v. County of Putnam*, 2020 WL 1503513, at *6 (S.D.N.Y. 2020) (Karas, J.).  But our evidence goes far beyond establishing that single point.

It was Chief Johnson who authorized Geoghegan and Efferen's dispatch to Smalley's. Haughey's 56.1 at ¶ 17.[3]  It was Chief Johnson who was in charge at the scene, and used Geoghegan and Efferen as his "tools" to investigate the fire.[4]  It was Chief Johnson who made the ultimate determination that the fire was an arson, and Geoghegan and Efferen really had no power to make that designation independently.

When Chief Johnson responded to the scene and spoke with Detective Nagle, Nagle asked Chief Johnson to "*rule out any possible causes for the fire*" and Chief Johnson then used this two subordinates and friends, Geoghegan and Efferen, [5] to do just that.

---

[3]Haughey's Response to Putnam's Fed.R.Civ.P. 56.1 Statement, which includes Haughey's sequentially numbered Statement of Additional Facts, will be referred to as "Haughey's 56.1" followed by the paragraph number, or, where the context is clear, just to the paragraph number.  Exhibits attached to Haughey's 56.l will be referred to as "Haughey Exh." followed by the letter designation.  Chief Johnson's Rule 56.1 Statement will be referred to as "Johnson's 56.1".

[4]Robert McMahon, the Commissioner of the Putnam County Bureau of Emergency Services during the relevant period, explained that Putnam fire investigators "simply assist the fire chief in his determination" regarding the fire.  *Haughey v. County of Putnam*, 2020 WL 1503513, at *6 (quotations omitted).

[5]Chief Johnson was friends with both Geoghegan, long-time friends with Efferen, and Efferen's family would socialize with Chief Johnson's family.

Chief Johnson knew that the fire occurred the night before. He also knew that Smalley's owner, Porto, made a conscious decision not to call the fire department, as Porto personally informed Chief Johnson that he did not call because he was afraid it would lead to Smalley's being shut down. And Chief Johnson knew that Porto, who only 13-hours earlier had avoided calling the fire department to the scene, now inexplicably changed course and allowed the fire department to inspect Smalley's.[6]

Chief Johnson fully understood the significance of the failure to secure a fire scene, as he had personally arranged for the Putnam Fire Investigation Team to train his fire fighters on "crime scene preservation," understanding that if a scene was altered the investigation team "would not get a true overview" and the investigation could not be conducted "properly." The fire scene, however, as Johnson personally observed, had not been cordoned off with crime scene tape, despite the fire occurring the night before.

Yet Chief Johnson did not make a single note or report noting the lack of integrity of the fire scene, that it had been left unsecured, and obviously in Porto's control.[7] He did not make a record regarding the impossibility of his investigators reaching an accurate determination as to the nature of the fire by virtue of the inability to ensure the integrity of the fire scene. Instead, while failing to document the lack of integrity of the fire scene, he created a false report he personally signed, listing himself as the "officer in charge," and declaring "[t]he team determined

_____

[6]Our evidence, of course, explains why Porto was now being so helpful: During the period between the fire and the inspection, the smoke eater that was in the bathroom ceiling at the time the fire took place, had been removed. *See* Haughey's Memo. of Law Opposing Putnam Defendants' Motion For Summary Judgment, p. 14)

[7]Johnson took no notes, no pictures, and did not make any record of how much time his investigators took examining the scene or what they examined.

the fire was inc[e]ndiary in nature." That false report was then forwarded to the District

Attorney's office. *Haughey v. County of Putnam*, 2020 WL 1503513, at *6.[8]

Critically, Chief Johnson's actions were calculated: he acknowledged at his deposition

that he did <u>not</u> have to accept the Geoghegan and Efferen's findings, that he could have

demanded that they explain the basis for their conclusion and challenge their findings by

bringing the matter to the Putnam County Commissioner.   As Your Honor held, if proven, these

facts "suggest that Johnson's conduct was intentional." *Id.*

Had Chief Johnson not declared the fire an incendiary one, Haughey would have never

been convicted.  Haughey's 56.1 at ¶ 144 (quoting DA Tendy's declaration that as "the origin of

the fire could not be determined …there could not be an arson conviction.")  Based on these

facts, a reasonable jury could easily find Chief Johnson was personally involved in the violation

of Haughey's constitutional rights.

Alternatively, a jury could find Chief Johnson failed to intervene to prevent Geoghegan

and Efferen from misleading the District Attorney that the fire investigation was valid and that an

arson had been committed.   "An officer who fails to intervene is liable for the preventable harm

caused by other officers where that officer observes or has reason to know" that other officers

have committed a constitutional violation, provided the officer has "a realistic opportunity

_____

[8]That Chief Johnson did not personally forwarded his report to the District Attorney is irrelevant.  It was wholly foreseeable that having been called to investigate whether a fire was arson, his finding that it was would be forwarded to the District Attorney and relied on by that office.  Moreover, as a member of a civil conspiracy, Chief Johnson is liable for each act taken in furtherance of the conspiracy, including the forwarding of information to the District Attorney, even if he was not directly involved in the specific act. *Haughey v. County of Putnam*, 2020 WL 1503513, at *9 ("[A] defendant may be "liable as a conspirator for the[ ] reasonably foreseeable crimes of his coconspirators.")  Moreover, Chief Johnson's false report served to bolster his codefendants' misleading the District Attorney that the failure to secure the fire scene for 13-hours was inconsequential.  Chief Johnson' arson designation despite the 13-hour gap, and his report's failure to indicate the 13-hour gap impacted that designation in any way,  implicitly conveyed that same false narrative.

to intervene to prevent the harm from occurring." *Folk v. City of New York*, 243 F.Supp.3d 363, 375 (E.D.N.Y. 2017) (Kuntz, II, J.).

Here, Chief Johnson knew that he had been called to Smalley's to investigate a potential arson, and that the results of the investigation would likely form the basis of a criminal investigation or prosecution.  Johnson knew the fire had taken place the night before, and that the fire scene had not been secured. Chief Johnson also knew that if the scene was altered, no valid investigation could be conducted.  *Id.* at ¶ 35.

Nevertheless, when Geoghegan and Efferen returned with their affirmative finding that an arson had taken place, Chief Johnson did nothing to ensure that law enforcement officials who would rely on that finding understood that the arson designation was highly questionable and could not be stated with any degree of certainty.

The single report Johnson prepared regarding the investigation totally omitted (1) the questionable nature of the fire scene, (2) the fact that Porto admitted he had not called the fire department the nigh before because they had previously shut the Inn down for electrical violations, (3) Porto's sudden and unexplained turn-about in allowing the Fire Department to inspect the Inn 13-hours later, after he had unmonitored access to the scene, (4) Johnson's own failure to question Geoghegan and Efferen as to how they could be sure of their incendiary determination based on such a fire scene, (5) Geoghegan and Efferen's failure to explain how they came up with their arson determination based on such a fire scene, and (6) the arson lacked any degree of certainty.

Chief Johnson's omission of these matters from his report and/or failure to disclose them to the District Attorney, while instead preparing a report that simply noted "[t]he team

determined the fire was incendiary," allowed the fire team members to create and convey to the District Attorney the misimpression that the 13-hour gap in securing the fire scene was inconsequential, the investigation was valid, and the incendiary designation was legitimate. *Morse v. Fusto*, 804 F.3d at 548 ("[O]missions alone cannot support a successful section 1983 action for using fabricated evidence to deprive a plaintiff of his constitutional rights[.]")  Chief Johnson could have easily prevented this misimpression by sharing with the police and District Attorney the true nature of the investigation and incendiary finding.

In fact, Chief Johnson admitted that he did not have to accept Geoghegan and Efferen's findings:  "I would either ask to speak with the team or have them explain to me how they came up with their determination. If after that I didn't agree or I still had more questions, I would speak with the captain of the team.  And then if necessary, take it all the way up to the Putnam County Commissioner of Emergency Services."  Haughey Rule 56.1, Exh. C at pp.62-67.

Thus, Chief Johnson's failure to intervene to prevent his subordinates from misleading the District Attorney into prosecuting Haughey—*i.e.*, by failing to disclose to police or District Attorney the compromising details of the fire investigation and finding and affirmatively creating a report that obscured them— allowed Haughey's constitutional rights to be violated and renders Johnson liable for that conduct.

       **b.**    **Chief Johnson Engaged In A Civil Conspiracy With**
                **<u>Detective Nagle, Geoghegan, Efferen, And Porto</u>**

The elements a civil conspiracy claim are (1) an agreement between a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages." *Haughey v. County of Putnam*, 2020 WL 1503513, at

*7, citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir. 2002). A civil conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct. Moreover, a meeting of the minds may be inferred from circumstantial evidence. *See Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999).

Proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement for civil conspiracy purposes, and a court may infer an agreement. "[I]n doing so it may consider relevant evidence such as the relationships between the actors and between the actions." *Diduck v. Kaszycki & Sons Contractors*, Inc., 774 F.Supp. 802, 813 (S.D.N.Y. 1991) (Steward, J.), *r'vd on other*, 974 F.2d 270, 282 (2d Cir. 1992); 6 Am.Jur.2d Conspiracy § 68 (1979).

A reasonable jury could find a meeting of the minds between Detective Nagle and Chief Johnson (a Town of Carmel employee and policymaker, respectively), Geoghegan and Efferen (Putnam County employees), and Porto (a private citizen), to have Haughey falsely arrested, prosecuted, and convicted of arson.

Porto started the ball rolling by calling police and falsely reporting Haughey started a fire in the bathroom. When Detective Nagle arrived to investigate, he spoke with Porto and despite Nagle being fully aware of the importance of securing a potential crime scene, he neither secured the bathroom or called the Fire Department or Putnam Bureau of Emergency Services. Instead, Nagle inexplicably allowed Porto to close Smalley's with the bathroom unsecured and under Porto's control.

After the Inn was closed, and sometime before fire investigators arrived the next day, the smoke eater that was in the bathroom ceiling during the fire —and the likely cause of the fire— was removed, likely by Porto.

When Chief Johnson, Geoghegan, a former police lieutenant, and Efferen responded the following day, Detective Nagle *told* them the narrative he wanted them to confirm: Haughey started the fire in the bathroom. Haughey Rule 56.1 at ¶ 23. Taking that cue, Chief Johnson, Geoghegan and Efferen went about creating false evidence to confirm Nagle's narrative. *See* Point I, *supra*.

The men then conducted a sham fire investigation with "startling" gaps in methodology, *Haughey v. County of Putnam*, 2020 WL 1503513, at *8, incapable of legitimately determining whether the fire was incendiary. Despite those gaps, Chief Johnson falsely concluded the fire was incendiary, and created a false report memorializing that finding.

Geoghegan then met with the District Attorney, conveyed the false evidence he and the others manufactured, and mislead the District Attorney into charging Haughey with arson, assuring the District Attorney that any delay in securing the "crime scene" was inconsequential. Both Nagle and Geoghegan then testified against Haughey: Nagle in the grand jury, specifically citing the sham fire investigation, and Geoghegan at trial, claiming all accidental and electrical cause of the fire had been eliminated and the fire was incendiary. Based on this conduct, Haughey was wrongfully convicted, sentenced to10-years, and loss nearly nine-years of his life in prison.

This evidence amply demonstrates a meeting of the minds for conspiracy purposes. *See e.g. Deskovic v. City of Peekskill*, 894 F.Supp.2d at 443 (genuine issues of fact precluded

summary judgment on plaintiff's conspiracy claim where evidence showed polygraph examiner, at other defendants' request, conducted a sham polygraph examination designed to elicit a confession).

Chief Johnson's response to all of this is to claim there is no evidence that he fabricated or suppressed evidence, or engaged in a conspiracy.  Chief Johnson Memo. of Law, pp. 20-21. As demonstrated in subsection 1, above, that argument is obviously non-responsive to Haughey's evidence.

**C.**     **Chief Johnson's Arguments For Summary Judgment Are Meritless**

Chief Johnson raises three *pro forma* arguments seeking to escape liability for his conduct.

First, he points out that the report he fabricated was not entered in evidence during Haughey's trial.  Chief Johnson Memo. at p. 13.  But Second Circuit precedent does not require that the false evidence be "entered in evidence" or that the lying witness "testify at trial." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 127, 130 (2d Cir. 1997) (denying defendants' summary judgment on fair trial claim where all criminal charges were dismissed pre-trial).  As previously discussed, the tort is complete the moment the false information is forwarded to prosecutors and the plaintiff suffers some consequent loss of liberty.  *See* pp. 3-4, *supra*.

For example, in *Moroughan v. County of Suffolk*, 514 F.Supp.3d 479, 537 (E.D.N.Y. 2021) (Bianco, J.) the defendants argued they were not liable for fabricating a statement the plaintiff supposedly made because the statement "was never used, or even considered during his brief pending criminal prosecution."  *Id.* at 537.  Judge Bianco squarely rejected that argument:

> The Court finds this argument unpersuasive … [T] he Second Circuit recently rejected this precise argument. More specifically, in [*Frost v. New York City Police Department*, 980 F.3d 231, 244 (2d Cir. 2020)] the Second Circuit held that the "fair trial right protects against deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury.*" *Frost*, 980 F.3d at 250. The Court emphasized that "we have expressly distinguished this right from the separate, although related, right not to be convicted based on the use of false evidence *at trial.*" *Id.* Thus, the fair trial claim survived summary judgment in *Frost* even though the allegedly fabricated evidence was presented to the prosecutor, but never used at any trial.

*Id.* at 537.

Second, Chief Johnson falsely contends  he as not aware of the 13-hour gap and had no reason to believe Haughey's rights were being violated.  Chief Johnson Memo. at pp. 13-14, 17.  But Chief Johnson explicitly admitted again and again during his deposition that when he responded to Smalley's he was aware that the fire had occurred "the night before" and he himself saw that the bathroom had not been cordoned off with crime scene tape.  Haughey's  56.1 at ¶ 87, Exhibit C at pp. 84, 90, 92, 98, 100-101.  Thus, his current claim is squarely contradicted by his own deposition testimony.

Third, Chief Johnson claims he did not know Haughey prior to him being arrested.  Chief Johnson Memo. at  p. 17.  But that only makes his conduct more abhorrent.  Chief Johnson knew he was called to Smalley's to investigate a potential arson, that Detective Nagle believed a particular individual committed it and wanted Johnson to confirm it, and that the fire team's determination would be relied on by police and prosecutors in connection with an arson investigation.  He obviously knew an arson declaration would legitimize and further an arson

prosecution, and he cannot escape liability simply because he did not know the name of the man

he was framing.  Obviously, Chief Johnson does not point to any court that has endorsed his

perverse argument.

## POINT II

### CHIEF JOHNSON IS NOT ENTITLED TO QUALIFIED IMMUNITY FOR FABRICATING EVIDENCE

Qualified immunity simply does not apply to this fabrication of evidence. *Manganiello v.

City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (same).  As Your Honor recognized, such

conduct "is objectively unreasonable as a matter of law."  *Haughey v. County of Putnam*, 2020

WL 1503513, at *8 (citing cases).   Indeed,"the Second Circuit has explained [that] the right to

be free of [any government officer's fabrication of evidence] has been clearly established for

decades."  *Haughey v. County of Putnam*, 2020 WL 1503513, at *7, citing *Zahrey v. Coffey*, 221

F.3d 342, 357 (2d Cir. 2000).   "[I]ntentional falsification and suppression of evidence …

is objectively unreasonable as a matter of law."  *Id.* at *8; *See Coggins v. Buonora*, 776 F.3d 108,

114 (2d Cir. 2015) ("[T]he alleged falsification of evidence and the related conspiracy, if true,

constitute a violation of clearly established law, and no objectively reasonable public official

could have thought otherwise.")

Nevertheless, Chief Johnson claims his actions were objectively reasonable as a matter of

law so that he should be protective by qualified immunity, and that he customarily relied on

Geoghegan and Efferen's conclusions.  *Id.* at p. 21.  But Chief Johnson cannot use Geoghegan

and Efferen as shield when (1) Chief Johnson personally fabricated his own report omitting the

damning details undermining the investigation and finding, (2) Johnson knew that it was

14

impossible to justify Geoghegan and Efferen's conclusion as to the nature of the fire.  Chief Johnson, of course, ignores all of this.

## **CONCLUSION**

Without Chief Johnson signing off on the false "incendiary" declaration, Haughey would have never been prosecuted or convicted.  Chief Johnson's motion for summary judgment should be denied, and he should answer for falsely convicting an innocent man and destroying his life.

DATED:        Brooklyn, New York
              May 9, 2022

*Rita Dave*                                    *Oscar Michelen*

_____              _____
RITA DAVE, ESQ.                            OSCAR MICHELEN. ESQ.
26 Court Street                            Cuomo, LLC
Suite 1212                                 200 Old Country Road
Brooklyn, New York 11242                   Suite 2 South
Telephone: (516) 782-1614                  Mineola, New York 11501
Email: ritadaveesq@gmail.com               Telephone: (516) 741-3222
                                           Fax: (516) 741-3223
                                           Email:omichelen@cuomollc.com
                                           (*Of Counsel*)


        *Attorneys for Plaintiff Estate of William Haughey*